**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LUZ LUGO, YESENIA MARCO, et al.** : | |
| : | **CIVIL ACTION NO. 07-CV-00749** |
| *Plaintiffs* : | |
| : | **Honorable Michael M. Baylson** |
| v. : | |
| : | |
| **FARMERS PRIDE, INC.** : | |
| : | |
| *Defendant* : | |

**DEFENDANT'S COMBINED RESPONSE TO PLAINTIFFS' MOTION FOR
THE APPLICATION OF *ANDERSON V. MT. CLEMENS POTTERY*
BURDEN-SHIFTING AT TRIAL AND PLAINTIFFS' PROPOSED TRIAL PLAN**

## I.      INTRODUCTION

Defendant, Farmers Pride, Inc., respectfully submits this Response to Plaintiffs' Motion for the Application of Anderson v. Mt. Clemens Pottery Burden-Shifting at Trial (Dkt. # 454) and Plaintiffs' Proposed Trial Plan (Dkt # 456).  Plaintiffs contend that both documents bear on Defendant's pending Motion to Decertify the Collective Action Class (Dkt. # 432).  Defendant disputes the bulk of the legal arguments and factual allegations contained in the burden-shifting motion and the trial plan and will address those substantive issues at the appropriate time (i.e., in the context of any summary judgment motions and pre-trial filings, including arguments as to jury instructions).  Because Plaintiffs currently offer these documents for the limited purpose of responding to Defendant's decertification motion, we currently focus solely on the effect, if any, that these newly filed pleadings should have on Defendant's decertification motion.

As discussed below, Plaintiffs' eleventh-hour filings do not affect Defendant's decertification motion.  According to Plaintiffs' own authorities, the burden-shifting motion is relevant only to proving damages, not establishing liability.  Because Farmers Pride's

decertification motion focuses solely on liability issues — such as Plaintiffs' individualized first and last touch theory of liability, the varying compensation practices at the plant, and Plaintiffs' diverse pre- and post-shift activities — Plaintiffs' burden-shifting motion is not relevant to resolving Defendant's decertification motion.

Plaintiffs' proposed trial plan is equally irrelevant to the decertification issue because it erroneously focuses on Plaintiffs' ability to use representative evidence at trial, as opposed to whether they currently satisfy the standard in 29 U.S.C. § 216(b) to proceed collectively. Farmers Pride does not dispute that if the Plaintiffs were to make a factual showing that they are "similarly situated," they could continue to proceed to trial collectively, where they could attempt to offer representative evidence.  However, the fact that the named Plaintiffs and 300-plus class members would like to offer representative evidence at trial has no bearing on whether they currently satisfy the similarly-situated standard for proceeding collectively.  Moreover, based on the varying testimony already offered by the named Plaintiffs, it is clear that they will not be able to offer truly representative testimony, and Plaintiffs' generalized assertions to the contrary are unavailing.  The fact that similar legal issues in other cases with different facts have been resolved on a collective basis does nothing to show how those issues can be resolved collectively in this case.

For these reasons and those discussed below, Plaintiffs' newly filed pleadings do nothing to undercut the arguments raised by Farmers Pride in seeking decertification of the collective action, and, thus, the Court should disregard these pleadings in rendering its decision on Defendant's motion to decertify.  The parties can address the substantive merits of Plaintiffs' burden-shifting motion and proposed trial plan at a more appropriate point in the litigation if they ever become ripe for adjudication.

## II.   ARGUMENT

**A.   Defendant's Burden-Shifting Motion Has No Bearing On Defendant's Decertification Motion; If Anything, It Proves That Decertification Is Necessary.**

    **1.   Burden-shifting under <u>Anderson v. Mt. Clemens Pottery Co.</u> affects the method of proving damages, not liability.**

Plaintiffs rely on the Supreme Court's decision in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946), and request that the Court allow them to present their case at trial using the burden-shifting method set forth in <u>Anderson</u>.   In requesting burden-shifting, Plaintiffs gloss over the fact that the burden-shifting analysis articulated in <u>Anderson</u> is <u>not</u> relevant to proving FLSA liability.   Instead, the burden-shifting analysis is limited to the issue of calculating a plaintiff's damages once the plaintiff has met his burden of proving FLSA liability <u>and</u> has made an initial showing as to his damages.

<u>Anderson</u> clearly indicates that FLSA plaintiffs must first prove an FLSA violation before the burden-shifting analysis applies.   Specifically, an employee has the initial burden of proving two things:  (1) by a preponderance of the evidence, that he has performed "work" under the FLSA for which he has not been properly compensated and (2) by just and reasonable inference, the dollar amount of work for which he has been improperly compensated.  <u>Id.</u> at 687. Only after the plaintiff succeeds in this regard does the burden shift to the employer to establish the plaintiff's actual damages if the employer disagrees.  <u>Anderson</u> explains:

> [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried his burden <u>if</u> he proves that he has in fact performed work for which he was improperly compensated <u>and if</u> he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden <u>then</u> shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award

3

> damages to the employee, even though the result be only
> approximate.

Id. at 687-88 (emphases added).

The cases that apply Anderson's burden-shifting analysis make clear that the holding of Anderson only addresses the degree of certainty with which an FLSA plaintiff must prove his damages. See, e.g., Valladon v. City of Oakland, NO. C06-07478, 2009 WL 2591346, at *3 (N.D. Cal. Aug. 21, 2009) ("Courts use a burden-shifting framework to determine damages in FLSA cases.") (emphasis added) (attached as Ex. 1); Genarie v. PRD Mgmt., Inc., No. 04 Civ. 2082, 2006 WL 436733, at *15 (D. N.J. Feb. 17, 2006) ("Violation of this record-keeping provision does not result in a penalty per se, but an employer's failure to produce evidence of the hours an employee worked and wages paid may result in the court having to approximate damages.") (attached as Ex. 2). Thus, Anderson does not alter an FLSA plaintiff's burden to demonstrate by a preponderance of the evidence that the defendant violated the FLSA with regard to the plaintiff's employment. See, e.g., Ruffino v. N. Slope Borough, 28 F.3d 108, 1994 WL 201174, at *6 (9th Cir. 1994) ("[T]he Anderson burden-shifting does not come into play until the employee demonstrates that the employer's records are inaccurate or inadequate and that the employee has not been properly compensated for work done.") (attached as Ex. 3); Santelices v. Cable Wiring, 147 F. Supp. 2d 1313, 1329 (S.D. Fla. 2001) ("[A]lthough the Supreme Court established a standard for awarding damages when the evidence of damages is inexact or imprecise, it did not eliminate the employee's burden to prove that he has in fact performed work for which he was not paid.") (emphasis added). The Supreme Court stated as much in Anderson after setting out the burden-shifting analysis:

> [H]ere we are assuming that the employee has proved that he has
> performed work and has not been paid in accordance with the
> statute. The damage is therefore certain. The uncertainly lies only
> in the amount of damages arising from the statutory violation by

the employer. . . . It is enough under these circumstances if there is
a basis for a reasonable inference as to the extent of the damages.

Anderson, 328 U.S. at 688.

The Third Circuit's opinion in Martin v. Selker Bros., Inc., 949 F.2d 1286 (3d Cir. 1991),
cited by Plaintiffs, makes clear that the Anderson burden-shifting analysis is limited to proof of
damages, not liability.  In the opening sentence of its opinion, the Third Circuit framed the issue
as follows:  "This appeal requires us to determine . . . the method for computing damages for
[FLSA] violations in the absence of employer records."  Id. at 1286 (emphasis added). The only
reason that the damages issue arose in Martin was because the Secretary of Labor (the plaintiff in
the case) established at trial that the class members had performed work under the FLSA for
which they were not paid.  Only after the Secretary carried her burden of establishing FLSA
liability did the burden-shifting analysis for proving damages come into play.[1]

Plaintiffs incorrectly summarize their burden under the burden-shifting analysis at page
13 of their memorandum when they say that "the Supreme Court and Third Circuit instruct that
Plaintiffs are entitled to submit evidence showing they worked uncompensated hours as a matter
of just and reasonable inference."  Pls.' Mem. at 13.  Neither Anderson nor the Third Circuit's
decision in Martin make such a statement.  Instead, as discussed above (and even in other
portions of Plaintiffs' memorandum), there are two burdens that Plaintiffs must first meet:

---

[1] It should be noted that there is no private right of action under the FLSA for an employer's
record-keeping violations; instead, only the Secretary of Labor has the power to bring suit against an
employer for failing to maintain adequate records.  Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d
832, 843 (6th Cir. 2002) ( "[The FLSA] does not authorize employee suits for violations of the FLSA's
record-keeping requirements. Authority to enforce the Act's record-keeping requirements is vested
exclusively in the Secretary of Labor."); Oral v. Aydin Corp., No. 98-cv-6494, 2001 WL 1735063, at *1
(E.D. Pa. Oct. 31, 2001) ("[T]here is no private right of action to enforce recordkeeping provisions of the
FLSA.") (attached as Ex. 4).  Many of the cases cited by Plaintiffs are cases prosecuted by the Secretary
of Labor.  See, e.g., Martin, 949 F.2d at 1286; Reich v. Gateway, 13 F.3d 685 (3d Cir. 1994); Dole v.
Solid Waste Servs., 733 F. Supp. 895 (E.D. Pa. 1989).  Those cases correctly included claims for record-
keeping violations.  In this case, however, Plaintiffs cannot pursue claims against Farmers Pride for
alleged record-keeping violations.

(1) first, they must prove that they performed work for which they were not compensated and (2) second, they must establish their damages (i.e., the amount of uncompensated hours) by just and reasonable inference. <u>Anderson</u>, 328 U.S. at 687; <u>Martin</u>, 949 F.2d at 1297. Only the latter showing is subject to the more lenient "just and reasonable inference" standard. Plaintiffs still retain their burden to prove an FLSA violation under the normal standards of proof in civil cases, i.e., by a preponderance of the evidence.

       **2.**       **Because <u>Anderson</u> burden-shifting is not relevant to liability, Plaintiffs' burden-shifting motion does not affect Defendant's Motion to Decertify.**

As discussed above, Plaintiffs first must carry their burden of proving FLSA liability before their burden-shifting motion on damages becomes relevant. In arguing that the 300-plus class members do not meet the similarly situated requirement of § 216(b), Farmers Pride's decertification motion does not rely on the class members' ability (or lack thereof) to prove damages with certainty. Instead, the decertification motion focuses on Plaintiffs' individualized first and last touch theory of liability, the variations in Farmers Pride's compensation practices, and the diversity in class members' pre- and post-shift activities. These are all issues that demonstrate that the class members are not similarly situated for the purpose of establishing liability. Because Plaintiffs' burden-shifting motion has no effect on liability, the motion similarly has no effect on Defendant's decertification motion.

Plaintiffs' burden-shifting motion assumes with no analysis that all of their pre- and post-shift and meal period activities are compensable work activities under the FLSA and that Farmers Pride failed to properly pay them for such activities. These liability issues are hotly contested and, in large part, will be the central focus at trial. Nothing in <u>Anderson</u> changes the fact that Plaintiffs have the burden on these liability issues, and nothing in <u>Anderson</u> alleviates

any of the manageability issues raised by Defendant's decertification motion. Plaintiffs' burden-shifting motion is simply not relevant to the decertification issue.

If anything, Plaintiffs' burden-shifting motion provides further support for Defendant's decertification motion. As applied to the pre-December 2007 portion of the limitations period, Plaintiffs' burden-shifting motion argues that Farmers Pride is attempting to use the compensation schedules as a "shield against FLSA liability." Pls.' Mem. at 8. To be clear, Farmers Pride does not claim that the compensation schedules, standing alone, provide it with a defense in this case; instead, Farmers Pride is arguing that it has already paid Plaintiffs and the class members pursuant to those schedules for donning and doffing activities <u>if</u> they are compensable. Though some of the Plaintiffs deposed in this case claim that Farmers Pride did not follow the schedules, at least one Plaintiff admits the schedules were posted and followed. <u>See</u> Def.'s Decert. Reply at 8-9. The Court thus finds itself facing the same factual scenario as in <u>Pacheco v. Boar's Head Provisions Co., Inc.</u>, 1:09-cv-298, slip opinion (W.D. Mich. Dec. 3, 2009) (Ex. 45 to Def.'s Decert. Reply), where some of the plaintiffs claimed that their supervisors did not follow the "dress period" schedules while others did not make such claims. <u>Id.</u> at 9. As the district court found in <u>Pacheco</u>, such claims are not susceptible to collective action treatment. <u>Id.</u> at 17 ("[B]ecause there is a formal policy to pay employees for donning and doffing activities, any failures to follow that policy will be unique to specific departments and supervisors.").

As for the period December 2007 to present, Plaintiffs' burden-shifting motion concedes that Farmers Pride paid employees from the time they punch in until they punch out and that Farmers Pride has maintained adequate time records for this period. <u>See</u> Pls.' Mem. at 9. As a result, Plaintiffs would not be entitled to a burden-shifting instruction for the post-December

2007 period <u>even if</u> they could somehow establish liability.   Moreover, because Farmers Pride paid from punch-in to punch-out, the only way for Plaintiffs to prove post-2007 liability is to provide testimony that each of the class members performed compensable "work" under the FLSA before and after their clock-in and clock-out times.   Because the named Plaintiffs freely admit that they cannot offer testimony on other class members' pre- and post-shift activities, Plaintiffs cannot offer representative testimony on this issue.   <u>See</u> Def.'s Decert. Mem. at ¶¶ 33, 42 (discussing Plaintiffs' testimony admitting that they cannot offer testimony about any other employee's pre- and post-shift activities or routines).

In sum, regardless of whether Plaintiffs <u>may</u> be entitled to an <u>Anderson</u> burden-shifting instruction at trial, this damages-related issue does not undercut any of the arguments raised by Defendant in seeking decertification.   The motion is therefore irrelevant at this time.

**3.     Plaintiffs' burden-shifting motion is premature, and the Court's ruling on the motion should be stayed until Plaintiffs establish their two-fold burden at trial.**

Regardless of its value to the current decertification dispute, it is not clear from Plaintiffs' burden-shifting motion whether they want the Court to rule on their motion at this time, or whether the motion was offered merely as an illustration of how they believe the trial in this case will proceed.   To the extent it is the former, the Court should reject the motion as premature.

The <u>Anderson</u> burden-shifting issue normally arises in the trial phase of the case <u>after</u> the plaintiffs have satisfied their two burdens of establishing liability and presenting an approximation of their damages.   Plaintiffs do not cite a single case establishing that they are entitled to burden-shifting, inferences, or instructions against Farmers Pride in advance of trial, and they offer no authority that the Court could decide this issue at this time.   In fact, in every case cited in Plaintiffs' burden-shifting brief, the burden-shifting issue did not arise until the

courts were resolving jury instruction issues or until after the plaintiffs had put in their proof at trial.  The reasons why the burden-shifting issue cannot be addressed until that point in time are obvious.   The only burden-shifting that Anderson permits goes to the amount of evidence Plaintiffs must put forth in order to prove the amount of damages, and, thus, the burden-shifting analysis could not arise in this case until after Plaintiffs had established Farmers Pride's FLSA liability, i.e., after they proved that they performed compensable work under the FLSA and were not adequately compensated for that work.   There is a clear dispute in this case as to whether Plaintiffs' varying pre- and post-shift and meal period activities constitute work and, if they do, whether Farmers Pride adequately compensated Plaintiffs for these activities.    Only after Plaintiffs have persuaded the jury on these two issues could Anderson's burden-shifting method for proving damages apply.  If the jury were to find that Plaintiffs have not carried their burden on these two issues, Farmers Pride would be entitled to judgment, and Anderson burden-shifting would never become an issue.

Because Plaintiffs are not entitled to a burden-shifting instruction at this point in the litigation, the Court should thus deny the motion as premature.  Alternatively, the Court should stay its decision on the motion until the appropriate point in the litigation and after Defendant has had an opportunity to substantively respond to the motion.[2]

---

[2] Based on experience, defense counsel submits that the appropriate time to resolve burden-shifting issues is during the charge conference, where there would be consideration of the appropriate jury instructions on the parties' respective burdens of proof.

B.   **Plaintiffs' Proposed Trial Plan Is Equally Irrelevant To Defendant's Decertification Motion.**

1.   **The standard for certification under § 216(b) is whether the class members are similarly situated, not whether they intend to attempt to present their case by "representative" proof.   In any event, Plaintiffs' claims are not susceptible to representative proof.**

In offering their Proposed Trial Plan to attempt to defeat Defendant's decertification motion, Plaintiffs put the proverbial cart before the horse.   Specifically, Plaintiffs' trial plan focuses almost exclusively on their ability to use representative evidence at trial.   However, representative evidence is an evidentiary concept applied at trial, not a method for resolving class certification issues prior to trial.   The pertinent focus under § 216(b) of the FLSA requires that Plaintiffs and the class members establish that they are similarly situated in order to proceed with a collective action.   29 U.S.C. § 216(b).   The fact that Plaintiffs intend to attempt to prove their case through representative evidence at trial does nothing to explain how they are similarly situated for purposes of proceeding collectively under § 216(b).   See, e.g., Stillman v. Staples, Inc., Civ. Action. No. 07-849, 2009 WL 1437817, at *17-18 (D. N.J. May 15, 2009) ("For a collective action to proceed to trial, the plaintiff must demonstrate that: (1) all prospective class members are similarly situated; and (2) all members have affirmatively opted-in to the litigation. Once at trial, plaintiffs can rely on representative evidence to prove that the defendant's practices or policies impacted similarly situated employees.") (emphasis added) (internal citations omitted) (attached as Ex. 5).

Farmers Pride does not dispute that, if the class members were similarly situated, they could attempt to prove their case at trial using representative evidence (assuming the evidence were truly representative).   But § 216(b) requires that the class members establish they are similarly situated before they are even allowed to proceed to trial.   For this reason, the various cases Plaintiffs cite in their trial plan about the propriety of using representative testimony in

FLSA cases do not help Plaintiffs meet their similarly situated burden under § 216(b).  <u>See</u> Pls.'
Proposed Trial Plan at 4-5.

Moreover, Plaintiffs' proposed trial plan shows that Plaintiffs pay only lip service to the
concept of representative proof.  The trial plan does not provide any specific details as to the
substance of the representative testimony Plaintiffs intend to offer at trial, but instead refers
generally to the fact that Plaintiffs will offer "class-wide proof" on certain issues.  <u>Id.</u> at 4.  As
shown in detail in Defendant's briefs related to the decertification motion, the deposition
testimony and declarations offered by the named Plaintiffs and some of the opt-in class members
are so diverse that Plaintiffs cannot credibly claim that the testimony they intend to offer at trial
will actually be representative of all of the class members.  The only way for Plaintiffs to present
"representative testimony" is to carefully pick and choose their trial witnesses to ensure that they
only offer testimony from Plaintiffs who agree on the issues.  This explains why Plaintiffs' trial
plan makes only a vague reference to "the testimony of opt-in Plaintiffs who will describe their
similar experiences" instead of identifying the number and identity of opt-in Plaintiffs who will
offer the "representative testimony" at trial.  <u>Id.</u>

The reality is that Plaintiffs cannot credibly offer representative testimony in this case.
As previously demonstrated, the Plaintiffs' depositions show that they do not agree with each
other on some of the most basic liability issues; indeed, some of them actually offered testimony
consistent with Farmers Pride's position.  For example, Plaintiff Seferina Caba testified that she
had seen the compensation schedules posted in the plant and admitted that she had no evidence
that Farmers Pride failed to follow the schedules.  <u>See</u> Def.'s Decert. Reply at 8-9.  If Plaintiffs
are willing to stipulate that Caba's testimony on the compensation schedules is representative of
the class, Farmers Pride will so stipulate.  Caba also testified that she wore cloth gloves, an

apron, boots, and safety glasses at her own option, and that she sometimes wore sneakers from home.  See Def.'s Decert. Mem. at ¶ 31.a.  If Plaintiffs are willing to stipulate that Caba's testimony on optional equipment and footwear is representative of the class, Farmers Pride will so stipulate.  Plaintiff Elliott Hernandez testified that he did not use a locker for at least a portion of the limitations period and thus did not store any clothing or equipment in a locker.  See id. at ¶ 35.  If Plaintiffs are willing to stipulate that Hernandez's testimony about locker use is representative of the class, Farmers Pride will so stipulate.  Plaintiff Johnny Torres testified that he was not required to wash any of his equipment after returning from his meal period.  See Def.'s Decert. Reply at 16.  If Plaintiffs are willing to stipulate that Torres' testimony on post-meal period washing is representative of the class, Farmers Pride will so stipulate.  Finally, Plaintiffs' expert witness, Ken Mericle, determined that it took one employee 0.08 minutes to obtain and don his gear at his locker at the beginning of the shift and that it took one employee 0.23 minutes to clean, doff, store, and dispose of his gear at the end of the shift.  See id. at 18-19. If Plaintiffs are willing to stipulate that these two employees' times are representative of the class, Farmers Pride will so stipulate.

Predictably, Plaintiffs will reject Farmers Pride's proposed stipulations as absurd, which proves the point.  The testimony outlined in the preceding paragraph is no less representative of the class than the testimony that Plaintiffs intend to offer at trial.  The fact of the matter is that Plaintiffs have offered inconsistent testimony on many of the key liability issues in this case. There is no truly representative proof available to Plaintiffs, and, thus, the class members' claims cannot be resolved without examining each of them individually.

    **2.**     **The "core legal issues" outlined in the trial plan are either not relevant to Defendant's Motion to Decertify or are not susceptible to class-wide resolution.**

Plaintiffs' trial plan outlines a number of "core legal issues" that Plaintiffs believe are susceptible to common proof.  <u>See</u> Pls.' Proposed Trial Plan at 6-15.  To be sure, Defendant agrees that the issues of willfulness, good faith, and liquidated damages are subject to common proof.  However, these are damages-related issues that have no bearing on Plaintiffs' ability to establish FLSA liability.  Farmers Pride's decertification motion and supporting briefs do not rely on these damages-related issues, and, thus, the portions of Plaintiffs' trial plan related to willfulness, good faith, and liquidated damages (pages 10-14) are irrelevant to the decertification question.

In regards to the remainder of the "core legal issues" outlined in the trial plan, Plaintiffs either mischaracterize the law related to these issues or mischaracterize the type of proof necessary to resolve these issues, or both.  First, Plaintiffs wrongly argue that the Third Circuit in <u>De Asencio v. Tyson Foods, Inc.</u>, 500 F.3d 361 (3d Cir. 2007), held that all donning and doffing is work under the FLSA and integral and indispensible under the Portal Act.  <u>See</u> Pls.' Proposed Trial Plan at 6.  The Third Circuit did <u>not</u> rule that <u>all</u> donning and doffing activities are work as a matter of law.  Instead, the Third Circuit held that donning and doffing protective gear and equipment is compensable <u>if</u> the employer requires the employee to wear the gear and <u>if</u> the equipment is primarily for the benefit of the employer, as opposed to the employee.  <u>De Asencio</u>, 500 F.3d at 373.  The Third Circuit then looked at the trial record from the lower court and determined that, because the evidence showed that the equipment was required and primarily for the benefit of the employer, "the donning and doffing activity <u>in this case</u> constitutes 'work' as a matter of law."  <u>Id.</u> (emphasis added)  The Third Circuit's holding was explicitly limited to the specific facts before it at the time.

In regards to the Portal Act, the Third Circuit in <u>De Asencio</u> did not rule on whether the activities at issue were integral and indispensable. Instead, the employer had withdrawn its Portal Act defense prior to trial. <u>Id.</u> at 373. Thus, the Third Circuit remanded the case back to the trial court to resolve the Portal Act issue. <u>Id.</u>

Applying <u>De Asencio</u> to the current case, whether or not a particular employee's pre- and post-shift activities constitute work under the FLSA depends upon whether the activity is required by Farmers Pride and whether the activity was primarily for the benefit of Farmers Pride. As discussed in Farmers Pride's decertification briefs, not all employees wear the same equipment and, even if a particular group of employees wears the same equipment, the reasons why they wear the equipment varies, with some claiming it is required and others claiming it is optional. Thus, it may be that some opt-ins satisfy the <u>De Asencio</u> definition of work, while other opt-ins do not. This necessarily requires that the work issue be raised on an employee-by-employee basis (or at least a job-by-job basis). The same is true for the Portal Act issue, which requires an analysis of whether a particular piece of equipment or a particular pre- or post-shift activity is integral and indispensable to a particular employee's principal activities.[3]

The so-called "trial plan" also erroneously claims that Plaintiffs' meal period claims are subject to representative proof. Specifically, Plaintiffs cite 29 C.F.R. § 785.19(a) for the proposition that "the employee must be completely relieved from duty for the purposes of eating regular meals." Pls.' Proposed Trial Plan at 7. Based on this regulation, Plaintiffs argue that, because Farmers Pride uniformly did not completely relieve class members from duty, class

---

[3] Most of the cases Plaintiffs offer in the "core legal issues" section of their trial plan are summary judgment decisions, which present a very different set of issues than does a decertification motion. <u>See</u> Pls.' Proposed Trial Plan at 6-13. A summary judgment ruling is a finding that there is no dispute over the facts. The analyses in these summary judgment cases bear no resemblance to the issue currently before the court, <u>viz.</u>, whether a disputed set of facts can proceed to trial on a class-wide basis.

members' meal periods are compensable, regardless of the fact that each class member's meal period may have been of varying lengths. Plaintiffs thus argue that the meal period issue can be uniformly resolved on summary judgment, or at trial.

But the meal-period test on which Plaintiffs' argument rests has been rejected by the vast majority of courts that have considered the issue. See, e.g., Bernard v. IBP, Inc. of Nebraska, 154 F.3d 259, 264-65 (5th Cir. 2005) (rejecting the "completely relieved" test and instead using the "predominant benefit" test); Reich v. So. New England Telecomms. Corp., 121 F.3d 58, 65 (2d Cir. 1997) (same); Hill v. United States, 851 F.2d 810, 814 (6th Cir. 1984) (same); McGrath v. City of Philadelphia, 864 F. Supp. 466, 479-81 (E.D. Pa. 1994) (same). Almost universally, courts have held that, despite 29 C.F.R. § 785.19(a)'s "completely relieved from duty" language, employees are not entitled to compensation for their meal periods as long as they received the predominant benefit of their meal period. The relevant question under this analysis is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee, which necessarily requires an analysis of how the employee uses the meal period and whether the employee has sufficient time to eat a meal, relax, and engage in other personal activities. Thus, though it may be that all class members were not completely relieved for a full 30-minute meal period, that fact alone does not establish Farmers Pride's liability. Instead, the class members must establish that the alleged encroachment on their 30-minute meal period was so substantial that they did not receive the predominant benefit of the meal period. Such an inquiry is not susceptible to representative proof. Cf. Bernard, 154 F.3d at 265 (holding that the predominant benefit test cannot be resolved until the trier of facts weighs all of the evidence).

Finally, Farmers Pride intends to present a de minimis defense at trial. Although the courts are split on whether a de minimis defense can be presented on a class-wide basis, at least some of them have held that it raises issues that are individualized to each employee and thus prevents certification under § 216(b). See Smith v. T-Mobile USA, Inc., No. CV 05-5274 ABC, 2007 WL 2385131, at *8 (C.D. Cal. Aug. 15, 2007) ("Other defenses, such as . . . the de minimis exception to the FLSA, must, by their nature, be individualized.") (Ex. 38 to Def.'s Decert. Mem.); King v. West Corp., No. 8:04CV318, 2006 WL 118577, at *15 (D. Neb. Jan. 13, 2006) ("The individual job disparities among [jobs at issue] also give rise to the individualized defenses [the employer] may raise in this case — including case-by-case examinations of . . . whether such work would fall within a de minimus exemption under the FLSA . . . .") (Ex. 40 to Def.'s Decert. Mem.). Plaintiffs completely ignore these cases. The reason is obvious. Here, a jury would be required to consider whether, under each of the 50 different schedules at issue, a particular employee spent more or less time each day on the activities that supposedly constituted "work." Even if an employee did spend more time than was allotted and paid under the schedule, the question would arise whether the unpaid time in excess of the allotted time was so small as to be considered de minimis. Even the analysis of Plaintiffs' expert, Dr. Mericle, shows a <u>different time for every employee he measured</u>, which means that there must be a separate consideration of the de minimis defense as to each employee. See Mericle Expert Report at 22-28 (Ex. 55 to Def.'s Decert. Reply). This is the antithesis of class-wide proof.

## III.   <u>CONCLUSION</u>

As discussed above, Plaintiffs' burden-shifting motion and proposed trial plan are not relevant to resolving the issues presented by Defendant's decertification motion. As such,

16

Farmers Pride respectfully requests that the Court stay ruling on these pleadings until the point in the litigation where they may be appropriately resolved.

      Respectfully submitted this 1st day of February, 2010.

                                       **FARMERS PRIDE, INC.**

                                       */s/ Ryan A. Glasgow*

                                       George C. Werner (Pa. I.D. No. 28757)
Jill S. Welch (Pa. I.D. No 86232)
BARLEY  SNYDER LLC
126 East King Street
Lancaster, PA 17602-2893
Phone:  (717) 299-5201
Facsimile:  (717) 291-4660
*gwerner@barley.com*
*jwelch@barley.com*

Michael J. Mueller* (D.C. Bar # 412025)
Araj F. Ahmed* (D.C. Bar # 977574)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
Phone: (202) 955-1500
Facsimile: (202) 778-2201
*mmueller@hunton.com*
*aahmed@hunton.com*

Gregory B. Robertson* (Va. Bar # 15681)
Ryan A. Glasgow* (Va. Bar # 71023)
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA 23219
Phone:  (804) 788-8200
Facsimile:  (804) 788-8218
*grobertson@hunton.com*
*rglasgow@hunton.com*

* *Admitted pro hac vice*

Attorneys for Defendant, Farmers Pride, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 1st day of February, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:


BERGER & MONTAGUE, P.C.
Shanon J. Carson, Esq.
(scarson@bm.net)
1622 Locust Street
Philadelphia, PA 19103


SCHNEIDER WALLACE COTRELL
BRAYTON KONECKY LLP
Clint J. Brayton, Esq.
(cbrayton@schneiderwallace.com)
Andrew P. Lee, Esq.
(alee@schneiderwallace.com)
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

Philip A. Downey
(downeyjustice@gmail.com)
1555 Embreeville Road
Unionville, PA 19375


_/s/ Ryan A. Glasgow_____
Attorney for Defendant