## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LUZ LUGO, et al.  :  CIVIL ACTION
:
v.  :
:
FARMER'S PRIDE INC.  :  NO. 07-0749

**MEMORANDUM RE: GRANTING PARTIAL COLLECTIVE ACTION FOR TRIAL**

**Baylson, J.**                                                                    **December 9, 2010**

### I.        Introduction

The issue presented is whether, and to what extent, the Court should allow this case to

proceed as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

Plaintiffs, current and former employees of Farmer's Pride Inc. ("the Defendant"), allege that the

Defendant has failed to fully compensate them for the time spent putting on and taking off

("donning and doffing") items of sanitary and protective clothing and equipment ("PPE") at the

beginning and end of their shifts and during their meal periods.  For the reasons that follow, this

Court will certify a collective action for one of the six subclasses proposed by Plaintiffs: the

Deboning Department Third Shift subclass.

### II.       Background[1]

In a memorandum dated August 25, 2010, 2010 WL 3370809 ("8/25/10 Mem.") (Doc.

No. 491), following extensive briefing and a two-day evidentiary hearing, the Court issued an

order decertifying the class that had been previously conditionally certified, consisting of all the

---

[1]        The Court comprehensively set forth the facts and procedural history in this case
in its recent memorandum.  8/25/10 Mem., 2010 WL 3370809, at *1-6.

employees the named Plaintiffs sought to represent. However, the Court gave the Plaintiffs the opportunity to designate a smaller class or subclasses, that could be brought as a collective action, in view of Congress's stated intent that the FLSA should serve broad remedial purposes, and numerous cases allowing collective actions with somewhat similar facts. 8/25/10 Mem., 2010 WL 3370809 at *24 (citing De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007)).

Following the Court's opinion, the parties submitted correspondence to the Court with their intentions as to the collective action. After a telephone conference held on September 29, 2010, the Court ordered additional briefing on a revised collective action. The parties filed extensive briefing in which both Plaintiffs and Defendant, with due respect for creative advocacy, overstate in their respective favor the consequences of the Court's August 25, 2010 Memorandum and Order.

## III.     The Parties' Contentions

The Plaintiffs' initial position was that the named Plaintiffs would represent all of the opt-in Plaintiffs–over 300 individuals–and that the Court could determine the liability of the Defendant for all of these individuals in one trial. However, the evidence presented at the evidentiary hearing clearly showed that such a large collective action would not be fair to either the Plaintiffs or the Defendant, given the extensive variation among the Plaintiffs relevant to whether and by how much any given Plaintiff was unlawfully undercompensated. 8/25/10 Mem., 2010 WL 3370809 at *10.

In their briefing in support of a revised collective action, the Plaintiffs defined six subclasses, the members of which they believe are similarly situated, in order to permit an

efficient trial of their claims. Those classes separate the Plaintiffs by the three primary departments in which they worked, Deboning, Evisceration, and Cut-Up, and further divide those classes into First Shift and Third Shift. Pls.' Br. 5-6. Accordingly, the representative Plaintiffs' testimony need only be attributed to those members of the class who also were employed in the same department and shift. Pls.' Br. 9-10. Plaintiffs contend that the revised proposal will satisfy the "similarly situated" FLSA standard, because members of a particular department and shift shared, inter alia, the same supervisors, schedule, training, procedures, and policies. Pls.' Br. 10-14. Plaintiffs wish to proceed on the liability theory that the compensation system, even if implemented as Defendant claims, nonetheless failed to compensate Plaintiffs for donning and doffing activity. Pls.' Br. 7-8. Plaintiffs have proposed jury interrogatories as to liability. Pls.' Br. 8.

In its responsive brief, Defendant asserts that Plaintiffs' revised collective action proposal does not eliminate the variation that occurs at the individual level. Def.'s Br. 1-2. Defendant highlights inconsistencies in the testimony by Plaintiffs who worked within the same department as to what items of PPE the employees wore, how much time they spent donning and doffing, and what was the sequence of their pre- and post-shift activity. Def.'s Br. 8-13. Defendant also discusses purported individualized defenses that it will bring, including whether donning and doffing PPE is compensable under the FLSA. Def.'s Br. 24-27. Defendant contends that the proposed subclasses suffer from the same problem of extensive variation that plagued the larger single class of employees, and that Plaintiffs should not be allowed to proceed with any collective action whatsoever. Def.'s Br. 30.

**IV.    FLSA Legal Standard**

3

The Court thoroughly addressed the standard governing certification of FLSA collective actions in its August 25, 2010 Memorandum. To briefly recap, under the FLSA, "An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (2010). The Third Circuit has directed the district courts in the Third Circuit to analyze collective action certification in two stages. First, at the conditional certification inquiry, a plaintiff must make a sufficient showing of a factual nexus between that individual's situation and other employees' situations, under a "comparatively liberal" standard. Ruehl v. Viacom, Inc., 500 F.3d 375, 388 (3d Cir. 2007). At the second stage, certification is reconsidered after some discovery, and the court engages in specific factual analysis to determine whether each plaintiff opting into the class is an appropriate party. Id. at 389 n.17. "District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial." In re Initial Pub. Offering Secs. Litig., 483 F.3d 70, 73 (2d Cir. 2007).

**V.    Discussion**

Upon reviewing the parties' briefs and the law, the Court makes the following observations:

1. Although the Court made a number of findings on the evidence produced at the two-day evidentiary hearing in its August 25, 2010 Memorandum, this was done for purposes of the collective action only, reflecting this Court's interpretation of In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311-12 (3d Cir. 2008), that district courts are empowered if not obligated to investigate proposed class or collective actions to determine whether a trial in such a matter would be fair to both parties. See 8/25/10 Mem., 2010 WL 3370809 at *8, n.7.

2.  In holding an evidentiary hearing, a judge will likely make factual findings reflecting the Court's credibility observations of the various witnesses, and inferences that may be drawn from testimony and documents.  However, in so ruling on class or collective action issues, the judge may not usurp the role of the jury at trial.  Therefore, this Court's factual observations and findings were only for purposes of ruling on the collective action issue, and do not serve as any factual determinations that would prevent a jury from finding otherwise, or prevent counsel from arguing otherwise to a jury.  See Hydrogen Peroxide, 552 F.3d at 318 ("Although the district court's findings for the purpose of class certification are conclusive on that topic, they do not bind the factfinder on the merits.").

3.  Specifically with regard to some of the named Plaintiffs who testified at the evidentiary hearing, to the extent the Plaintiffs wish to rely on them as being representatives of a certain subclass, this Court's findings as to the credibility of a particular witness may not subsume the right of the Plaintiffs to present their case to a jury and for a jury to make its own determination of credibility.  The more limited issue, for collective action determination, is whether a particular plaintiff or plaintiffs, with their own personal knowledge of the facts, can fairly represent a broader group of individuals.

4.  Division into subclasses is a common technique to assist in resolution of an FLSA collective action.  See, e.g., Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 499 (D. Neb. 2009) (parties may recommend subclasses to address variation among employees with respect to their protective equipment).  However, there are no Third Circuit cases addressing this issue of proceeding to trial by subclass in an FLSA collective action.  Indeed, there is minimal substantive discussion of subclasses in other FLSA cases in the district courts of the Third

Circuit.  E.g., Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660, 671 (E.D. Pa. 2010)

(McLaughlin, J.) (denying motion for conditional certification in FLSA case but suggesting that

plaintiffs might propose subclasses at a later stage); Warner v. Orleans Home Builders, Inc., 550

F. Supp. 2d 583, 584 (E.D. Pa. 2008) (DuBois, J.) (dismissing Pennsylvania Wage Payment and

Collection Law claim as to proposed subclass, and leaving FLSA claim to proceed as to entire

class).  Therefore, this Court has relied on cases outside of the Third Circuit.  An instructive case

similarly pertaining to donning and doffing practices and related compensation at a chicken

processing plant is Frank v. Gold'n Plump Poultry, Inc., No. 04-CV-1018 (PJS/RLE), 2007 WL

2780504 (D. Minn. Sept. 24, 2007) (Schiltz, J.).  There, the court rejected the argument by the

defendant processor, Gold'n Plump Poultry Inc., "that wide variation in what the opt-in plaintiffs

don and doff, and in how different plants are physically configured, make this case unsuitable for

class treatment."  Id. at *4.  Indeed, Judge Schiltz found that the defendant "exaggerate[d] the

factual differences among employees on various shifts and in different departments" by

"zoom[ing] in [too] close[ly]" at the individual level, when in fact "plaintiffs' claims need[ed] to

be considered at a higher level of abstraction."  Id.  After referring the matter to a magistrate

judge, Judge Schiltz ordered that the trial go forward as to "a workable subclass . . . composed of

current and former employees of the Second Processing division at Gold'n Plump's Cold Spring

plant."  Id. at *5 (overruling defendant's objections to the report and recommendation of the

magistrate judge that proposed the subclass).

    5. The Court believes that the Plaintiffs should be given an opportunity to proceed to trial

for one specific subclass.  The Court is not prepared at this time to allow a trial to proceed with

six subclasses, as this could be unduly confusing for the jury and present significant management

problems for handling the case. After a trial of a single subclass, the Court, and counsel, will have gained experience on the management of a collective action. The Court is influenced by the reported decision by Judge Andre M. Davis, formerly of the District of Maryland, and now a member of the Fourth Circuit Court of Appeals, who held a bench trial on whether current and former employees at a chicken processing plant were unlawfully denied compensation under the FLSA for donning and doffing activities. Perez v. Mountaire Farms, Inc., 610 F. Supp. 2d 499 (D. Md. 2009). His opinion can serve as a guideline for trying a donning and doffing FLSA case in this Court.

6. The Court also rejects the Defendant's assertion of numerous defenses as preventing a collective action. The Court views the overriding issue in a collective action to be very simply, whether the Defendant required Plaintiffs to don and doff the PPE as a matter of company policy and, if so, whether the Plaintiffs were paid for that activity. See De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 373 (3d Cir. 2007) (holding that plaintiffs' donning and doffing activity constituted "work" for purposes of compensation under the FLSA as a matter of law, because it was a "form of activity controlled or required by the employer and pursued for the benefit of the employer"). This Court rejects Defendant's arguments that variations in the clothing worn by specific employees, or whether some individuals came earlier to work than others, or what equipment was used and in what sequence, are matters that would interfere with the maintenance of this case as a collective action. These topics may be the subject of testimony at trial that might be relevant to liability and/or may relate to damages.

7. There are many cases holding that class and collective actions can be maintained as such even though there will be variations in the amount of damages awarded to a particular

member of the class or individuals covered by the collective action. See, e.g., Chabrier v. Wilmington Fin., Inc., No. Civ. A. 06-4176, 2008 WL 938872, at *3 (E.D. Pa. Apr. 4, 2008) (Shapiro, J.) ("The need for individual factual determinations is not fatal to certification of a FLSA collective action."). Further, although a party at a trial is entitled to clear legal instructions and a liability verdict in accordance with applicable legal standards, damages can be the subject of estimates and opinion testimony, and the calculation of damages by a jury need not be precise in order to pass muster. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946) (maintaining a collective action where "the employee has proved that he has performed work and has not been paid in accordance with the statute," "[t]he damage is therefore certain," and "uncertainty lies only in the amount of damages . . ."). Thus, the Court views the many reasons that Defendant cited for not allowing any collective action as to any class to be more of a class-wide defense argument, which can be asserted at trial.

8. The most appropriate sub-class will be one composed of those Plaintiffs who worked in the Deboning Department on the Third Shift. The Court finds the facts to be presentable on a collective basis and fair to all parties, based on the evidentiary record and Plaintiffs' October 11, 2010 Supplemental Statement of Facts (Doc. No. 500). The applicable period for this sub-class is February 23, 2004 through December 31, 2007, during which period there is some evidence that Defendant had a policy in effect that required employees to wear a certain level of PPE, and that they were entitled to be paid for their donning and doffing activity of the PPE.

9. The Plaintiffs' three proposed liability questions are verbose and may confuse the jury. The Court understands the issues for trial as whether the Defendant had a policy requiring employees to wear certain PPE, for which they were entitled to payment for donning and doffing,

and whether the Plaintiffs were paid in accordance with Defendant's policy. Plaintiffs' claim that they were not paid for donning and doffing during meal periods would be a separate claim and may extend past the December 2007 time period.

10. The Court's decision to proceed in this manner is well within the Court's discretion. Under the Federal Rules, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross claims, counterclaims, or third-party claims," while "preserv[ing] any federal right to a jury trial." Fed. R. Civ. P. 42(b). The Court has broad discretion in deciding whether to order separate trials, such as for liability and damages. In re Beverly Hills Fire Litig., 695 F.2d 207, 216 (6th Cir. 1982); see also Reed v. Phila., Bethlehem & New Eng. R.R. Co., 939 F.2d 128, 133 (3d Cir. 1991) (noting that "the trial judge is entrusted with wide discretion" on matters of trial proceedings). The Court will leave open the possibility of bifurcating this first trial as to liability and damages. Bifurcating liability and damages, like designating subclasses, is a technique that permits the court to consider more individualized determinations while still proceeding by collective action in an FLSA matter. See Chabrier, 2008 WL 938872, at *3.

## VI. Conclusion

For the foregoing reasons, the Court certifies a collective action for the Deboning Department Third Shift subclass to proceed to trial. An appropriate order follows.

O:\CIVIL 07-08\07-0749 Lugo v. Farmer's Pride\Lugo v. Farmer's Pride Memo 12082010.wpd