**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LUZ LUGO, YESENIA MARCO, et al.** | : | |
| | : | **CIVIL ACTION NO. 07-CV-00749** |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| **FARMERS PRIDE, INC.** | : | **Honorable Michael M. Baylson** |
| | : | |
| *Defendant* | : | |
| | : | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.   INTRODUCTION ................................................................................... 2

II.  ARGUMENT AND AUTHORITY ........................................................... 2

    A.   Summary Judgment Standard. .............................................................. 2

    B.   The Amount Of Plaintiffs' Uncompensated Donning And Doffing Time Per Day
        is *De Minimis*. ..................................................................................... 3

    C.   Donning And Doffing Standard, Non-Unique Clothing And Equipment Is Not
        Integral And Indispensable To Plaintiffs' Principal Activities And Is Thus
        Excluded From Compensation By The Portal-to-Portal Act. .............................. 6

        1.   The Portal-to-Portal Act excludes from compensation all preliminary and
            postliminary activities unless those activities are integral and
            indispensable to the employees' principal activities................................. 6

        2.   Donning and doffing standard safety equipment and sanitary
            outergarments is not integral and indispensable and thus not compensable.8

        3.   Items that Plaintiffs can wear to and from home are not compensable as a
            matter of law........................................................................... 13

    D.   Any "Work" Activities Performed As Part Of Plaintiffs' Meal Period Are Not
        Compensable Under The FLSA Because Plaintiffs' Meal Period Qualifies As A
        Bona Fide Meal Period. ..................................................................... 14

    E.   Farmers Pride Acted In Good Faith And Without Willfulness In The Manner In
        Which It Implemented Its Compensation Schedules. ......................................... 19

        1.   Because Farmers Pride acted in good faith, Plaintiffs' request for
            liquidated damages must be denied as a matter of law............................ 19

        2.   Any violation of the FLSA by Farmers Pride was not willful, and as such,
            Plaintiffs are limited to a two-year statute of limitations period. ............. 22

III. CONCLUSION.................................................................................... 25

CERTIFICATE OF SERVICE ................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abbe v. City of San Diego,
　　No. 05cv1629 DMS (JMA), 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007) ...................... 5

Accu Personnel, Inc. v. Accustaff, Inc.,
　　846 F. Supp. 1191 (D. Del. 1994) ................................................................................ 23

Adeva v. Intertek USA, Inc.,
　　Civil Action No. 09-1096, 2010 WL 97991 (D.N.J. Jan. 11, 2010) .......................... 19-20

Albers v. Tri-State Implement, Inc.,
　　No. CR. 06-4242, 2010 WL 960010 (D.S.D. Mar. 12, 2010) ........................................ 20

Albrecht v. Wackenhut Corp.,
　　No. 07-CV-6162, 2009 WL 3078880 (W.D.N.Y. Sept. 24, 2009) ................................. 13

Alford v. Perdue Farms, Inc.,
　　No. 5:07-cv-87 (CAR), 2008 WL 879413 (M.D. Ga. Mar. 28, 2008) ....................... 8, 10

Alvarez v. IBP, Inc.,
　　339 F.3d 894 (9th Cir. 2003) ................................................................................... 4, 11

Anderson v. Liberty Lobby, Inc.,
　　477 U.S. 242 (1986) ...................................................................................................... 3

Anderson v. Mt. Clemens Pottery Co.,
　　328 U.S. 680 (1946) ................................................................................................... 3-4

Anderson v. Pilgrim's Pride Corp.,
　　147 F. Supp. 2d 556 (E.D. Tex. 2001) ..................................................................... 9, 10

Anderson v. Pilgrim's Pride Corp.,
　　44 Fed. Appx. 652 (5th Cir. 2002) ............................................................................... 10

Avery v. City of Talladega,
　　24 F.3d 1337 (11th Cir. 1994) ................................................................................ 14-15

Bamonte v. City of Mesa,
　　598 F.3d 1217 (9th Cir. 2010) ..................................................................................... 13

Bartholomew v. City of Burlington,
    5 F. Supp. 2d 1161 (D. Kan. 1998)..................................................................... 5

Brooks v. Village of Ridgefield Park,
    185 F.3d 130 (3d Cir. 1999) ........................................................................... 19

Burnison v. Mem'l Hosp., Inc.,
    820 F. Supp. 549 (D. Kan. 1993)................................................................... 15

Chao v. Tyson Foods,
    568 F. Supp. 2d 1300 (N.D. Ala. 2008) ...........................................5, 12, 20, 21

Constant v. Webre,
    No. 07-3042, 2010 WL 2243641 (E.D. La. June 1, 2010)............................... 13

Cross v. Arkansas Forestry Comm'n,
    938 F.2d 912 (8th Cir. 1991) ......................................................................... 19

Dager v. City of Phoenix,
    646 F. Supp. 2d 1085 (D. Ariz. 2009)...................................................... 13-14

De Asencio v. Tyson Foods, Inc.
    No. Civ. A. 00-cv-4294 (E.D. Pa.) ........................................................... 21-22

De Asencio v. Tyson Foods, Inc.,
    500 F.3d 361 (3d Cir. 2007) .....................................................................12, 22

Dewitt v. Penn-Del Directory Corp.,
    106 F.3d 514 (3d Cir. 1997) ......................................................................... 23

First Nat'l Bank of Arizona v. Cities Serv. Co.,
    391 U.S. 253 (1968)........................................................................................ 3

Fowler v. Incor,
    279 Fed. Appx. 590 (10th Cir. 2008)............................................................. 23

Garcia v. Tyson Foods, Inc.,
    No. 06-2198, 2011 WL 346078 (D. Kan. Jan. 31, 2011)................................ 17

Gorman v. The Consolidated Edison Corp.,
    488 F.3d 586 (2d Cir. 2007) ................................................................. 10, 11-12

Hesseltine v. The Goodyear Tire & Rubber Co.,
    391 F. Supp. 2d 509 (E.D. Tex. 2005) ............................................................ 4

Hill v. United States,
    751 F.2d 810 (6th Cir. 1984) ................................................................15, 16

IBP, Inc. v. Alvarez,
    546 U.S. 21 (2005) ................................................................................11, 24

Jenkins v. Harrison Poultry, Inc.,
    Civ. No. 2:07-cv-0058-WCO, 2008 U.S. Dist. LEXIS 110597 (N.D. Ga. July 29, 2008)4-5, 10-11

Johnson v. Diamond State Port Corp.,
    50 Fed. Appx. 554 (3d Cir. 2002) ................................................................. 3

Kassa v. Kerry,
    487 F. Supp. 2d 1063 (D. Minn. 2007) ......................................................... 5

Lamon v. City of Shawnee,
    972 F.2d 1145 (10th Cir. 1992) ................................................................. 14

Lindow v. United States,
    738 F.2d 1057 (9th Cir. 1984) ..................................................................... 4

Lugo v. Farmers Pride, Inc.,
    2008 WL 161184 (E.D. Pa. Jan. 15, 2008) ................................................. 21

Marti v. Grey Eagle Distribs.,
    937 F. Supp. 845 (E.D. Mo. 1996) ............................................................. 15

Martin v. Cooper Elec. Supply Co.,
    940 F.2d 896 (3d Cir. 1991) ....................................................................... 19

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) .................................................................................... 3

McComb v. C.A. Swanson & Sons,
    77 F. Supp. 716 (D. Neb. 1948) ................................................................. 11

McGrath v. City of Philadelphia,
    864 F. Supp. 466 (E.D. Pa. 1994) .............................................................. 15

McIntyre v. Joseph E. Seagram & Sons,
    72 F. Supp. 366 (W.D. Ky. 1947) ............................................................... 4

McLaughlin v. Richland Shoe Co.,
    486 U.S. 128 (1988) .................................................................................. 23

Mendex v. The Radec Corp.,
    232 F.R.D. 78 (W.D.N.Y. 2005) ............................................................... 15

Musticchi v. City of Little Rock, Arkansas,
    734 F. Supp. 2d 621 (W.D. Ark. 2010).................................................... 13

Nardone v. General Motors, Inc.,
    207 F. Supp. 336 (D.N.J. 1962)................................................................. 4

Oakes v. Pennsylvania,
    871 F. Supp. 797 (M.D. Pa. 1995) ........................................................... 15

Pabst v. Oklahoma Gas & Electric Co.,
    228 F.3d 1128 (10th Cir. 2000) ............................................................... 24

Pirant v. U.S. Postal Serv.,
    542 F.3d 202 (7th Cir. 2008) ................................................................... 11

Powell v. Carey Int'l, Inc.,
    No. 05-21395-CIV, 2007 WL 419442 (S.D. Fla. Feb. 1, 2007).................... 12

Reich v. IBP,
    Civ. A. No. 88-2171, 1996 WL 137817 (D. Kan. Mar. 21, 1996) ............ 5, 11

Reich v. IBP, Inc.,
    38 F.3d 1123 (10th Cir. 1994) .......................................................... 4, 8-9, 13

Reich v. IBP, Inc.,
    820 F. Supp. 1315 (D. Kan. 1993)............................................................. 8

Reich v. Oscar Mayer Foods Corp.,
    No. 4:93CV204, 1995 WL 1765643 (E.D. Tex. Mar. 2, 1995).................... 11

Roy v. County of Lexington,
    141 F.3d 533 (4th Cir. 1998) ................................................................... 14

Sandifer v. U.S. Steel Corp.,
    No. 2:07-CV-443 RM, 2009 WL 3430222 (N.D. Ind. Oct. 15, 2009)............ 5

Saunders v. John Morrell Co.,
    No. C88-4143, 1991 WL 529542 (N.D. Iowa Dec. 24, 1991) ...................... 24

Scott v. City of New York,
    592 F. Supp. 2d 386 (S.D.N.Y. 2008) ........................................................ 5

Scott v. Harris,
        550 U.S. 372 (2007) ...................................................................................... 3

Sepulveda v. Allen Family Foods, Inc.,
        591 F.3d 209 (4th Cir. 2009) ...................................................................16, 17

Steiner v. Mitchell,
        350 U.S. 247 (1956) ...........................................................................7, 8, 11

Tum v. Barber Foods, Inc.,
        No. 00-371-P-C, 2002 WL 89399 (D. Me. Jan. 23, 2002)................................. 21, 23-24

Von Friewalde v. Boeing Aerospace Operations, Inc.,
        339 Fed. Appx. 448, 454 (5th Cir. 2009) .................................................... 10

White v. Tip-Top Poultry, Inc.,
        Civ. No. 4:07-cv-0101-HLM, 2008 U.S. Dist. LEXIS 110598 (N.D. Ga. Oct. 7, 2008) ... 4

Woods v. ERA Med LLC,
        677 F. Supp. 2d 806 (E.D. Pa. 2010) .......................................................... 23

## Rules and Regulations

FED. R. CIV. P. 56 ............................................................................................... 2, 3

29 C.F.R. § 790.7(g) ........................................................................................... 8, 10

29 C.F.R. § 785.19 ..............................................................................................14, 17

## Miscellaneous

29 U.S.C. § 201 ...........................................................................................*passim*

29 U.S.C. § 254(a).......................................................................................*passim*

29 U.S.C. § 260 .............................................................................................19, 20

29 U.S.C. § 255(a)..........................................................................................22-23

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, Defendant Farmers Pride, Inc. ("Farmers Pride") respectfully moves for summary judgment on Plaintiffs' Complaint.  As discussed below, Farmers Pride is entitled to judgment as a matter of law on Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), for compensation for all donning- and doffing-related activities because the amount of uncompensated time at issue is *de minimis* as a matter of law.  Alternatively, Farmers Pride is entitled to partial summary judgment on Plaintiffs' claims for compensation related to donning and doffing the standard safety equipment and sanitary outergarments at issue because such activities are not integral and indispensable and are thus excluded from compensation by the Portal-to-Portal Act, 29 U.S.C. § 254(a).  Furthermore, Farmers Pride is entitled to summary judgment on Plaintiffs' claims for compensation for the unpaid portions of the meal periods because Plaintiffs receive the predominant benefit of the meal periods.  Therefore, the meal period is "bona fide," and Plaintiffs are not entitled to any compensation for any "work" activities that allegedly occur during their meal periods.  Finally, there is no genuine dispute that Farmers Pride acted in good faith and did not knowingly or recklessly violate the FLSA.  Accordingly, Farmers Pride is entitled to judgment on the issues of liquidated damages and the applicable limitations period for the FLSA claims.

## II.     ARGUMENT AND AUTHORITY[1]

### A.     Summary Judgment Standard.

Summary judgment is proper if the movant can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV.

---

[1] Pursuant to the Court's Standing Orders, Farmers Pride has submitted a separate Statement of Undisputed Material Facts.  All facts and evidence discussed in this brief derive from the Statement of Undisputed Material Facts and the supporting exhibits.

P. 56(a).  While the evidence should be viewed in the light most favorable to the non-moving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' and summary judgment should be granted."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

In opposing a properly supported motion for summary judgment, the non-moving party may not rest upon "mere allegation[s] or denials" of its pleadings and it "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 256; Scott v. Harris, 550 U.S. 372, 380 (2007).  Instead, the non-moving party must present "significant probative evidence" in support of its complaint to defeat the motion for summary judgment.  Anderson, 477 U.S. at 249; Johnson v. Diamond State Port Corp., 50 Fed. Appx. 554, 557 (3d Cir. 2002).

**B.    The Amount Of Plaintiffs' Uncompensated Donning And Doffing Time Per Day Is De Minimis.**

In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the Supreme Court held that otherwise compensable activities (in that case, certain donning and doffing activities) are not included in calculating hours worked if the period of time spent on the activities is so "insubstantial and insignificant" that it ought not be included in the workweek.  Id. at 693.  "[A] few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded. Split-second absurdities are not justified . . . .  It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."  Id. at

692.  "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable."  Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984); see also Hesseltine v. The Goodyear Tire & Rubber Co., 391 F. Supp. 2d 509, 520 (E.D. Tex. 2005) ("Plaintiffs' claims for ten minutes or less are *de minimis* as a matter of law."); see also Nardone v. General Motors, Inc., 207 F. Supp. 336, 340-41 (D.N.J. 1962) (between 12 and 16 minutes found "insubstantial"); McIntyre v. Joseph E. Seagram & Sons, 72 F. Supp. 366, 372 (W.D. Ky. 1947) ("The evidence in this case conclusively shows that complainant, acting with reasonable dispatch, could, after punching in at the time clock, go to his locker, exchange a soiled for a clean uniform, change his clothing and report to his foreman ready for productive work in from 10 to 20 minutes. Such time is within the *de minimis* rule."); DOL Wage and Hour Opinion Letter, dated Apr. 6, 1971 (clothes washing of up to 20 minutes per day is *de minimis*); DOL Wage and Hour Opinion Letter, dated Jan. 27, 1947 (treating clothes changing of not more than five minutes each at the beginning and end of the workday as *de minimis*); DOL Wage and Hour Opinion Letter, dated Oct. 24, 1946 (treating washing of less than five minutes per instance as *de minimis*), attached collectively as Ex. 45.

And numerous courts have granted employers summary judgment on the *de minimis* defense as to donning and doffing of standard safety equipment and sanitary outergarments.  See, e.g., Alvarez v. IBP, Inc., 339 F.3d 894, 903-04  (9th Cir. 2003) (donning and doffing of all "non-unique protective gear" is *de minimis*); Reich v. IBP, Inc., 38 F.3d 1123, 1126 n.1 (10th Cir. 1994) (same regarding hard hats, earplugs, safety footwear, safety eyewear); White v. Tip-Top Poultry, Inc., Civ. No. 4:07-cv-0101-HLM, 2008 U.S. Dist. LEXIS 110598, at *35 (N.D. Ga. Oct. 7, 2008) (same regarding smock, hairnet, and earplugs) (Attached as Ex. 46); Jenkins v. Harrison Poultry, Inc., Civ. No. 2:07-cv-0058-WCO, 2008 U.S. Dist. LEXIS 110597, at *21

(N.D. Ga. July 29, 2008) (same regarding dust mask, safety glasses, earplugs, and hairnet) (Attached as Ex. 47); <u>Abbe v. City of San Diego</u>, No. 05cv1629 DMS (JMA), 2007 WL 4146696, at *5 (S.D. Cal. Nov. 9, 2007) (same regarding all "safety gear") (Attached as Ex. 48); <u>Sandifer v. U.S. Steel Corp.</u>, No. 2:07-CV-443 RM, 2009 WL 3430222, at *6 (N.D. Ind. Oct. 15, 2009) (even if hard hats, safety glasses, and earplugs not excluded by FLSA § 3(o), they would be excluded as *de minimis*) (Attached as Ex. 49); <u>Kassa v. Kerry</u>, 487 F. Supp. 2d 1063, 1067 n.1 (D. Minn. 2007) (same as to hairnets and beardnets).

In analyzing Farmers Pride's *de minimis* defense, the Court must take into account the time Farmers Pride has already paid for Plaintiffs' donning and doffing activities.  <u>See, e.g.</u>, <u>Scott v. City of New York</u>, 592 F. Supp. 2d 386, 410 (S.D.N.Y. 2008) (holding that, in regards to the *de minimis* defense, parties must submit evidence of "the aggregate of time actually worked and <u>uncompensated</u>") (emphasis added); <u>Chao v. Tyson Foods</u>, 568 F. Supp. 2d 1300, 1320 (N.D. Ala. 2008) (holding that the employer must prove that "the amount of <u>uncompensated</u> time, per day, is *de minimis*") (emphasis added); <u>Bartholomew v. City of Burlington</u>, 5 F. Supp. 2d 1161, 1170 (D. Kan. 1998) (dismissing plaintiffs' pre-shift claims because "plaintiffs' <u>uncompensated</u> time spent preparing for work was *de minimis*") (emphasis added); <u>Reich v. IBP</u>, Civ. A. No. 88-2171, 1996 WL 137817, at *6 (D. Kan. Mar. 21, 1996) (focusing on the "<u>uncompensated</u> work performed by IBP employees" in analyzing the *de minimis* doctrine) (emphasis added) (Attached as Exhibit 50).

Here, even under Plaintiffs' expert's own numbers, the donning, doffing, walking, and washing activities take on average 27.32 minutes per day in the Live Receiving Department, 15.76 minutes per day in the Evisceration Department, 12.13 minutes per day in the "Cut and Pack" Department, and either 17.44 or 19.04 minutes per day in the Deboning Department.  Ex.

21 at 16; Ex. 22 Table 8.   Once the additional paid minutes provided under Farmers Pride's compensation schedules are taken into account, which is mandated by the above-cited case law, there remains no more then 18 minutes in the Live Receiving Department, 6 minutes in the Evisceration Department, 2 minutes in the Cut-Up and Packing Departments, and 9 minutes in the Deboning Department of <u>uncompensated</u> time for the pre-2007 time period, even under Plaintiffs' theory of the law.   Ythier Decl. at Exs. A-F.   And, in regards to the post-2007 time period, there remains no more than 5 minutes in the Live Receiving Department, 1 minute in the Evisceration Department, 1 minute in the Cut-Up and Packing Departments, and 4 minutes in the Deboning Department of <u>uncompensated</u> time per day.   Id.[2]   Therefore, as in the cases cited above, the daily, allegedly uncompensated minutes Plaintiffs allegedly spent engaged in donning, doffing, walking, and washing are not compensable because they are *de minimis*, and Farmers Pride respectfully requests that the Court grant summary judgment in its favor on Plaintiffs' pre- and post-2007 claims.

**C.**   **Donning And Doffing Standard, Non-Unique Clothing And Equipment Is Not Integral And Indispensable To Plaintiffs' Principal Activities And Is Thus Excluded From Compensation By The Portal-to-Portal Act.**

    **1.**   **The Portal-to-Portal Act excludes from compensation all preliminary and postliminary activities unless those activities are integral and indispensable to the employees' principal activities.**

Farmers Pride is entitled to summary judgment on Plaintiffs' pre- and post-shift claims for donning and doffing their standard, non-unique clothing and equipment because those preliminary and postliminary activities are excluded from compensation under the Portal-to-Portal Act.   These standard, non-unique items are the hairnet, beardnet, earplugs, smock,

---

[2] Plaintiffs' claims for the post-2007 time period are limited to donning and doffing activities before and after their meal periods, hence the smaller number of uncompensated time post-2007.

footwear (including rubber boots), cotton gloves, rubber gloves, vinyl apron, plastic sleeves, disposable dust mask, and safety glasses worn by Plaintiffs.[3]

In 1947, Congress amended the FLSA by enacting the Portal-to-Portal Act to clarify the duties of employers with respect to compensating employees for activities that constitute "work" under the FLSA but that occur before or after the work shift.  Specifically, under the Portal-to-Portal Act, employers are <u>not</u> required to compensate employees for activities that are preliminary or postliminary to the employee's principal work activities, even if those activities are otherwise considered "work" under the FLSA.  29 U.S.C. § 254(a)(2).  In <u>Steiner v. Mitchell</u>, 350 U.S. 247 (1956), the Supreme Court of the United States created a limited exception to the Portal-to-Portal Act's exclusion of preliminary and postliminary activities from compensation, holding that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the FLSA <u>if</u> those activities are an integral and indispensable part of the principal activities for which covered workmen are employed."  <u>Id.</u> at 256 (emphasis added).  The <u>Steiner</u> Court also recognized the general rule that clothes changing and cleaning is not integral and indispensable and thus not compensable.  <u>Id.</u> at 249 (noting that "the Government concedes that [changing clothes and showering under normal conditions] ordinarily constitute preliminary or postliminary activities excluded from compensable work time").  Nonetheless, the Court in <u>Steiner</u> found that the employees in that case were entitled to compensation for changing clothes and showering due to the fact that the employees worked in a battery factory and were exposed to toxic chemicals.  <u>Id.</u>

---

[3] Plaintiffs who use knives or scissors are required to wear additional, non-standard clothing and equipment such as a mesh cut-resistant glove or whizzard cut-resistant glove and/or a plastic arm guard. Farmers Pride does not seek summary judgment based on the Portal-to-Portal Act in regards to these items, but as set forth in Section II.B., the donning and doffing of these items are nevertheless *de minimis* and non-compensable as a matter of law.

at 256 ("[I]t would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees.").

      **2.**    **Donning and doffing standard safety equipment and sanitary outergarments is not integral and indispensable and thus not compensable.**

Most federal courts have relegated the precedential value of the <u>Steiner</u> decision to the unique facts of the case. <u>See, e.g.</u>, <u>Reich v. IBP, Inc.</u>, 820 F. Supp. 1315, 1324 (D. Kan. 1993) (recognizing that <u>Steiner</u> is to be construed narrowly and noting that the decision in favor of compensability was based on the extreme dangers involved in working with toxic chemicals). As one district court recently observed:

> Ordinarily, such activities as changing clothes and showering are preliminary or postliminary activities that are not compensable. Nearly every occupation requires some attention to dress and grooming, and this is normally done on an employee's own time. Some employees, such as office workers or food-service workers, find it necessary to wash before work. Other employees, such as construction workers or landscapers, might find it more sensible to wash after work. A lawyer, banker, or bureaucrat might be required to spend a few moments each morning tying a tie around his neck. A bus driver might have to put on a uniform. A retail clerk might have to pin on a name tag. The regulations promulgated by the Secretary of Labor recognize that these activities are not integral to work activities. <u>See</u> 29 C.F.R. § 790.7(g). Although they may be required by or ultimately for the benefit of the employer, these activities are only preliminary to the principal activities for which the employees are engaged.

<u>Alford v. Perdue Farms, Inc.</u>, No. 5:07-cv-87 (CAR), 2008 WL 879413, at *3 (M.D. Ga. Mar. 28, 2008) (Attached as Ex. 51).

As a result, the case law on the compensability of standard safety items and sanitary outergarments, particularly as it relates to the meat-processing industry, is nearly unanimous in holding that donning and doffing standard, lightweight clothing and equipment is not integral and indispensable to employees' principal activities. For example, in <u>Reich v. IBP, Inc.</u>, 38 F.3d

1123 (10th Cir. 1994), the Tenth Circuit differentiated between the standard items – safety glasses, earplugs, hard hats, and safety shoes – and the more specialized protective gear required for employees who worked with cutting equipment, including arm guards, cut-resistant gloves, and shin guards.  The court found that time spent putting on and taking off the standard items, though required by the employer, was comparable to the time any other employee would spend getting dressed before work or undressed after work and therefore not "work":

> Requiring employees to show up to their workstations with such standard equipment is no different from having a baseball player show up in a uniform, a businessperson with a suit and tie, or a judge with a robe.  It is simply a prerequisite for the job, and is purely preliminary in nature.

Id. at 1126, n. 1; see also id. at 1126 ("[T]he time utilized donning, removing, picking up, and depositing for laundering sanitary outergarments is essentially time used to change clothes and thus is preliminary and postliminary within the meaning of the Portal-to-Portal Act.  Furthermore, although required and of some value to the employer, the outergarments are primarily for the benefit of the employee, and thus . . . are not integral and indispensable to IBP.").

Similarly, in Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556 (E.D. Tex. 2001), the court granted summary judgment to a poultry-processor in a case involving an apron, smock, cotton gloves, rubber gloves, rubber boots, cooler boots, hairnet, earplugs, and plastic sleeves. Id. at 561.  The court rejected the plaintiffs' argument that, when employees are "required" to put on certain clothing items, the activities become presumptively integral and indispensable to the principal activity.  Id. at 563.  Noting that considering whether an item or activity was "required" has been "rejected by other courts" as a relevant test, the court held that the donning and doffing at issue was non-compensable under the Portal-to-Portal Act:

> In the instant case, the wearing of clean outergarments benefits the employees because it protects their street clothes from becoming soiled.  To be certain, the wearing of these outergarments also benefits Pilgrim's Pride.  However, in light of preexisting case law, the clothes changing activity required of the line employees in this case is not "integral and indispensable" to their principal jobs.  Thus, the Court concludes that the donning and doffing of the sanitary and safety equipment qualifies as a preliminary and postliminary activity within the meaning of the Portal-to-Portal Act.

Id.  The Fifth Circuit affirmed the district court's decision "for essentially the reasons stated by the careful opinion of [the district court]."  44 Fed. Appx. 652 (5th Cir. 2002); see also  Von Friewalde v. Boeing Aerospace Operations, Inc., 339 Fed. Appx. 448, 454 (5th Cir. 2009) ("[D]onning and doffing of generic protection gear such as safety glasses and hearing protection, are in any event non-compensable, preliminary tasks under the Portal-to-Portal Act.").

The district court in Alford, 2008 WL 879413, reached the same conclusion in granting summary judgment to a poultry processor in a case involving sanitary garments (a hairnet and beardnet) and several standard safety items (safety glasses, earplugs, boots, and bump caps):

> Gorman [v. The Consolidated Edison Corp., 488 F.3d 586 (2d Cir. 2007)], Alvarez, and Steiner together display a sound judicial instinct.  At their heart, these decisions recognize that the simple act of putting on a pair of boots, a hair net, a cap, and ear plugs is difficult to distinguish from the act of "changing clothes and showering under normal conditions," an act that is by definition preliminary or postliminary to work activities.  29 C.F.R. § 790.7(g). . . . It is a task that adds little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertakes every day.  Thus, . . . the donning and doffing of such gear is a perfect example of the sort of preliminary or postliminary activity excluded from FLSA's coverage by the Portal-to-Portal Act.

Id. at *6.

Other courts in food-processing settings have reached the same conclusion.  See, e.g., Jenkins, 2008 U.S. Dist. LEXIS 110597, at *14-16 (granting summary judgment for defendant

because donning and doffing of safety glasses, ear protection, a hairnet, and a dust mask, though required, was not integral and indispensable and thus constituted preliminary and postliminary activities within the meaning of the Portal-to-Portal Act); Reich v. Oscar Mayer Foods Corp., No. 4:93CV204, 1995 WL 1765643, at * 2 (E.D. Tex. Mar. 2, 1995) (rejecting DOL argument that Steiner requires payment for time spent before and after shift changing into and out of a clean uniform, safety glasses, earplugs, and hard hats) (Attached as Ex. 52); McComb v. C.A. Swanson & Sons, 77 F. Supp. 716, 720 (D. Neb. 1948) (holding that, despite the fact that employees in a poultry plant were legally required to wear aprons, frocks, and other outer clothing and to maintain the cleanliness of the garments, donning this clothing was a preliminary activity and thus not compensable).[4]

Decisions involving uniforms or standard protective gear in other industries are in accord. In Pirant v. U.S. Postal Serv., 542 F.3d 202 (7th Cir. 2008) (as modified), the Seventh Circuit relied on Reich v. IBP in a post-Alvarez decision and stated as follows: "Here, Pirant was not required to wear extensive and unique protective equipment, but rather only a uniform shirt, gloves, and work shoes. The donning and doffing of this type of work clothing is not 'integral and indispensable' to an employee's principal activities and therefore is not compensable under the FLSA." Id. at 208-09; see also Gorman, 488 F.3d at 594 (affirming dismissal of claims for time nuclear power plant employees spent changing into and out of steel-toed boots, a helmet, and safety glasses and holding that "[t]he donning and doffing of generic protective gear is not

---

[4] The Supreme Court's decision in IBP, Inc. v. Alvarez, 546 U.S. 21 (2005), did not address the compensability of donning and doffing-related activities associated with standard, non-unique clothing and equipment. Id. at 31. As the Supreme Court noted, however, the district court had held that donning and doffing standard clothing and equipment was non-compensable. Id. (noting that the district court "did not . . . allow recovery for ordinary clothes changing and washing, or for the donning and doffing of hard hats, earplugs, safety glasses, boots, or hairnets"). The parties did not challenge the district court's holding on this issue, and thus the issue was not before the Supreme Court.

rendered integral by being required by the employer or by government regulation"); Powell v. Carey Int'l, Inc., No. 05-21395-CIV, 2007 WL 419442, at *13 (S.D. Fla. Feb. 1, 2007) (employer entitled to summary judgment for pre- and post-shift time spent changing into uniforms) (Attached as Ex. 53).[5]

These cases compel the conclusion that the standard safety equipment and sanitary outergarments worn by Plaintiffs and the donning and doffing activities related to those items are not integral and indispensable to Plaintiffs' principal activities. The undisputed facts demonstrate that many of the standard items worn by employees are not required by Farmers Pride. Specifically, certain Plaintiffs concede that boots, cotton gloves, plastic sleeves, vinyl aprons, and plastic sleeves are not required by Farmers Pride but are instead worn at Plaintiffs' own option.[6] Even with respect to the required items for any particular job, Plaintiffs cannot prove that the items are "necessary," as required by the integral and indispensable analysis. The above-cited cases make clear that the mere fact that these items are required by Farmers Pride does not establish that the items are integral and indispensable. See also Chao v. Tyson Foods, 568 F. Supp. 2d at 1314 n.13 ("[B]ecause the Eleventh Circuit has specifically enumerated the necessity of activities as a separate element from whether the activities are required, it is not

---

[5] The Third Circuit has not addressed the issue of whether donning and doffing standard, non-unique safety items and sanitary garments is excluded from compensation by the Portal-to-Portal Act. In De Asencio v. Tyson Foods, Inc., 500 F.3d 361 (3d Cir. 2007), the Third Circuit was reviewing a jury's verdict in favor of Tyson on the "work" issue, and its holding was therefore limited to the "work" issue based on the undisputed facts "in this case." Id. at 364 n.4, 373. The Portal-to-Portal Act issue had not been presented to the jury because Tyson withdrew it for purposes of that first trial. Id. at 373. The Third Circuit remanded the case to the district court for further proceedings on Tyson's Portal-to-Portal Act and de minimis defenses. Id. at 373-74.

[6] Though other Plaintiffs offered conflicting testimony in regards to whether some of these items are required, Plaintiffs cannot have it both ways. Plaintiffs are pursuing a "representative action" using "representative evidence." See Pls.' Proposed Trial Plan (Dkt #456). Either Plaintiffs' testimony on these issues is not truly representative of the class (in which case the case should not be allowed to continue on a class basis), or the testimony is representative and binding on the class.

likely that that court would conflate the two elements.") (emphases in original).  Finally, it is undisputed that Plaintiffs derive substantial benefit from the standard items because the items keep their street clothes clean, keep them dry and warm, protect their hearing, keep product out of their hair and facial hair, keep dust out of their nose and mouth, and protect their eyes from foreign objects.

For these reasons, the pre- and post-shift donning, doffing, and washing activities associated with the standard, lightweight clothing and equipment worn by Plaintiffs is not integral and indispensable and is thus excluded from compensation by the Portal-to-Portal Act. Farmers Pride is entitled to judgment as a matter of law with respect to Plaintiffs' pre- and post-shift claims for compensation with regard to these items.

**3.     Items that Plaintiffs can wear to and from home are not compensable as a matter of law.**

For separate reasons, Farmers Pride is entitled to summary judgment as to the compensability of the hairnet, beardnet, safety glasses, earplugs, and any footwear (including rubber boots) worn by Plaintiffs because it is undisputed that those items can be worn to and from home.  The case law is clear that the ability to wear these items to and from home renders them non-compensable as a matter of law.  See, e.g., Bamonte v. City of Mesa, 598 F.3d 1217, 1227-29 (9th Cir. 2010) (ability to don protective items or uniforms at home renders the activity non-compensable); Reich v. IBP, 38 F.3d at 1126 (donning safety glasses, hard hat, and safety shoes not compensable work where such items can be worn from home); Musticchi v. City of Little Rock, Arkansas, 734 F. Supp. 2d 621, 625-28 (W.D. Ark. 2010) (same) (Attached as Ex. 54); Constant v. Webre, No. 07-3042, 2010 WL 2243641, at *3 (E.D. La. June 1, 2010) (same) (Attached as Ex. 55); Albrecht v. Wackenhut Corp., No. 07-CV-6162, 2009 WL 3078880 at *8 (W.D.N.Y. Sept. 24, 2009) (same) (Attached as Ex. 56); Dager v. City of Phoenix, 646 F. Supp.

2d 1085, 1099 (D. Ariz. 2009).   For this independent reason, Farmers Pride is entitled to summary judgment with respect to Plaintiffs' claims for compensation for donning and doffing hairnets, beardnets, earplugs, safety glasses, and footwear.

**D.      Any "Work" Activities Performed As Part Of Plaintiffs' Meal Period Are Not Compensable Under The FLSA Because Plaintiffs' Meal Period Qualifies As A Bona Fide Meal Period.**

Plaintiffs seek compensation for donning, doffing, washing and other activities that take place during their thirty-minute meal period.[7]   However, because the meal period is a "bona fide" meal period, they are not entitled to compensation for any part of that time.

Under the FLSA, "bona fide meal periods are not worktime" and are thus properly excludable from compensable worktime.   29 C.F.R. § 785.19.   To qualify as a bona fide meal period, the Department of Labor's regulations provide that "[t]he employee must be completely relieved from duty for the purposes of eating regular meals."   Id.

The overwhelming majority of courts to consider the issue have not interpreted the regulation literally and have instead adopted the "predominantly-for-the-employer's-benefit standard" in determining whether a meal period is bona fide under the FLSA.   See Lamon v. City of Shawnee, 972 F.2d 1145, 1157-58 (10th Cir. 1992) (the standard for evaluating whether meal periods are compensable is whether the employee's time is spent during the meal period predominantly for the benefit of the employer); Roy v. County of Lexington, 141 F.3d 533, 544 (4th Cir. 1998) ("Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act."); Avery v. City of Talladega, 24 F.3d 1337, 1347 (11th Cir. 1994) (while the employer undoubtedly benefited from

---

[7] Farmers Pride's compensation schedules provided and continue to provide additional paid time before and after the 30-minute meal period for doffing and re-donning activities.

requiring patrol officers to leave their radios on and stay within the jurisdiction during meal periods, the time was provided predominantly for the benefit of the officers and found non-compensable); Mendex v. The Radec Corp., 232 F.R.D. 78, 83 (W.D.N.Y. 2005) ("[T]he relevant question is whether the break itself is predominantly spent on activities for the employer's benefit not on whether the employee did anything at all for the employer's benefit."); Marti v. Grey Eagle Distribs., 937 F. Supp. 845, 852 (E.D. Mo. 1996) (holding plaintiffs' breaks noncompensable where employees were free "to enjoy a variety of recreation and amusements during breaks"); Burnison v. Mem'l Hosp., Inc., 820 F. Supp. 549, 556 (D. Kan. 1993) (noting that "the proper standard for determining compensability of a meal period is whether the [employee] is . . . primarily . . . engaged in work-related duties during meal periods") (internal citation and quotations omitted).   Under this standard, as long as an employee receives the predominant benefit of the meal period, the entire period is non-compensable notwithstanding the fact that the employee may engage in certain limited or insubstantial work activities during the meal period.   Though the Third Circuit has not addressed the issue, this Court has adopted the predominant benefit test.   See, e.g., McGrath v. City of Philadelphia, 864 F. Supp. 466, 479-481 (E.D. Pa. 1994); see also Oakes v. Pennsylvania, 871 F. Supp. 797, 799-800 (M.D. Pa. 1995) (accord).

The applicable analysis for Plaintiffs' claims for meal period activities was demonstrated in Hill v. United States, 751 F.2d 810, 814 (6th Cir. 1984).   In Hill, the plaintiff was a postal employee who had to carry with him and safeguard during his lunch various items used to perform his job.   Id. at 811.   The Sixth Circuit held that none of these responsibilities were "substantial duties" that rendered the lunch period predominantly for the employer's benefit.   Id. at 814-15.   The postal employee also argued that rules requiring him to act courteously, accept

mail from customers, and provide customers postal information and forms meant that he had to respond to any customer inquiries he received while on his lunch break. Id. at 811-12. The court rejected this argument, noting that he was not required to accept mail from customers during the meal period and that any interruption of his lunch by a customer seeking information was infrequent. Id. at 815. According to the court, "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." Id. at 814.

The Fourth Circuit has found that activities such as donning and doffing were not compensable when performed during a bona fide meal period. The plaintiffs in Sepulveda v. Allen Family Foods, Inc., 591 F.3d 209 (4th Cir. 2009), worked at a poultry-processing plant and sought compensation for donning and doffing activities that occurred during their meal periods:

> Each day, the employees receive a thirty-minute lunch break, during which no chickens are placed on the production line. Employees are free to leave the production area when the last chicken passes their stations but are expected to be back when the first new chicken arrives. During the lunch break, they typically take off their gloves and aprons, wash up, and then walk to the cafeteria. Upon returning to the production area, they put these items back on and then sanitize them before resuming work. . . . Employees . . . do not receive compensation during the lunch break.

Id. at 213. The Fourth Circuit applied the predominant benefit test to the plaintiffs' meal period claims and found that "the time [the plaintiffs] spend during their lunch breaks donning and doffing a few items" was not compensable "because it is part of a bona fide meal period." Id. at 216 n.4. In other words, because the 30-minute meal period as a whole was predominantly for the benefit of the employees, the entire 30 minutes was non-compensable, despite the fact that

the plaintiffs spent a few minutes during that 30-minute period performing donning and doffing activities.

That the Fourth Circuit reached the right result in <u>Sepulveda</u> is supported by the plain language of 29 C.F.R. § 785.19, which excludes bona fide meal periods from the compensable "continuous workday." 29 C.F.R. § 785.19. Such an exclusion would be meaningless if employers were required to pay for any incursion of doffing and donning during the meal period, which would effectively create two or more "continuous workdays" during a single shift and eliminate the need to refer to exclusion of the meal period. The better reading of the regulation is that so long as the meal period, considered in its entirety, predominantly benefits the employee, it is bona fide and thus non-compensable, regardless of the type of incursion at issue. <u>Garcia v. Tyson Foods, Inc.</u>, No. 06-2198, 2011 WL 346078, at *11 (D. Kan. Jan. 31, 2011) ("[T]he court rejects plaintiffs' suggestion that any time spent during the meal period performing otherwise compensable work must be compensated even though the remainder of the meal period is unpaid. . . . [T]he <u>entire meal period may be noncompensable</u> even when an employee is required to do <u>some amount of work</u> during that meal period.") (emphasis added) (Attached as Ex. 57).

In this case, Plaintiffs concede that they do not perform production work during the meal period. Thus, the activities that allegedly infringe on the meal period are donning and doffing related. According to Plaintiffs' expert, Plaintiffs spend an of average 4 to 8 minutes engaged in donning and doffing activities before and after their meal period. Pursuant to the compensation schedules, Farmers Pride provides additional paid time before and after the 30-minute meal period for donning and doffing activities, which means that, even under Dr. Mericle's expansive measurements, there are only approximately 1 to 5 minutes of uncompensated donning and

doffing time during the meal period.[8]   The rest of the meal period time can be used by Plaintiffs in whatever manner they choose.   In fact, Plaintiffs have admitted in depositions that they are free to engage in a wide variety of personal activities during their meal period for their own benefit.   Specifically, they may eat, socialize, read, smoke, talk on the telephone, and even travel outside of the facility for food and other errands.   Moreover, several Plaintiffs concede that they spend only minimal time during the meal period on doffing and donning activities and agree that they only have to remove some, but not all, of the items they wear over their street clothing before going to lunch.   On balance, the minimal activities that Plaintiffs engage in before and after their meal periods are incidental activities that are insufficient to affect the bona fide status of the meal period.   The fact that Farmers Pride may derive some benefit from the minimal doffing and donning activities that occur before and after the meal period is not the test.   Instead, because the predominant benefit is for Plaintiffs to rest, eat, and use the time for their own purposes, the meal period is "bona fide" and thus non-compensable in its entirety.

---

[8] The exact calculation can be determined by comparing Dr. Mericle's meal period calculation at page 16 of his report to the varying amounts of paid time provided under the compensation schedules in effect during the limitations period.   For example, Dr. Mericle calculated the average time for meal period activities in Cut-Up and Packing to be 4.89 minutes.   Ex. 21 at 16.   Under the December 21, 2005 compensation schedule, Third-Shift Cut-Up and Third-Shift Packing employees received 4 additional paid minutes before and after their meal period, thus leaving .89 minutes of uncompensated donning and doffing time.   Ythier Decl. at Ex. E.   Similarly, Dr. Mericle calculated the average time for meal period activities in Live Receiving to be 7.94 minutes.   Ex. 21 at 16.   Under the December 21, 2005 compensation schedule, Live Receiving employees received 3 additional paid minutes before and after their meal period, thus leaving 4.94 minutes of uncompensated donning and doffing time.   Ythier Decl. at Ex. E.   The results of the same calculations for all other departments under the various compensation schedules in effect fall within this .89- to 4.94-minute spectrum.

**E.**     **Farmers Pride Acted In Good Faith And Without Willfulness In The Manner In Which It Implemented Its Compensation Schedules.**

    **1.**     **Because Farmers Pride acted in good faith, Plaintiffs' request for liquidated damages must be denied as a matter of law.**

Plaintiffs seek liquidated damages under 29 U.S.C. § 260 for their claimed FLSA violations. Even if it is determined that Farmers Pride violated the FLSA, a point which Farmers Pride strongly denies, there is no genuine dispute that any violation by Farmers Pride was in good faith, based upon a reasonable belief that its actions did not violate the law.

29 U.S.C. § 260 provides that:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages. . . .

29 U.S.C. § 260. Section 260 has both subjective and objective components. Brooks v. Village of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999). As a result, Farmers Pride must establish that it acted with good faith and reasonableness. Id. "The 'good faith' requirement is a subjective standard that requires that the employer have an honest intention to ascertain and follow the dictates of the Act." Id. (citing Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991)). "To satisfy the objective standard, the employer must act as a reasonably prudent person would have acted under the same circumstances." Id.

In assessing an employer's good faith and the reasonableness of its actions, courts have taken into consideration an unclear state of the law in a particularly complex area. See, e.g., Cross v. Arkansas Forestry Comm'n, 938 F.2d 912, 918 (8th Cir. 1991) (finding that "uncertainty in the application of the FLSA may be considered in determining whether to impose liquidated damages"); Adeva v. Intertek USA, Inc., Civil Action No. 09-1096, 2010 WL 97991,

at *3 (D.N.J. Jan. 11, 2010) ("[I]n determining if liquidated damages are appropriate, a court can consider the ambiguity of the regulation and the closeness of the question.") (Attached as Ex. 58); <u>Albers v. Tri-State Implement, Inc.</u>, No. CR. 06-4242, 2010 WL 960010, at *19 n.11 (D.S.D. Mar. 12, 2010) ("[U]ncertainty about the application of the FLSA is a factor the court may consider in determining the appropriateness of liquidated damages.") (Attached as Ex. 59); <u>Chao v. Tyson Foods, Inc.</u>, 568 F. Supp. 2d 1300, 1322-23 (N.D. Ala. 2008) ("Defendant may present a § 260 defense even if it based its pay practices on a mistaken interpretation of Department of Labor regulations.").

Here, it cannot be genuinely disputed that Farmers Pride, in an effort to comply with the DOL's position regarding the compensability of donning- and doffing-related activities, acted in good faith in implementing its new compensation schedules. Within months after the DOL began its investigation at the plant, the Company had completed a review of its processes and had added between 5 and 10 minutes <u>per day</u> to <u>every</u> hourly production employee's compensation for donning and doffing activities. Farmers Pride's main DOL contact told Farmers Pride that the changes were appropriate and encouraged Farmers Pride to implement the changes immediately. Farmers Pride subsequently periodically reviewed the schedules and its practices to ensure that they provided sufficient compensation for donning and doffing activities, and, to the extent warranted, the Company made revisions to the schedules. Thus, unlike many other employers embroiled in donning and doffing lawsuits, Farmers Pride took affirmative steps to compensate employees for donning and doffing activities. It is difficult to conceive of a situation where the good faith defense would be more justified.

Moreover, Farmers Pride made the changes and began compensating employees for donning and doffing in 2001 and continued to do so notwithstanding the fact that the DOL's

view regarding the compensability of donning and doffing was far from being well-accepted by the courts.  Since Farmers Pride implemented its compensation schedules in 2001, there has been and continues to be a substantial amount of litigation over the issues presented in this case in various industries, including food processing, with mixed results.  In <u>Tum v. Barber Foods, Inc.</u>, No. 00-371-P-C, 2002 WL 89399 (D. Me. Jan. 23, 2002), the court considered whether a poultry processor had acted willfully in not paying for the same clothing items at issue here.  The court <u>granted summary judgment for the employer on the willfulness issue</u>, finding that "it is far from clear that the conduct at issue violated the FLSA," and that "given the closeness of the substantive questions raised by the plaintiffs under the FLSA and the lack of dispositive authority," Barber Foods did not act willfully.  <u>Id.</u> at *6-7 (Attached as Ex. 60).  As more recently explained by the district court in <u>Chao v. Tyson Foods, Inc.</u>, 568 F. Supp. 2d 1300 (N.D. Ala. 2008), a case that involved virtually the same items worn by chicken-processing employees that are worn by Plaintiffs in this case, "given the vast amount of litigation similar to this action which has either recently been or is currently pending in district and circuit courts nationwide, and which offers varying conclusions under different legal theories, it is reasonable to conclude that the compensability of the [donning and doffing] activities presently at issue remains unsettled."  <u>Id.</u> at 1322.

Indeed, in denying Farmers Pride's motion to dismiss in this case, this Court noted that "[t]here is <u>minimal relevant case law in this jurisdiction</u> and <u>significant disagreement among the jurisdictions</u> that have considered [donning and doffing] issues."  <u>Lugo v. Farmers Pride, Inc.</u>, 2008 WL 161184, at 3 (E.D. Pa. Jan. 15, 2008) (emphasis added) (Baylson, J.) (Attached as Ex. 61).  Moreover, on June 20, 2006, in this Court, Tyson Foods obtained a complete defense verdict in <u>De Asencio v. Tyson Foods, Inc.</u> (No. Civ. A. 00-cv-4294 (E.D. Pa.)) on the issue of

the compensability of donning, doffing, and cleaning sanitary outer garments and protective items similar to those at issue in this case.  That verdict was ultimately reversed on one ground by the Third Circuit (the "work" issue) and remanded for further proceedings on the employer's Portal-to-Portal Act and *de minimis* defenses, see <u>DeAsencio</u>, 500 F.3d at 373-74, but that reversal did not occur until September 6, 2007 – a mere three months before Farmers Pride changed to its punch-to-punch system, a system that even Plaintiffs admit is fully compliant in regards to pre- and post-shift donning and doffing activities.

In sum, notwithstanding the unsettled nature of the legal issues, and notwithstanding Farmers Pride's well-founded belief that such activities were *de minimis*, not work under the FLSA, and excluded from compensation by the Portal-to-Portal Act, Farmers Pride nonetheless chose to pay its employees a reasonable amount of extra minutes each day for donning and doffing activities.  Because Farmers Pride relied in good faith on these facts, its compliance with the DOL's requests, and the unsettled state of the law, much of which has been favorable to employers, Farmers Pride is entitled to summary judgment on Plaintiffs' claim for liquidated damages as a matter of law.

**2.      Any violation of the FLSA by Farmers Pride was not willful, and as such, Plaintiffs are limited to a two-year statute of limitations period.**

Plaintiffs claim that Farmers Pride's alleged violations of the FLSA were "willful," and seek to lengthen the limitations period to three years instead of two years.  Plaintiffs' claim, however, fails as a matter of law for essentially the same reasons as discussed above.

29 U.S.C. § 255(a) states:

> Any action . . . to enforce a cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938, as amended . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a

> cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).  Under § 255(a), the test for willfulness is whether the employer knew it was violating the statute or acted in "reckless disregard" of whether its conduct violated the statute. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) ("[T]he word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional'"; no willful violation unless the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the FLSA].").

Many courts, including the Third Circuit and this Court, have recognized that, although cases involving knowledge, motive, and intent typically are not well-suited to summary disposition, this does not mean that summary judgment is never proper. See Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 524 (3d Cir. 1997) (granting summary judgment on intent issue for ERISA violation); Woods v. ERA Med LLC, 677 F. Supp. 2d 806, 824 (E.D. Pa. 2010) (granting summary judgment on intent issue related to knowing misrepresentation); see also Fowler v. Incor, 279 Fed. Appx. 590, 599-600 (10th Cir. 2008) (granting summary judgment on the issue of "willfulness" based on defendant's reliance on the advice of industry consultants and state officials in implementing its policies, and applying a two-year statute of limitations); Accu Personnel, Inc. v. Accustaff, Inc., 846 F. Supp. 1191, 1216-17 (D. Del. 1994) (granting summary judgment in favor of defendant on Lanham Act willfulness issue because "the summary judgment record simply does not show the requisite level of intentionality").

Even in the donning and doffing context, at least one court has granted the employer summary judgment on the willfulness issue, "given the closeness of the substantive questions raised by the plaintiffs under the FLSA and the lack of dispositive authority" on the compensability of the same types of donning and doffing activities at issue here. See Tum v.

Barber Foods, Inc., No. 00-371-P-C, 2002 WL 89399, at *6 (D. Me. Jan. 23, 2002) (Mag.'s Report and Recommendation), aff'd on other grounds, 360 F.3d 274 (1st Cir. 2004), rev'd on other grounds sub nom., IBP, Inc. v. Alvarez, 546 U.S. 21 (2005); see also Saunders v. John Morrell Co., No. C88-4143, 1991 WL 529542, at *7 (N.D. Iowa Dec. 24, 1991) (in denying plaintiffs' motion for summary judgment regarding compensability of washing by meat-processing employees, the court stated that "there are and were solid, logical arguments supporting both sides of this controversy. . . . [T]he court is alerting the parties that it is now of the opinion that there was no willful violation by Morrell which would extend the possible back pay period.") (Attached as Ex. 62).

Here, as discussed above in Part II.E.1., there exists absolutely no evidence demonstrating knowledge of an actual violation or recklessness on the part of Farmers Pride. See Pabst v. Oklahoma Gas & Electric Co., 228 F.3d 1128, 1137 (10th Cir. 2000) (finding that "the same facts that support the district court's conclusion that [defendant's] failure to compensate plaintiffs for all of their on-call time was reasonable and in good faith support the district court's conclusion that [defendant's] violation of the FLSA was not willful"). To the contrary, Farmers Pride reached agreement with the DOL on its plan to implement compensation schedules that would compensate employees for donning and doffing activities and put the Company in compliance with the DOL's view of the case law. After implementation, there was no challenge by the DOL to the Company's practices; the only letters received by Farmers Pride were form letters that were sent to the entire industry by DOL legal counsel and, in Farmers Pride's case, were sent erroneously. When these facts are combined with the unsettled state of the law described above and Farmers Pride's well-found arguments outlined in the *de minimis*, Portal-to-Portal Act, and bona fide meal period sections of this brief, it becomes evident that

Farmers Pride did not willfully violate the FLSA as a matter of law.  Accordingly, a two-year limitations period should be applied in this case.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Farmers Pride respectfully requests that the Court grant its motion for summary judgment on Plaintiffs' FLSA claims and enter an order dismissing such claims with prejudice and any other relief the Court deems just and proper.

Respectfully submitted this 31st day of March, 2011.

**FARMERS PRIDE, INC.**

*/s/ Ryan A. Glasgow*

George C. Werner (Pa. I.D. No. 28757)
Jill S. Welch (Pa. I.D. No 86232)
BARLEY  SNYDER LLC
126 East King Street
Lancaster, PA 17602-2893
Phone:  (717) 299-5201
Facsimile:  (717) 291-4660
*gwerner@barley.com*
*jwelch@barley.com*

Michael J. Mueller* (D.C. Bar # 412025)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
Phone: (202) 955-1500
Facsimile: (202) 778-2201
*mmueller@hunton.com*

Ryan A. Glasgow* (Va. Bar # 71023)
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA 23219
Phone:  (804) 788-8200
Facsimile:  (804) 788-8218
*rglasgow@hunton.com*

* *Admitted pro hac vice*

Attorneys for Defendant Farmers Pride, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 31st day of March, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

BERGER & MONTAGUE, P.C.
Shanon J. Carson, Esq.
(scarson@bm.net)
1622 Locust Street
Philadelphia, PA 19103

Philip A. Downey
(downeyjustice@gmail.com)
1555 Embreeville Road
Unionville, PA 19375

SCHNEIDER WALLACE COTRELL
BRAYTON KONECKY LLP
Clint J. Brayton, Esq.
(cbrayton@schneiderwallace.com)
Andrew P. Lee, Esq.
(alee@schneiderwallace.com)
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

_/s/ Ryan A. Glasgow_ _____
Attorney for Defendant