## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **LUZ LUGO, YESENIA MARCO, et al.** | : | |
| | : | **CIVIL ACTION NO. 07-CV-00749** |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FARMERS PRIDE, INC.** | : | Honorable Michael M. Baylson |
| | : | |
| *Defendant* | : | |
| | : | |

## DEFENDANT'S BRIEF IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................ 2

II.     ARGUMENT ....................................................................................................... 3

        A.      Plaintiffs Are Purposefully Vague Regarding What "PPE" And What "Donning
                and Doffing Activities" Are At Issue In Their Motion.. ....................................... 3

        B.      Plaintiffs' Motion for Summary Judgment On The Work Issue Should Be Denied. 5

                1.      Donning and doffing activities are <u>not</u> compensable "work" as a matter of
                        law. .......................................................................................................... 5

                2.      There are factual disputes concerning whether Farmers Pride requires or
                        controls the activities at issue, and whether Framers Pride is the primary
                        beneficiary of these activities .................................................................... 5

        C.      Plaintiffs' Motion For Summary Judgment On The The Portal-to-Portal Act
                Should Be Denied Because Their Pre- And Post-Shift Donning and Doffing
                Activities Are Not Integral And Indispensable To Plaintiffs' Principal Activities. 9

                1.      <u>Steiner</u> carved out a very narrow exception to the Portal-to-Portal Act. .... 9

                2.      The items and activities at issue in this case ordinarily are not integral and
                        indispensable. ......................................................................................... 13

                3.      The undisputed facts, as applied to the relevant elements, demonstrate that
                        the Court should deny summary judgment. ............................................. 19

        D.      Plaintiffs' Motion For Summary Judgment Regarding Their Meal Period Should
                Be Denied. ............................................................................................................ 22

                1.      Donning and doffing activities that occur at the beginning and end of a
                        "bona fide" meal period are not compensable ......................................... 22

                2.      The undisputed facts show that Plaintiffs' meal periods are "bona fide."
                        Thus, their motion for summary judgment relating to meal period donning
                        and doffing activities should be denied .................................................. 27

III.    CONCLUSION ................................................................................................... 29

CERTIFICATE OF SERVICE ................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abbe v. City of San Diego,
No. 05cv1629 DMS (JMA), 2007 WL 4146696 (S.D. Cal. Nov. 9, 2007) .................... 22

Albrecht v. Wackenhut Corp.,
No. 07-CV-6162, 2009 WL 3078880 (W.D.N.Y. Sept. 24, 2009) ................................. 21

Alford v. Perdue Farms, Inc.,
No. 5:07-cv-87 (CAR), 2008 WL 879413 (M.D. Ga. Mar. 28, 2008) ........................ 14, 15

Anderson v. Mt. Clemens Pottery Co.,
328 U.S. 680 (1946) ...................................................................................... 10

Anderson v. Perdue Farms, Inc.,
604 F. Supp. 2d 1339 (M.D. Ala. 2009) ........................................................ 16

Anderson v. Pilgrim's Pride Corp.,
147 F. Supp. 2d 556 (E.D. Tex. 2001) .................................................... *passim*

Avery v. City of Talladega,
24 F.3d 1337 (11th Cir. 1994) ...................................................................... 23

Ballaris v. Wacker Siltronic Corp.,
370 F.3d 901 (9th Cir. 2004) .................................................................... 16, 17

Bamonte v. City of Mesa,
598 F.3d 1217 (9th Cir. 2010) ...................................................................... 21

Barrentine v. Arkansas-Best Freight Sys., Inc.,
450 U.S. 728 (1981) ...................................................................................... 11

Birdwell v. City of Gadsden,
970 F.2d 802 (11th Cir. 1992) ........................................................................ 6

Bonilla v. Baker Concrete Construction, Inc.,
487 F.3d 1340 (11th Cir. 2007) .................................................................... 13

Burnison v. Mem'l Hosp., Inc.,
820 F. Supp. 549 (D. Kan. 1993) .................................................................. 24

Chao v. Tyson Foods,
    568 F. Supp. 2d 1300 (N.D. Ala. 2008) ...............................................................7, 15, 17

Constant v. Webre,
    No. 07-3042, 2010 WL 2243641 (E.D. La. June 1, 2010) ........................................... 21

Dager v. City of Phoenix,
    646 F. Supp. 2d 1085 (D. Ariz. 2009) ......................................................................... 21

De Asencio v. Tyson Foods, Inc.,
    500 F.3d 361 (3d Cir. 2007) ....................................................................2, 5, 9, 16, 18

Garcia v. Tyson Foods, Inc.,
    No. 06-2198, 2011 WL 346078 (D. Kan. Jan. 31, 2011)..........................................25, 26

Gatewood v. Koch Foods of Miss., LLC,
     569 F. Supp. 2d 687, 696-97 (S.D. Miss. 2008) .................................................16, 18, 19

Gorman v. The Consolidated Edison Corp.,
    488 F.3d 586 (2d Cir. 2007) ....................................................................... 11, 13, 14, 20

Helmert v. Butterball, LLC,
     No. 4:08CV00342 JLH, 2009 WL 5066759 (E.D. Ark. Dec. 15, 2009) .................. 15-16

IBP, Inc. v. Alvarez,
    546 U.S. 21 (2005)......................................................................................................... 8

In re Cargill Meat Solutions Wage and Hour Litig.,
    632 F. Supp. 2d 368 (2008) ....................................................................................17, 18

In re Tyson Foods, Inc. FLSA Litig.,
    694 F. Supp. 2d 1358 (M.D. Ga. 2010) ....................................................................... 15

Israel v. Raeford Farms of Louisiana, LLC,
    5:06-cv-1999 (W.D. La. March 28, 2011) .................................................................... 26

Jenkins v. Harrison Poultry, Inc.,
    Civ. No. 2:07-cv-0058-WCO, 2008 U.S. Dist. LEXIS 110597 (N.D. Ga. July 29, 2008)15

Johnson v. Koch Foods, Inc.,
    670 F. Supp. 2d 657 (E.D. Tenn. 2009) ...................................................................16, 17

Kuebel v. Black & Decker (U.S.) Inc.,
    No. 08-cv-6020, 2009 WL 1401694 (W.D. N.Y. May 18, 2009) .................................. 10

Lamon v. City of Shawnee,
    972 F.2d 1145 (10th Cir. 1992) ................................................................. 23

Lopez v. Tyson Foods, Inc.,
    Civ. A. No. 8:06-cv-559 (D. Neb. April 6, 2011) .......................................... 26

Marti v. Grey Eagle Distribs.,
    937 F. Supp. 845 (E.D. Mo. 1996) ............................................................... 24

McComb v. C.A. Swanson & Sons,
    77 F. Supp. 716 (D. Neb. 1948)............................................................10, 15

McGrath v. City of Philadelphia,
    864 F. Supp. 466 (E.D. Pa. 1994) ............................................................... 24

Mendez v. The Radec Corp.,
    232 F.R.D. 78 (W.D.N.Y. 2005) ................................................................. 24

Morales v. Farmland Foods, Inc.,
    No. 8:08-CV-504, slip op. at 19-20 (D. Neb. Aug. 16, 2010)........................ 15

Musticchi v. City of Little Rock, Arkansas,
    734 F. Supp. 2d 621 (W.D. Ark. 2010)........................................................ 21

Oakes v. Pennsylvania,
    871 F. Supp. 797 (M.D. Pa. 1995)............................................................... 24

Perez v. Mountaire Farms, Inc.,
    601 F. Supp. 2d 670 (D. Md. 2009).............................................. 16, 17, 19, 20

Perez v. Mountaire Farms, Inc.,
    610 F. Supp. 2d 499 (D. Md. Apr. 17, 2009) ...........................................19, 22

Reed v. County of Orange,
    716 F. Supp. 2d 876 (C.D. Cal. 2010) ......................................................... 22

Reich v. IBP, Inc.,
    38 F.3d 1123 (10th Cir. 1994) ....................................................7, 15, 17, 21

Reich v. Oscar Mayer Foods Corp.,
    No. 4:93CV204, 1995 WL 1765643 (E.D. Tex. Mar. 2, 1995)...................... 15

Roy v. County of Lexington,
    141 F.3d 533 (4th Cir. 1998) ...................................................................... 23

Sepulveda v. Allen Family Foods, Inc.,
    591 F.3d 209 (4th Cir. 2009) ............................................................................ 24-25, 26

Skidmore v. Swift & Co.,
    323 U.S. 134 (1944) ............................................................................................. 6

Steiner v. Mitchell,
    350 U.S. 247 (1956) ....................................................................................*passim*

Tennessee Coal v. Muscoda Local No. 123,
    321 U.S. 590 (1944) ........................................................................................ 8, 9

Tum v. Barber Foods, Inc.,
    360 F.3d 274 (1st Cir. 2004) ............................................................................. 8

Universities Research Ass'n, Inc. v. Coutu,
    450 U.S. 754 (1981) .......................................................................................... 10

Von Friewalde v. Boeing Aerospace Operations, Inc.,
    339 Fed. Appx. 448, 454 (5th Cir. 2009) ........................................................ 14

## Statutes, Rules, and Regulations

Federal Practice and Procedure § 2720 (3d ed. 2004) ................................................ 9

29 C.F.R. § 790.7(g) ........................................................................................... 14-15

29 C.F.R. § 785.19 ...............................................................................................23, 26

29 C.F.R. § 1910.132(a) ......................................................................................... 20

FLSA ........................................................................................................*passim*

OSHA ................................................................................................................4, 7, 20

Portal-to-Portal Act ...............................................................................................*passim*

29 U.S.C. § 651 - 678 ............................................................................................ 20

29 U.S.C. § 654(a) .............................................................................................. 9, 20

## I.    INTRODUCTION

Plaintiffs are not entitled to partial summary judgment based on any of the grounds raised in their Motion.   In regards to the "work" issue, Plaintiffs misconstrue <u>DeAsencio v. Tyson Foods, Inc.</u>, 500 F.3d 361 (3d Cir. 2007), by ignoring the fact that the Third Circuit's decision was limited to the "undisputed facts" before the court following a jury trial in which stipulations of the parties were part of the evidence presented.   Nothing in <u>DeAsencio</u> compels the conclusion that Plaintiffs are entitled to summary judgment in this case based on the factual record before this Court.   Indeed, Plaintiffs ignore the significant factual disputes as to whether certain clothing and equipment items are required or controlled by Farmers Pride and who primarily benefits from wearing them. Therefore, Plaintiffs' summary judgment motion on the "work" issue should be denied.

In regards to the Portal-to-Portal Act issue, Plaintiffs rely on an overly expansive definition of "integral and indispensable" that would essentially make any required or necessary activity compensable.   Such an interpretation of the integral and indispensable test has been rejected by numerous courts, which have held that donning and doffing activities similar to the ones at issue here are not integral and indispensable, notwithstanding the fact that some or all of the activities are required by the employer or by the nature of the work.   Because Plaintiffs' pre- and post-shift donning and doffing activities are not integral and indispensable, they are excluded from compensation by the Portal-to-Portal Act, and the Court should deny Plaintiffs' summary judgment motion on this issue.

Finally, in regards to Plaintiffs' meal period claims, their attempt to parse their meal period donning and doffing activities from the rest of their unpaid meal period is inappropriate and not supported by either the predominant benefit test for "bona fide" meal periods or the

continuous workday.   Because Plaintiffs have failed to show that the meal period is not "bona

fide" and not predominantly for their benefit, Plaintiffs' motion on the meal period issue should

be denied.

## II.   ARGUMENT [1]

### A.   Plaintiffs Are Purposefully Vague Regarding What "PPE" And What "Donning and Doffing Activities" Are At Issue In Their Motion.

Farmers Pride has filed a separate pleading that responds to Plaintiffs' Statement of Facts.

However, it is worth noting here that, in both Plaintiffs' Statement of Facts and their Supporting

Brief, Plaintiffs have not identified the specific clothing, equipment, and activities that they

claim are compensable under the FLSA, opting instead to generically refer to the "PPE" worn by

Plaintiffs and their related "donning and doffing activities."   Pls.' Br. at 1.   As set forth in

Farmers Pride's Statement of Additional Material Facts, Plaintiffs wore a wide variety of

clothing and equipment, most of which was optional.   As it relates to Third Shift Deboning

employees, the only equipment that Farmers Pride required them to wear was a smock, hairnet,

and beardnet and, if using a knife or scissors, a plastic arm guard and cut-resistant glove on their

non-knife hand.   Additionally, for part of the limitations period, Deboning employees were

required to wear earplugs, but, as of 2007, Farmers Pride no longer required earplugs in the

Deboning Department.   All of the other clothing and equipment worn by Plaintiffs was not

required by Farmers Pride and was worn at their option for their comfort and convenience.   For

example, some but not all employees chose to wear cotton gloves to keep their hands warm,

rubber gloves to keep their hands dry, and plastic sleeves and aprons to keep their clothes dry.

---

[1] Pursuant to the Court's Pretrial and Trial Procedures, Farmers Pride has submitted a separate Response to Plaintiffs' Statement of Undisputed Material Facts, along with a Statement of Additional Material Facts that are germane to Plaintiffs' Motion.  Moreover, unless otherwise noted, the unpublished decisions cited in this brief were submitted to the Court as exhibits to Farmers Pride's Motion for Summary Judgment.

Plaintiffs' interrogatory responses identify additional "PPE worn," such as sweatshirts, hoodies, and "extra warm clothes."  None of these items were required by Farmers Pride or even made available to employees by Farmers Pride.  Instead of explaining how each of these various items of clothing and equipment constitute "work" under the FLSA or are integral and indispensable under the Portal-to-Portal Act, Plaintiffs instead make generic assertions regarding the purpose of "PPE," in general.[2]

The same is true for Plaintiffs' arguments related to their "donning and doffing activities."  Plaintiffs purport to define that term at page one of their brief and include in that definition, for example, "sharpening knives or using knife maintenance equipment known as steels."  Pls.' Br. at 1.  However, Plaintiffs do not offer any record evidence that they even engaged in such activities before or after their shift.  Indeed, at no point in time during the limitations period were Plaintiffs required or even allowed to sharpen their knives before or after their shifts.  Instead, for safety reasons, all knives were distributed to employees once they were at their workstations ready to work and, at the end of the shift, the knives were picked up and sharpened by designated employees whose job it was to sharpen knives.

The point is that, in order to determine whether some or all of Plaintiffs' pre- and post-shift activities were "work" under the FLSA or integral and indispensable under the Portal-to-Portal Act, it is necessary to analyze the specific activities and equipment at issue, rather than considering the "PPE" and "donning and doffing activities" in general.  Once such an analysis is taken, it becomes clear that Plaintiffs' pre- and post-shift and meal period activities are not

---

[2] As used in the meatpacking industry, the term "PPE" stands for the "personal protective equipment" that is intended to satisfy OSHA regulations and does not include the bulk of the clothing items that Plaintiffs claim to have worn.  Indeed, of all of the clothing and equipment that the Third Shift Deboning Plaintiffs claim to have worn, only the earplugs, arm guard, and cut-resistant glove qualify as PPE as that term is used in the meatpacking industry.

compensable or, at the very least, there are sufficient factual disputes that make summary disposition in Plaintiffs' favor improper.

**B.**   **Plaintiffs' Motion For Summary Judgment On The Work Issue Should Be Denied.**

   **1.**   **Donning and doffing activities are <u>not</u> compensable "work" as a matter of law.**

   Contrary to Plaintiffs' claim, the Third Circuit in <u>DeAsencio v. Tyson Foods, Inc.</u>, 500 F.3d 361 (3d Cir. 2007), did not hold that donning and doffing activities in poultry-processing facilities was "work" as a matter of law. Rather, the Third Circuit in <u>DeAsencio</u> reversed and remanded following a jury trial because it determined that the trial court incorrectly instructed the jury that "work" under the FLSA required some form of exertion. <u>Id.</u> at 363. The Third Circuit held that "work" does not require exertion but instead includes any "activity controlled or required by the employer and pursued for the benefit of the employer." <u>Id.</u> at 373. The Third Circuit went on to find that the donning and doffing activities at issue in that case were "work," but its decision was limited to the trial record before the court in that case. The court noted that the "parties stipulated the clothing was required" and thus held that "the undisputed facts established that the donning and doffing activity <u>in this case</u> constitute 'work' as a matter of law." <u>Id.</u> at 364 n.4, 373 (emphasis added). In sum, Plaintiffs overstate the import of <u>DeAsencio</u> with respect to their request for summary judgment on the "work" issue. At most, <u>DeAsencio</u> sets forth part of the test for "work." As set forth below, there are genuine disputes of fact as to whether the donning and doffing activities at issue here satisfy the "work" test.

   **2.**   **There are factual disputes concerning whether Farmers Pride requires or controls the activities at issue, and whether Farmers Pride is the primary beneficiary of these activities.**

   Plaintiffs contend that "[w]hether a particular activity constitutes work under the FLSA is a question of law." Pls.' Br. at 4. However, this assumes that there is no dispute over the

relevant facts.  In fact, in one of the two decisions Plaintiffs rely on, the court explained that that "[i]t is for the court to determine if a set of facts gives rise to liability," but "it is for the jury to determine if those facts exist."  Birdwell v. City of Gadsden, 970 F.2d 802, 808 (11th Cir. 1992) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 136-37 (1944) (FLSA case)).  Thus, Plaintiffs are entitled to summary judgment on their "work" claim only if the facts, interpreted in the light most favorable to Farmers Pride, afford no basis to find that these activities are not work under the FLSA.  Despite Plaintiffs' claims, there are significant factual disputes as to whether Farmers Pride requires or controls the challenged activities and whether Farmers Pride is the primary beneficiary of such activities.

Not all of the donning and doffing activities at issue in this case are required by Farmers Pride.  In fact, with the exception of smocks, hairnets, and beardnets for all Third-Shift Deboning Department employees, and the arm guards and cut-resistant gloves for those employees that use a knife or scissors, all of the other clothing items and equipment Plaintiffs claim to have worn is optional.  Specifically, Deboning Department employees are not required to wear vinyl or plastic aprons, cotton gloves, rubber gloves, safety glasses, or rubber boots.  And since approximately 2007, earplugs were also optional in the department due to the installation of quieter-running equipment.  The optional clothing and equipment is made available for employees solely for their convenience and comfort, such as keeping their clothes clean and their hands warm and dry.  Farmers Pride does not make employees wear these items, and wearing these items does not make the product any safer or more wholesome.  Plaintiffs suggest that the environment and work conditions necessitate the use of the additional clothing items.  However, any such suggestion is belied by the fact that some Plaintiffs choose not to wear these items.  Moreover,

such a rule would create a perverse incentive for employers to avoid providing items that could provide additional comfort to their employees because of potential (and unwarranted) liability.

In regards to the very few required items, the fact that Farmers Pride requires Plaintiffs to wear certain items to comply with USDA and OSHA regulations is insufficient to make these activities compensable.  See Reich v. IBP, 38 F.3d 1123, 1125 (10th Cir. 1994) (putting on and taking off sanitary and protective items was not work, even though some items were required by the company and USDA and OSHA regulations); Chao v. Tyson Foods, Inc., 568 F. Supp. 2d 1300, 1313-15 (N.D. Ala. 2008) (holding that an employer is not necessarily the primary beneficiary of employees' donning and doffing activities notwithstanding the fact that clothing and equipment was required by the employer and/or government regulations); Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 563 (E.D. Tex. 2001) (noting that courts have rejected the argument that donning and doffing is compensable because items are required by the employer or the USDA).  Moreover, in regards to the beardnet, the requirement results from employees' personal choices to grow facial hair.

Farmers Pride also does not control Plaintiffs' donning and doffing activities, particularly as it relates to those activities during the pre-2007 time period.  Generally speaking, Plaintiffs had considerable flexibility in how they went about donning and doffing activities.  They were not required to report to the facility at any particular time to begin these tasks. They were not required to perform these activities in any particular order, and the deposition testimony of Plaintiffs in this case demonstrates that Plaintiffs had wildly varying pre- and post-shift and meal period routines as it relates to donning and doffing activities.  Finally, until December 2007 (when Farmers Pride began distributing required clothing and equipment inside each of the

departments), Plaintiffs were not required to perform donning and doffing activities at any particular location.

Plaintiffs' suggestion that Farmers Pride's December 2007 changes demonstrate its control over these activities <u>prior to</u> December 2007 is illogical.  The fact that Farmers Pride made the change merely demonstrates that Farmers Pride <u>could have</u> controlled Plaintiffs' donning and doffing activities <u>had it chosen to do so</u>.  But Farmers Pride did not do so, thus establishing definitively that Farmers Pride did not sufficiently control Plaintiffs' donning and doffing activities prior to December 2007.

Moreover, the undisputed facts of this case do not show that these donning and doffing activities are for the primary benefit of Farmers Pride and its business.  As the Supreme Court has made clear, only those activities that are "pursued <u>necessarily</u> and <u>primarily</u> for the benefit of the employer" are "work" under the FLSA.  <u>Tennessee Coal v. Muscoda Local No. 123</u>, 321 U.S. 590, 598 (1944) (emphasis added); <u>accord</u> <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21, 25  (2005) (quoting <u>Tennessee Coal</u> favorably on this issue).  Simply because an employee is required to wear an item of sanitary or protective clothing does not mean that it is primarily for the employer's benefit as opposed to the employee's benefit.  <u>See</u> <u>Tum v. Barber Foods, Inc.</u>, 360 F.3d 274, 280 (1st Cir. 2004) (just because an activity promotes safety and sanitary conditions does not mean it is primarily for the employer's benefit), <u>rev'd on other grounds</u> <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21 (2005); <u>Pilgrim's Pride</u>, 147 F. Supp. 2d at 561 (protective items worn by workers were for the workers' primary benefit).

In fact, most if not all of the items Farmers Pride requires employees to wear are for the primary benefit of the employee, not Farmers Pride.  For example Farmers Pride requires Deboning employees who use knives or scissors to wear cut-resistant gloves and arm guards, and

up until 2007, Farmers Pride required all employees in the Deboning Department to wear earplugs. But the primary reason for these requirements is and was to protect the employee. The employees' use of this safety clothing and equipment may also benefit Farmers Pride by allowing it to comply with OSHA requirements.[3] But the fact that Farmers Pride may gain some ancillary benefit does not mean that the primary benefit requirement of <u>Tennessee Coal</u> and <u>DeAsencio</u> is fulfilled.

Given the substantial evidentiary disputes concerning what clothing items and equipment are required and controlled by Farmers Pride, and whether the clothing and equipment primarily benefits Farmers Pride, Plaintiffs are not entitled to summary judgment on the "work" issue.

**C.   Plaintiffs' Motion For Summary Judgment On The Portal-to-Portal Act Should Be Denied Because Their Pre- And Post-Shift Donning and Doffing Activities Are Not Integral And Indispensable To Plaintiffs' Principal Activities.[4]**

**1.   <u>Steiner</u> carved out a very narrow exception to the Portal-to-Portal Act.**

Plaintiffs' interpretation of <u>Steiner v. Mitchell</u>, 350 U.S. 247 (1956), stands the decision on its head. The expansive reading urged by Plaintiffs would undo the legislative commands of the Portal-to-Portal Act by making virtually all pre- and post-shift donning and doffing activities compensable. Contrary to Plaintiffs' suggestion, the Portal-to-Portal Act is not a limited exemption to the FLSA that "must be narrowly construed against the employers that seek to apply the exemption." Pls.' Br. at 9. Nor was the Act intended to benefit employees. Rather, it

---

[3] To be clear, only the earplugs are specifically mandated by OSHA, and the arm guards and mesh gloves are required because of Farmers Pride's analysis of workplace hazards to satisfy OSHA's general duty imposed on employers to ameliorate risks. <u>See</u> 29 U.S.C. § 654(a).

[4] That both Plaintiffs and Farmers Pride seek summary judgment on the "integral and indispensable" issue does not preclude granting summary judgment for Farmers Pride or constitute a waiver of the right to have this issue presented to the jury. <u>See</u> 2 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2720 (3d ed. 2004). Each motion must be considered separately, and the Court may render judgment for one party if it finds that there is no genuine issue of material fact and that such party is entitled to prevail as a matter of law. <u>Id.</u>

was enacted specifically to overrule <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946), with respect to pre- and post-shift activities by making them generally non-compensable.  <u>See</u> <u>Steiner</u>, 350 U.S. at 253 ("The Portal-to-Portal Act was designed primarily to meet an existing emergency resulting from claims, which if allowed in accordance with <u>Mt. Clemens Pottery Co.</u>, would have created wholly unexpected liabilities."); <u>Universities Research Ass'n, Inc. v. Coutu</u>, 450 U.S. 754, 780 (1981) (noting that the Portal-to-Portal Act "was intended to curtail the numerous suits for unpaid compensation and liquidated damages under the FLSA that were filed after this Court's decision in [<u>Mt. Clemens</u>]"); <u>McComb v. C.A. Swanson & Sons</u>, 77 F. Supp. 716, 724, 730 (D. Neb. 1948) ("[The Portal-to-Portal Act] did impair the operative consequences of the <u>Mt. Clements Pottery</u> ruling; and in large measure, that was its purpose.").[5]

Conversely, <u>Steiner</u> carves out a "very narrow" exception to the general rule imposed by the Portal-to-Portal Act.  <u>See, e.g.</u>, <u>Kuebel v. Black & Decker (U.S.) Inc.</u>, No. 08-cv-6020, 2009 WL 1401694, at *9 n.20 (W.D. N.Y. May 18, 2009) (noting that the <u>Steiner</u> exception "is very narrow") (attached as Ex. 1). Plaintiffs advocate an expansive application of <u>Steiner</u>, but this position ignores the extreme environmental and safety circumstances involved in <u>Steiner</u>, which highlight how narrow an exception it is.  <u>Steiner</u> involved workers in a battery plant who made "extensive use of dangerously caustic and toxic materials, and [were] compelled by circumstances, including vital considerations of health and hygiene, to change clothes and shower in facilities which state law require[d] their employer to provide." 350 U.S. at 248.  The workers were exposed to corrosive sulphuric acid, lead, and various toxic lead compounds, and many had abnormal concentrations of lead in their blood.  <u>Id.</u> at 249-50.  The Supreme Court

---

[5] Farmers Pride does not dispute the applicability of the continuous workday rule.  However, that rule merely states that activities between the first and last principal activity are compensable.  It does not automatically convert preliminary and postliminary activities into "principal activities."

held that based on these extreme conditions, the clothes changing and showering at issue were essential to the safe performance of the principal activities of the workers. Id. at 256 ("[I]t would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees.").

Most federal courts have interpreted Steiner narrowly and have relegated its precedential value to the unique facts of the case. Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 563 (E.D. Tex. 2001); see also Reich v. IBP, 820 F. Supp. 1315, 1324 (D. Kan. 1993) (recognizing that the Steiner holding is to be construed narrowly and noting that the decision in favor of compensability was based on the extreme dangers involved in working with toxic chemicals). In fact, more recently, the Supreme Court described Steiner as holding that "changing clothes and showering are 'principal' activities of employees working with dangerously caustic and toxic materials." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 738 n.13 (1981) (emphasis added). The circuit courts that have specifically addressed the Portal-to-Portal Act issue are in agreement. For example, in Gorman v. The Consolidated Edison Corp., 488 F.3d 586 (2d Cir. 2007), the Second Circuit affirmed the dismissal of claims for the time employees at a nuclear power plant spent going through security procedures and donning and doffing their "required protective gear," which included steel-toe boots, a helmet, and safety glasses. Id. at 589, 595. The Second Circuit explained that "indispensable" is not synonymous with "integral," noting that while "indispensable" means "necessary," "integral" means, among other things, "essential to completeness." Id. at 592. The court noted that the clothes-changing and washing found compensable in Steiner fit this definition of "integral," as

the gear at issue in <u>Steiner</u> "protect[ed] against workplace dangers that transcend ordinary risks."

<u>Id.</u>  The court continued:

> Without the taking of the measures required, the environment of the battery plant <u>could not sustain life</u> – given the toxic substances in liquid, solid, powder and vapor form (and in the dust of the air) that "permeate[d] the entire [battery] plant and everything and everyone in it."  <u>Steiner</u> therefore supports the view that when work is done in a <u>lethal atmosphere,</u> the measures that allow entry and immersion into the destructive element may be integral to all work done there, just as a diver's donning a wetsuit, oxygen tank and mouthpiece may be integral to the work even though it is not the (underwater) task that the employer wishes done.

<u>Id.</u> at 593 (emphasis added).[6]  Based upon this construction of "integral," the Second Circuit held that the donning and doffing of protective gear worn by employees at the nuclear plant was not compensable.  "The donning and doffing of generic protective gear is not different in kind from 'changing clothes and showering under normal conditions,' which, under <u>Steiner</u>, are not covered by the FLSA. . . . .  The donning and doffing of protective gear is not rendered integral by being required by the employer or by government regulation."  <u>Id.</u> at 594.

The Second Circuit also addressed the security procedures required to enter and exit the nuclear facility.  Workers at the facility spent 10 to 30 minutes each day engaged in the security procedures and donning and doffing, but the Court emphasized that the purpose of and amount of time spent on these activities were irrelevant to whether the activities were integral.  <u>Id.</u> at 593-94.  The Court ultimately affirmed dismissal of one action and summary judgment to the employer in the other action.

---

[6] For this reason, the example Plaintiffs offer in their brief regarding the skydiver who dons a parachute before jumping out of an airplane is a non-sequitur.  <u>See</u> Pls.' Br. at 7 ("According to Defendant's theory, if a skydiving company told its instructors that a parachute was optional and is worn to primarily benefit the employee by keeping the employee alive, the time spent donning and doffing the parachute is not compensable work.").  Without the parachute, a skydiver "could not sustain life," which in turn transforms the otherwise preliminary activity of donning a parachute into an integral activity.

Similarly, in <u>Bonilla v. Baker Concrete Construction, Inc.</u>, 487 F.3d 1340 (11th Cir. 2007), workers at an airport terminal sought compensation under the FLSA for time spent riding buses to their job site and going through airport security. The workers claimed that they were entitled to overtime compensation because they were required to go through security to perform their jobs. The Eleventh Circuit disagreed and held that, although the security procedures were a necessary and required activity, they were not "integral and indispensable":

> [T]he "integral and indispensable" test is not a but-for test of causal necessity. The fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are "integral and indispensable" to a "principal activity" under <u>Steiner</u>. . . . If the Portal-to-Portal Act is to have any meaning at all, its terms cannot be swallowed by an all-inclusive definition of "integral and indispensable."

<u>Id.</u> at 1344. After noting that the Portal-to-Portal Act was passed specifically to exempt time spent by employees before they had engaged in "productive activity," the Eleventh Circuit held that for an activity to be "integral and indispensable," it "must be work in the benefit of the employer." <u>Id.</u> at 1344, 1346. Applying this rationale, the court concluded that the security procedures at issue "did not primarily – or even particularly – benefit" the employer. <u>Id.</u> at 1344.

**2.     The items and activities at issue in this case ordinarily are not integral and indispensable.**

In seeking summary judgment on the Portal-to-Portal Act issue, Plaintiffs ignore the bulk of the recent case law on the compensability of safety items and sanitary outer garments. For example, the district court in <u>Anderson v. Pilgrim's Pride</u>, 147 F. Supp. 2d 556, cited by the Second Circuit in <u>Gorman</u>, granted summary judgment to a poultry-processor in a case involving an apron, smock, cotton gloves, rubber gloves, mesh glove, Kevlar glove, rubber boots, cooler boots, hairnet, ear plugs, and plastic sleeves. The court rejected plaintiffs' argument that when employees are "required" to put on certain clothing items, the activities become presumptively

integral and indispensable to the principal activity.  Id. at 563.  Noting that considering whether

an item or activity was "required" has been "rejected by other courts" as a relevant test, the court

held that the donning and doffing at issue was non-compensable.  Id.  The following observation

from Pilgrim's Pride applies equally here:

> In the instant case, the wearing of clean outergarments benefits the
> employees because it protects their street clothes from becoming
> soiled.  To be certain, the wearing of these outergarments also
> benefits Pilgrim's Pride.  However, in light of preexisting case law,
> the clothes changing activity required of the line employees in this
> case is not "integral and indispensable" to their principal jobs.
> Thus, the Court concludes that the donning and doffing of the
> sanitary and safety equipment qualifies as a preliminary and
> postliminary activity within the meaning of the Portal-to-Portal
> Act.

Id. at 563.  The Fifth Circuit affirmed the district court's decision "for essentially the reasons

stated by the careful opinion of [the district court]."  44 Fed. Appx. 652 (5th Cir. 2002).  Indeed,

more recently the Fifth Circuit explicitly followed Gorman by affirming the grant of summary

judgment for an employer:  "donning and doffing of generic protection gear such as safety

glasses and hearing protection, are in any event 'non-compensable, preliminary tasks' under the

Portal-to-Portal Act."  Von Friewalde v. Boeing Aero. Operations, Inc., 339 Fed. Appx. 448, 454

(5th Cir. 2009).

The district court in Alford v. Perdue Farms, Inc., No. 5:07-cv-87 (CAR), 2008 WL

879413 (M.D. Ga. Mar. 28, 2008), reached the same conclusion in granting summary judgment

to a poultry-processor in a case involving hairnets, beardnets, goggles, ear plugs, boots, and

bump caps:

> Gorman, Alvarez, and Steiner together display a sound judicial
> instinct.  At their heart, these decisions recognize that the simple
> act of putting on a pair of boots, a hair net, a cap, and ear plugs is
> difficult to distinguish from the act of "changing clothes and
> showering under normal conditions," an act that is by definition
> preliminary  or  postliminary  to  work  activities.    29  C.F.R.

> § 790.7(g). . . .  It is a task that adds little, if any, time and effort to the ordinary act of washing and getting dressed that every person undertakes every day.  Thus, . . . the donning and doffing of such gear is a perfect example of the sort of preliminary or postliminary activity excluded from the FLSA's coverage by the Portal-to-Portal Act.

Id. at *6.

As noted in Farmers Pride's Summary Judgment brief, other courts in food-processing settings have reached the same conclusion.  See, e.g., Reich v. IBP, 38 F.3d 1123, 1126 (10th Cir. 1994) (changing sanitary outer garments, although required and of some value to the employer, was not integral and indispensable); Jenkins v. Harrison Poultry, Civil Action No. 2:07-cv-0058-WCO, 2008 U.S. Dist. LEXIS 110597, *14-16 (N.D. Ga. July 29, 2008) (granting summary judgment for defendant because donning and doffing of safety glasses, ear protection, a hairnet, and a dust mask, though required, was not integral and indispensable); Reich v. Oscar Mayer Foods Corp., No. 4:93CV204, 1995 WL 1765643, at * 2 (E.D. Tex. Mar. 2, 1995) (rejecting DOL argument that Steiner requires payment for time spent before and after shift changing into and out of a clean uniform, safety glasses, earplugs, and hard hats); McComb v. C.A. Swanson & Sons, 77 F. Supp. 716, 720 (D. Neb. 1948) (holding that, despite the fact that employees in a poultry plant were legally required to wear aprons, frocks, and other outer clothing and to maintain the cleanliness of the garments, donning this clothing was a preliminary activity and thus not compensable).

Other courts have denied motions for summary judgment in donning and doffing cases against meat processors because of disputed facts on the Portal-to-Portal Act.  See Morales v. Farmland Foods, Inc., No. 8:08CV504, slip op. at 19-20 (D. Neb. Aug. 16, 2010) (attached as Ex. 2); In re Tyson Foods, Inc. FLSA Litig., 694 F. Supp. 2d 1358, 1363-66 (M.D. Ga. 2010); Helmert v. Butterball, LLC, No. 4:08CV00342 JLH, 2009 WL 5066759, at *11-12 (E.D. Ark.

Dec. 15, 2009) (attached as Ex. 3); Johnson v. Koch Foods, Inc., 670 F. Supp. 2d 657, 668-69 (E.D. Tenn. 2009); Anderson v. Perdue Farms, Inc., 604 F. Supp. 2d 1339, 1349-54 (M.D. Ala. 2009); Perez v. Mountaire Farms, Inc., 601 F. Supp. 2d 670, 680-81 (D. Md. 2009); Gatewood v. Koch Foods of Miss., LLC, 569 F. Supp. 2d 687, 696-97 (S.D. Miss. 2008); Chao v. Tyson Foods, Inc., 568 F. Supp. 2d 1300, 1311-15 (N.D. Ala. 2008).

The relatively few decisions cited by Plaintiffs are inapplicable here.  First and foremost, contrary to Plaintiffs' argument, the Third Circuit's decision in DeAsencio v. Tyson Foods, Inc., 500 F.3d 361 (3rd Cir. 2007), is inapposite to the Portal-to-Portal Act issue.  In DeAscencio, the employer explicitly chose not to challenge whether the donning and doffing activities were integral and indispensable.  Id. at 365 (noting that "[t]o expedite the trial, Tyson withdrew its position that the clothes-changing and washing activities were not integral and indispensable").  Instead, the appellate issue in that case was the viability of the jury instruction related to the definition of "work."  The Third Circuit's discussion of the Portal-to-Portal Act was dicta, and it specifically remanded the case to the district court to determine if that defense was procedurally viable on retrial.  Id. at 373.[7]  For this reason, Plaintiffs' argument (without a specific cite) that "DeAsencio . . . held that donning and doffing of the PPE at issue in this case is integral and indispensable to the principal work activity of processing poultry" is simply not true.  See Pls.' Br. at 13.

Plaintiffs also rely on the Ninth Circuit's decision in Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004).  Ballaris's conclusion that employees' clothes changing was work because it benefited the employer is inapposite here because the facilities and production

---

[7] As Plaintiffs correctly note, Farmers Pride's lead counsel was also counsel to Tyson in DeAsencio.  We can thus confirm that Tyson did not present a Portal-to-Portal Act defense at trial and that the Portal-to-Portal Act issue was not at issue in the plaintiffs' appeal to the Third Circuit.

activities are very different.   In <u>Ballaris</u>, silicon-wafer fabricating employees donned gowns ("bunny suits") to avoid contaminating the wafers, which are fabricated in a "clean room."  The gowns did not help keep employees clean, warm, or comfortable, but were required <u>solely</u> to protect the fabricating process.   In contrast, the undisputed evidence here does not show that these activities are for Farmers Pride's <u>primary</u> benefit.  Rather, the evidence and common sense shows that Plaintiffs also benefit from wearing the clothing and equipment.  <u>See</u> <u>Reich v. IBP</u>, 38 F.3d at 1126 (sanitary items not integral and indispensable because "the outergarments are primarily for the benefit of the employee"); <u>Johnson v. Koch Foods, Inc.</u>, 670 F. Supp. 2d 657, 669 (E.D. Tenn. 2009) ("[B]oth plaintiffs and Koch Foods are deriving benefits from these activities."); <u>Perez v. Mountaire Farms, Inc.</u>, 601 F. Supp. 2d 670, 680-81 (D. Md. 2009) ("Here, donning the PPE benefits the Plaintiff-employees inasmuch as the PPE (1) prevents accidental workplace injury and other hazards that flow from chicken processing and (2) allows employees to maintain clean clothes."); <u>Chao v. Tyson Foods</u>, 568 F. Supp. 2d at 1315 ("Any benefit that Defendant derived from the cleanliness of its plant — including its employees' protective outer gear — is counterbalanced by the benefit to its employees by ensuring their outerwear is cleansed of raw chicken product, thus reducing the risk of illness to employees and cross-contamination from employees' outerwear to other objects or persons outside the plant, including employees' homes."); <u>Pilgrim's Pride</u>, 147 F. Supp. 2d  at 563 ("[T]he wearing of clean outergarments benefits the employees because it protects their street clothes from becoming soiled.").

Plaintiffs' reliance on the Middle District of Pennsylvania's decision in <u>In re Cargill Meat Solutions Wage and Hour Litig.</u>, 632 F. Supp. 2d 368 (2008), is also misplaced.  The central issue in <u>In re Cargill</u> was not whether the donning and doffing activities were integral and indispensable under the Portal-to-Portal Act but instead whether the activities were excluded

under Section 203(o) of the FLSA, which excludes clothes-changing and washing from "hours worked" at unionized jobsites.  Id. at 378-89.  The two introductory paragraphs in In re Cargill that actually discuss the Portal-to-Portal Act issue contain no analysis of the facts or integral and indispensable factors and instead offer a one-sentence conclusion that the activities are compensable under both the FLSA and the Portal-to-Portal Act.  Id. at 378.  Moreover, the district court's decision is based on a misreading of DeAsencio because the district court stated that the Third Circuit ruled that "donning and doffing of protective gear was . . . a principal activity under the Portal-to-Portal Act."  Id. at 377.  As discussed above, that was not the holding in DeAsencio; indeed, the Portal-to-Portal Act issue was not even before the Third Circuit on appeal.  Finally, even if In re Cargill were persuasive, the equipment worn by the employees in that case was much more substantial and unique than the equipment at issue here.  Specifically, the employees wore a "mesh belly guard" which "is a two-shoulder strap apron with a waist strap, which is required to be worn above the collar bone for torso protection."  Id. at 375.  The employees also had to wear a "mesh sleeve" which was to be "worn high on an employee's arm, up to the shoulder" and a "wizard sleeve" on the other arm.  Id.  In other words, the plaintiffs were covered from neck to torso and on both arms by mesh, similar to chain mail armor.  It is undisputed that Farmers Pride did not require Plaintiffs to wear such substantial equipment, nor did they choose to do so at their option.  For all of these reasons, In re Cargill does not compel the conclusion here that Plaintiffs' minimal donning and doffing activities are integral and indispensable.

Plaintiffs also rely on Gatewood v. Koch Foods, 569 F. Supp. 2d 687 (S.D. Miss. 2008), in the portion of their brief regarding the Portal-to-Act issue.  Pls. Br. at 12.  But even Plaintiffs are forced to concede that Gatewood's holding was limited to the "work" issue and specifically

refused to grant the plaintiffs' summary judgment motion on the Portal-to-Portal Act issue because there were disputed facts that were material to that analysis.  Gatewood, 569 F. Supp. 2d at 693-94, 695-98.  As a result, Gatewood provides no support for Plaintiffs' Portal-to-Portal Act arguments.

Plaintiffs' reliance on Perez v. Mountaire Farms, Inc., 601 F. Supp. 2d 670 (D. Md. Mar. 9, 2009) ("Perez I"), and Perez v. Mountaire Farms, Inc., 610 F. Supp. 2d 499 (D. Md. Apr. 17, 2009) ("Perez II"), are similarly misplaced.  In Perez I, the district court refused to decide the Portal-to-Portal Act issue on summary judgment, holding that there were too many factual issues to warrant summary disposition.  Perez I, 601 F. Supp. 2d at 679 ("Whether donning and doffing the PPE at issue in this case is necessary to the principal work of chicken processing is properly an issue for me to determine at [the bench] trial.").  The decision in Perez II was the result of a bench trial, and though the court ultimately concluded that the donning and doffing activities at issue in the case were integral and indispensable, the district court did so after a bench trial where it necessarily was required to resolve factual disputes, make credibility determinations, and ultimately issue findings of fact.  Thus, neither Perez I nor Perez II lend support to Plaintiffs' argument that they are entitled to summary judgment on the Portal-to-Portal Act issue.

3.     **The undisputed facts, as applied to the relevant elements, demonstrate that the Court should deny summary judgment.**

Plaintiffs have failed to establish that there is no genuine issue of material fact that the items at issue are required, necessary, and for the primary benefit of Farmers Pride.  The undisputed facts demonstrate that very few of the items at issue are required by Farmers Pride.  Farmers Pride witnesses and numerous Plaintiffs as well have testified that the safety glasses, plastic and vinyl apron, plastic sleeves, rubber gloves, cotton gloves, and rubber boots worn by some of the Third Shift Deboning Department Plaintiffs were not required by Farmers Pride but

were instead worn at Plaintiffs' option for Plaintiffs' own comfort and convenience.  Indeed, the

only items required by Farmers Pride in the Deboning Department were a smock, earplugs (prior

to 2007), hairnet, and beardnet and, for those using knives or scissors, a plastic arm guard and

cut-resistant glove on the non-cutting forearm and hand.

Even with respect to the required items at issue, Plaintiffs have failed to point to <u>any</u>

evidence that any of these items is necessary to perform meat-processing work.  <u>Gorman</u>, 488

F.3d at 594 ("The donning and doffing of protective gear is not rendered integral by being

required by the employer or by government regulation.").  Plaintiffs assert, without support, that

the items are integral and indispensable to maintaining sanitary conditions at the plant, but

Farmers Pride has shown that <u>none</u> of the required safety items serves any sanitation purpose.

Instead, Farmers Pride requires those items on a job-specific basis to comply with OSHA, 29

U.S.C. §§ 651-78, to protect <u>employees</u> from bumps, cuts, or hearing loss.[8]

While the smock, hairnet, and beardnet are not safety items, Plaintiffs have failed to show

that employees would not be capable of performing their job duties without wearing these items.

Indeed, a hairnet is hardly unique to the meat-processing industry, and the smocks are similar to

the lab coats worn in many other professions.  Thus, they cannot be "necessary" and "essential"

for the job as contemplated by <u>Steiner</u> and the Second Circuit's analysis in <u>Gorman</u>.  This

conclusion is supported by contrasting Plaintiffs' working environment to that at issue in <u>Steiner</u>.

---

[8] OSHA requires employers to furnish employees "a place of employment which [is] free from recognized hazards that are causing or are likely to cause death or serious physical harm to [their] employees," and to "comply with occupational safety and health standards promulgated under this [Act]." 29 U.S.C. § 654(a).  In turn, the regulations require employers to mandate the use of "personal protective equipment for eyes, face, head, and extremities, [and] protective clothing . . . ." 29 C.F.R. § 1910.132(a). In addition, employers must "require employees to use appropriate hand protection when employees' hands are exposed to hazards such as those from . . . severe cuts or lacerations . . . and harmful temperature extremes." <u>Id.</u> § 1910.138(a).  These regulations are not for the benefit of employers such as Farmers Pride, but instead seek "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b); <u>accord</u> <u>Perez I</u>, 601 F. Supp. at 680.

Unlike the battery factory workers in <u>Steiner</u>, Plaintiffs are not exposed to toxic or caustic substances or disease-causing agents.  Rather, they work with a recently slaughtered chicken, cutting meat similar to a butcher.  <u>Id.</u>  Many farmers used to do these activities themselves, and employees in many professions wear the same items.

Finally, Plaintiffs themselves have admitted that they benefit from wearing the items at issue, either by staying clean and warm or by remaining safe.  In light of such concession, Plaintiffs cannot demonstrate that as a matter of law Farmers Pride receives the <u>primary</u> benefit from any of the items at issue.  As a matter of law, Plaintiffs cannot meet their burden of establishing that the donning and doffing activities at issue are integral and indispensable.

Moreover, the Third Shift Deboning Plaintiffs are not entitled to summary judgment as to the compensability of many of the items (specifically, hairnets, beardnets, safety glasses, earplugs, and footwear, including rubber boots) because employees can wear those items from home.  The case law is clear that the ability to wear these items home renders them non-compensable.  <u>See, e.g.</u>, <u>Bamonte v. City of Mesa</u>, 598 F.3d 1217, 1227-29 (9th Cir. 2010) (ability to don protective items or uniforms at home renders the activity non-compensable); <u>Reich v. IBP</u>, 38 F.3d at 1126 (donning safety glasses, hard hat, and safety shoes not compensable work where such items can be worn from home); <u>Musticchi v. City of Little Rock, Arkansas</u>, 734 F. Supp. 2d 621, 625-28 (W.D. Ark. 2010) (same); <u>Albrecht v. Wackenhut Corp.</u>, No. 07-CV-6162, 2009 WL 3078880, at *8 (W.D.N.Y. Sept. 24, 2009) ("[A] rule which categorically defines donning and doffing time as noncompensable when an employee has an opportunity to change at home is consistent with the Department of Labor's 'longstanding' interpretation of the FLSA."); <u>Constant v. Webre</u>, No. 07-3042, 2010 WL 2243641, at *3 (E.D. La. June 1, 2010) (same); <u>Dager v. City of Phoenix</u>, 646 F. Supp. 2d 1085, 1099 (D. Ariz. 2009)

(same); <u>Reed v. County of Orange</u>, 716 F. Supp. 2d 876, 877 (C.D. Cal. 2010) (same); <u>Abbe v. City of San Diego</u>, No. 05cv1629 DMS (JMA), 2007 WL 4146696, at *5 (S.D. Cal. Nov. 9, 2007) (same).

Plaintiffs rely on <u>Perez v. Mountaire Farms, Inc.</u>, 610 F. Supp. 2d 499 (D. Md. 2009) ("<u>Perez II</u>"), to argue that their ability to take these items home is "illusory" because Farmers Pride provided them with lockers in which they can store their clothing and equipment if they chose to do so. Pls.' Br. at 12-13. To begin with, <u>Perez II</u> is against the overwhelming weight of the authority in regards to this issue. More importantly, the court in <u>Perez II</u> found after a bench trial that the "employees are required by law, policy, and the nature of the work to don and doff their PPE <u>at work</u>," and it also found that it would "be onerous and indeed impractical for employees to take home a host of PPE." <u>Id.</u> at 519 (emphasis added). Neither of these facts are present here. Farmers Pride employees are not required to don their hairnets, beardnets, earplugs, and footwear at work, and given that the hairnet, beardnet, safety glasses, and earplugs can easily be stowed in a pocket or handbag and the footwear can be worn into and out of the facility, it is not onerous for employees to take these items home, as is evidenced by the fact that many employees do so on a regular basis. Because Plaintiffs could wear these items to and home, they are not compensable as a matter of law, and Plaintiffs' motion for summary judgment with respect to these items should be denied for this independent reason.

**D.     Plaintiffs' Motion For Summary Judgment Regarding Their Meal Period Should Be Denied.**

     **1.     Donning and doffing activities that occur at the beginning and end of a "bona fide" meal period are not compensable.**

In seeking summary judgment as to the compensability of their meal period donning- and doffing-related activities, Plaintiffs improperly attempt to separate the "work" issue from the issue of whether the meal period is "bona fide." Specifically, Plaintiffs claim that there are two

periods within the meal period that must be analyzed:  (1) the donning and doffing activities that occur immediately at the beginning and immediately at the end of their meal period and (2) the remainder of the meal period.   They argue that the donning and doffing activities occurring during the first period are compensable regardless of whether the balance of the time in the second period is sufficient for a "bona fide" meal period.   Plaintiffs offer <u>no</u> legal support for their position.   There is good reason for such absence because, as shown below, Plaintiffs' argument is inconsistent with both the continuous workday rule and the predominant benefit test applicable to "bona fide" meal periods.

Under the FLSA, "bona fide meal periods are not worktime" and are thus properly excludable from compensable worktime.   29 C.F.R. § 785.19.   To qualify as a bona fide meal period, the Department of Labor's regulations provide that "[t]he employee must be completely relieved from duty for the purposes of eating regular meals.   Ordinarily, 30 minutes or more is long enough for a bona fide meal period. . . ."   <u>Id.</u>

As noted in Farmers Pride's Summary Judgment brief, the overwhelming majority of courts to have considered the issue have not interpreted the regulation literally and have instead adopted the "predominantly-for-the-employer's-benefit standard" in determining whether a meal period is bona fide under the FLSA.   <u>See</u> <u>Lamon v. City of Shawnee</u>, 972 F.2d 1145, 1157-58 (10th Cir. 1992) (the standard for evaluating whether meal periods are compensable is whether the employee's time is spent during the meal period predominantly for the benefit of the employer); <u>Roy v. County of Lexington</u>, 141 F.3d 533, 544 (4th Cir. 1998) ("Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act."); <u>Avery v. City of Talladega</u>, 24 F.3d 1337, 1347

(11th Cir. 1994) (while the employer undoubtedly benefited from requiring patrol officers to leave their radios on and stay within the jurisdiction during meal periods, the time was provided predominantly for the benefit of the officers and found non-compensable); Mendez v. Radec Corp., 232 F.R.D. 78, 83 (W.D.N.Y. 2005) ("[T]he relevant question is whether the break itself is predominantly spent on activities for the employer's benefit not on whether the employee did anything at all for the employer's benefit."); Marti v. Grey Eagle Distribs., 937 F. Supp. 845, 852 (E.D. Mo. 1996) (holding plaintiffs' breaks noncompensable where employees were free "to enjoy a variety of recreation and amusements during breaks"); Burnison v. Mem'l Hosp., Inc., 820 F. Supp. 549, 556 (D. Kan. 1993) (noting that "the proper standard for determining compensability of a meal period is whether the [employee] is . . . primarily . . . engaged in work-related duties during meal periods") (internal citation and quotations omitted).  In each of these cases, in applying the predominant benefit test, the courts focused on the meal period as a whole, as opposed to parsing out the allegedly compensable activities occurring in and around the meal period.  Accordingly, each of them held that, as long as an employee receives the predominant benefit of the meal period, the entire period is non-compensable notwithstanding the fact that the employee may engage in certain limited or insubstantial work activities during the meal period.

Plaintiffs are correct in noting that the Third Circuit has not addressed the issue. However, they fail to note that this Court has adopted the predominant benefit test.  See, e.g., McGrath v. City of Philadelphia, 864 F. Supp. 466, 479-481 (E.D. Pa. 1994); see also Oakes v. Pennsylvania, 871 F. Supp. 797, 799-800 (M.D. Pa. 1995) (accord).

Applying the predominant benefit test to donning and doffing claims, the Fourth Circuit has found that donning and doffing activities are not compensable when performed as part of a bona fide meal period.  The plaintiffs in Sepulveda v. Allen Family Foods, Inc., 591 F.3d

209 (4th Cir. 2009), worked at a poultry-processing plant and sought compensation for donning and doffing activities that occurred during their meal periods:

> Each day, the employees receive a thirty-minute lunch break, during which no chickens are placed on the production line. Employees are free to leave the production area when the last chicken passes their stations but are expected to be back when the first new chicken arrives.  During the lunch break, they typically take off their gloves and aprons, wash up, and then walk to the cafeteria.  Upon returning to the production area, they put these items back on and then sanitize them before resuming work. . . .  Employees . . . do not receive compensation during the lunch break.

Id. at 213.  The Fourth Circuit applied the predominant benefit test to the plaintiffs' meal period claims and found that "the time [the plaintiffs] spend during their lunch breaks donning and doffing a few items" was not compensable "because it is part of a bona fide meal period."  Id. at 216 n.4.  In other words, because the 30-minute meal period as a whole was predominantly for the benefit of the employees, the entire 30 minutes was non-compensable, despite the fact that the plaintiffs spent time at the beginning and end of that 30-minute period performing donning and doffing activities.

In a very recent decision involving beef-processing plant donning and doffing claims, the district court in Garcia v. Tyson Foods, Inc., No. 06-2198, 2011 WL 346078 (D. Kan. Jan. 31, 2011), rejected the very argument that Plaintiffs advance here and instead agreed that the appropriate focus for the meal period is the entire period as defined by the employer, not the balance of the meal period time after time spent donning and doffing is factored out:  "[T]he court rejects plaintiffs' suggestion that any time spent during the meal period performing otherwise compensable work must be compensated even though the remainder of the meal period is unpaid. . . . [T]he entire meal period may be noncompensable even when an employee is required to do some amount of work during that meal period."  Id. at *11 (emphasis added);

25

see also Lopez v. Tyson Foods, Inc., Civ. A. No. 8:06-cv-559, slip op. at 20-23 (D. Neb. April 6, 2011) (analyzing 30-minute unpaid meal period in its entirety, instead of parsing out donning and doffing activities) (attached as Ex. 4).

Most recently, the district court in Israel v. Raeford Farms of Louisiana, LLC, 5:06-cv-1999, slip op. (W.D. La. March 28, 2011) (attached as Ex. 5), applied the predominant benefit test in a donning and doffing case and granted the employer summary judgment on the plaintiffs' meal period donning and doffing claims. Slip op. at 19-21. The district court noted that the plaintiffs "do not present any evidence that they were required to dedicate any part of their meal period to processing poultry" but, instead, "[t]heir only complaint is that the brief times required at the beginning and end of their meal period to don, doff, or sanitize cut into the 30-minute period." Id. at 20. Accordingly, the district court found that "the time was used predominantly for [plaintiffs'] benefit" and that "there was only minimal benefit to the employer by virtue of the employees donning their gear at the end of the [meal] period." Id. Accordingly, the district granted the employer's motion for summary judgment and dismissed plaintiffs' meal period claims.

That Sepulveda, Garcia, and Israel reached the right result is supported by the plain language of 29 C.F.R. § 785.19, which excludes bona fide meal periods from the compensable "continuous workday." 29 C.F.R. § 785.19. Such an exclusion would be meaningless if employers were required to pay for any incursion of doffing and donning during the meal period. Plaintiffs' position would effectively create two or more "continuous workdays" during a single shift and eliminate the need to refer to exclusion of the meal period. The better reading of the regulation is that so long as the meal period, considered in its entirety (including any and all

allegedly compensable activities that occur during the meal period), predominantly benefits the employee, it is bona fide and thus non-compensable, regardless of the type of incursion at issue.

Here, as Plaintiffs are forced to admit, Farmers Pride provided Plaintiffs a thirty-minute, unpaid meal period, which it automatically deducted from Plaintiffs' workday.  Farmers Pride also provided additional paid time before and after the 30-minute meal period to allow Plaintiffs a reasonable time to engage in donning- and doffing-related activities.  To the extent Plaintiffs claim that the additional paid time was insufficient and that their donning and doffing activities intruded on the 30-minute meal period, such an intrusion must be analyzed under the predominant benefit test as applied to the entire 30-minute meal period provided by Farmers Pride.  The fact that those intruding activities may constitute "work" under the FLSA does not render them compensable or part of the continuous workday so long as they occur during a "bona fide" meal period.[9]

2.     **The undisputed facts show that Plaintiffs' meal periods are "bona fide." Thus, their motion for summary judgment relating to meal period donning and doffing activities should be denied.**

For the foregoing reasons, Plaintiffs' meal period donning and doffing activities are only compensable if their meal periods are not "bona fide."  Plaintiffs offer no undisputed facts on the issue of whether their meal periods are bona fide and instead claim that "an issue of material fact exists with respect to whether Plaintiffs actually receive a bona fide meal period."  Pls.' Br. at 14.  For this reason, Plaintiffs' motion for partial summary judgment must be denied.

---

[9] It should also be noted that Plaintiffs' view of the law regarding meal period donning and doffing activities would be unworkable on a class basis because the balance of each Plaintiffs' meal period would be vary in length depending on how long it took them to engage in meal period donning- and doffing-related activities, which in turn means that Plaintiffs' "meal periods" for purposes of analyzing the predominant benefit test would be of varying lengths.

Moreover, as set forth in Farmers Pride's Motion for Summary Judgment and supporting briefing, it is Farmers Pride that is entitled to summary judgment on Plaintiffs' meal period claims. Plaintiffs concede that they do not perform production work during the meal period, and according to Plaintiffs' expert, Plaintiffs spend an of average 4 to 8 minutes engaged in donning and doffing activities before and after their meal period. Pursuant to the compensation schedules, Farmers Pride provides additional paid time before and after the 30-minute meal period for donning and doffing activities, which means that, even under Plaintiffs' expert's expansive measurements, there are only approximately 1 to 5 minutes of allegedly uncompensated donning and doffing time during the meal period. The rest of the meal period time can be used by Plaintiffs in whatever manner they choose. In fact, Plaintiffs have admitted in depositions that they are free to engage in a wide variety of personal activities during their meal period for their own benefit. Specifically, they may eat, socialize, read, smoke, talk on the telephone, and even travel outside of the facility for food and other errands. Moreover, several Plaintiffs concede that they spend only minimal time during the meal period on doffing and donning activities and agree that they only have to remove some, but not all, of the items they wear over their street clothing before going to lunch. On balance, the minimal activities that Plaintiffs engage in before and after their meal periods are incidental activities that are insufficient to affect the bona fide status of the meal period. The fact that Farmers Pride may derive some benefit from the minimal doffing and donning activities that occur before and after the meal period is not the test. Instead, because the predominant benefit is for Plaintiffs to rest, eat, and use the time for their own purposes, the meal period is "bona fide" and thus non-compensable in its entirety.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Farmers Pride respectfully requests that the Court deny Plaintiffs' Motion for Partial Summary Judgment.

Respectfully submitted this 25th day of April, 2011.

**FARMERS PRIDE, INC.**

*/s/ Ryan A. Glasgow*

George C. Werner (Pa. I.D. No. 28757)
Jill S. Welch (Pa. I.D. No 86232)
BARLEY  SNYDER LLC
126 East King Street
Lancaster, PA 17602-2893
Phone:  (717) 299-5201
Facsimile:  (717) 291-4660
*gwerner@barley.com*
*jwelch@barley.com*

Michael J. Mueller* (D.C. Bar # 412025)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
Phone: (202) 955-1500
Facsimile: (202) 778-2201
*mmueller@hunton.com*

Ryan A. Glasgow* (Va. Bar # 71023)
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA 23219
Phone:  (804) 788-8200
Facsimile:  (804) 788-8218
*rglasgow@hunton.com*

* *Admitted pro hac vice*

Attorneys for Defendant Farmers Pride, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 25th day of April, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:


BERGER & MONTAGUE, P.C.
Shanon J. Carson, Esq.
(scarson@bm.net)
1622 Locust Street
Philadelphia, PA 19103


SCHNEIDER WALLACE COTRELL
BRAYTON KONECKY LLP
Clint J. Brayton, Esq.
(cbrayton@schneiderwallace.com)
Andrew P. Lee, Esq.
(alee@schneiderwallace.com)
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

Philip A. Downey
(downeyjustice@gmail.com)
1555 Embreeville Road
Unionville, PA 19375


*/s/ Ryan A. Glasgow* _____
Attorney for Defendant

74851.000002 EMF_US 35172174v1