**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                              :

LUZ LUGO, *et al.*,           :     CIVIL ACTION NO. 07-CV-00749
                              :

        Plaintiffs,        :

                              :

        v.                 :

                              :

FARMERS PRIDE, INC.,    :

                              :

        Defendant.       :
_____:

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 3

  A.  Standard for Summary Judgment ..................................................................... 3

  B.  The Amount of Uncompensated Time Spent Performing Donning and Doffing Activities Is a Disputed Material Fact Making Summary Judgment on the *De Minimis* Issue Inappropriate ................................................................................................. 4

  C.  Pursuant to Third Circuit Precedent, the Donning and Doffing Activities at Issue Are Integral and Indispensable to the Principal Work Activity of Poultry Processing ........... 12

    1.  The Portal-to-Portal Act does not exclude activities that are integral and indispensable to the principal work activity ............................................................................. 12

    2.  Courts in the Third Circuit have found the donning and doffing tasks at issue here to be integral and indispensable to Plaintiffs' principal work activity of poultry processing ....... 14

    3.  Whether the equipment is "standard" is not relevant to the integral and indispensable inquiry ................................................................................................. 16

    4.  Whether Plaintiffs "can" bring equipment to and from home is not relevant to the integral and indispensable inquiry when the option is "illusory," and moreover, there is an issue of genuine disputed fact ................................................................................. 20

    5.  Defendant Ignores Third Circuit law on whether activities are integral and indispensable making summary judgment inappropriate ..................................................... 21

  D.  Whether Plaintiffs' Received the "Predominate Benefit" of the Unpaid Meal Period is a Disputed Material Fact Making Summary Judgment on the *Bona Fide* Meal Period Deduction Inappropriate. ............................................................................... 22

  E.  Defendant Acted Willfully By Failing To Pay Employees For Their Donning and Doffing Activities In Accordance With The FLSA ......................................................... 26

    1.  DOL informed Defendant in 2001 that it was in violation of the FLSA with regard to the way it compensated employees for donning and doffing ............................................... 26

    2.  The Vast Majority Of The Uncompensated, Off-The-Clock Work Activities Opt-In Plaintiffs Engaged In Are Compensable Under Well-Settled Law ..................................... 28

  F.  Defendant Had Knowledge Of Its Legal Obligations With Respect To Compensating Its Employees For The Extensive Unpaid Work They Were Performing Off-The-Clock And Yet Defendant's Response Was Woefully Inadequate ..................................... 30

G.   Whether Farmers Pride Acted in Good Faith Is Disputed .................................................. 35

III.   CONCLUSION ............................................................................................................ 37

# TABLE OF AUTHORITIES

## Cases

*Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88 (C.A. 2, 1953) ................................................ 5

*Alford v. Perdue Farms, Inc.*, No. 5:07-cv-87, 2008 WL 879413 (M.D. Ga. 2008) ................... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................................. 3, 4

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ................................................... 4

*Appeal of Solid Waste Services, Inc.*, 897 F.2d 524 (3d Cir. 1990) ............................................ 27

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) .............................. 13, 15, 17, 21

*Barcellona v. Tiffany English Pub*, 597 F.2d 464 (5th Cir. 1979) ................................................ 36

*Beasley v. Hillcrest Med. Ctr.*, 78 Fed.Appx. 67 (10th Cir.2003) .............................................. 24

*Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir.1998) ...................................................................... 24

*Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340 (11th Cir. 2007 .................................... 13

*Brooks v. Village of Ridgefield Park*, 185 F.3d 130 (3d Cir. 1999) ........................................ 35, 36

*Brusstar v. Se. Pennsylvania Transp. Auth.*, CIV.A. 85-3773, 1988 WL 85657
(E.D. Pa. Aug. 17, 1988) ........................................................................................................... 5, 9

*Cacchione v. Erie Technological Products, Inc.*, 526 F. Supp. 272 (W.D. Pa.1981) ................... 26

*Celotex Corp. v. Catrett*, 477 U.S. 316 (1986) ............................................................................. 3

*Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300 (N.D. Ala. 2008) .......................................... 16

*De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007) ............... 3, 6, 7, 12, 15, 16, 19, 21

*Dole v. Solid Waste Services, Inc.*, 733 F. Supp. 895 (E.D. Pa. 1989) ........................................ 27

*Dunlop v. City Elec., Inc.*, 527 F.2d 394 (5th Cir.1976) ............................................................. 13

*Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 652 (5th Cir. 2002) .............. 15

*Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981 (C.A. 8, 1952) ....................................... 5

*Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir.2007)............................................ 15

*Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W.H. Cases 448 (E.D. Va., 1955)..................... 5

*Helmert v. Butterball LLC*, No. 4:08-cv-342, 2009 WL 5066759, (E.D. Ark. Dec. 15, 2009).... 17

*Hesseltine v. The Goodyear Tire & Rubber Co.*, 391 F.Supp. 2d 509 (E.D. Tex. 2005) ............. 11

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) ...................................................... 7, 13, 18, 28, 29, 31, 34

*In re Cargill Meat Solutions Corp.*, 632 F. Supp. 2d 368 (M.D. Pa. 2008) ................................. 13

*Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078 (8th Cir. 2000) ...................................................... 30

*Jenkins v. Harrison Poultry, Inc.*, No. 2:07-cv-58, 2008 U.S. Dist. LEXIS 110597 (N.D. Ga. 2008) ....................................................................................................................................... 16

*Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790 (M.D. Tenn. 2008) ......................................... 14, 17, 19

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941 (W.D. Wis. 2008) ..... 6

*Landaas v. Canister Co.*, 188 F.2d 768 (3d Cir.1951)..................................................................... 9

*Lindow v. United States*, 728 F.2d 1057 (9th Cir. 1984) ............................................................... 5

*Marshall v. Brunner*, 668 F.2d 748 (3d Cir. 1982)........................................................................ 36

*Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991)................................................. 35

*McDonald v. Kellogg Co.*, 740 F. Supp. 2d 1220 n.10 (D. Kan. 2010)......................................... 17

*McGrath v. City of Philadelphia*, 864 F. Supp. 466 (E.D. Pa. 1994) .............................. 22, 23, 25

*McIntyre v. Joseph E. Seagram & Sons Co.*, 72 F. Supp. 366 (W.D. Ky. 1947) ........................ 11

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 ........................................................................ 26

*Mumblower v. Callicott*, 526 F.2d 1183 (8th Cir. 1975) ............................................................. 28

*Nationwide Life Ins. Co. v. Bankers Leasing Assn., Inc.*, 182 F.3d 157 (2d Cir. 1999) ................ 4

*Oakes v. Pennsylvania*, 871 F. Supp. 797 (M.D. Pa. 1995)........................................................ 25

*Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499 (D. Md. 2009)...................... 8, 9, 14, 20, 24

*Pirant v. U.S. Postal Service*, 542 F.3d 202 (7th Cir. 2008)........................................................ 15

*Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994) ........................................................ 15

*Rothman v. Publicker Industries*, 201 F.2d 618 (3d Cir. 1953) ..................................... 36

*Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860 (W.D. Wis. 2007) ........................ 5, 14

*Steiner v. Mitchell*, 350 U.S. 247 ................................................................ 28

## Statutes

29 C.F.R. § 785 .................................................................... 5, 22, 23, 28

29 C.F.R. § 790 ................................................................................ 31

29 U.S.C. § 255 ................................................................................ 26

29 U.S.C. § 260 ................................................................................ 35

Fed. R. Civ. P. 56 ............................................................................... 3

I.     **INTRODUCTION**

Defendant's motion for summary judgment should be denied for the following reasons:

As an initial matter, Defendant premises its *de minimis* argument on two issues that are disputed.  The first is the amount of time required to don and doff personal protective equipment pre-shift, during the meal period, and post-shift.  Defendant begins its analysis of this issue by assuming that Dr. Mericle's average times for these activities have been established as fact. While Dr. Mericle did take certain measurements in this case and opine regarding average times for certain activities, which range for all departments from 12 minutes to 27 minutes, he also opined that his average times "substantially underestimate" the amount of time required to perform these activities for a number of reasons.  One such reason is the changes made to Defendant's plant operations.  Dr. Mericle's opinion that his average times are underestimated is supported by the evidentiary hearing testimony of Yesenia Marco.  Ms. Marco testified that these pre-shift, meal period and post-shift activities required approximately 30-40 minutes due to a number of factors, including heavy congestion in the locker rooms.  Thus, this factual issue is disputed and the actual times required for pre-shift, meal period and post-shift must be determined by a jury.

Second, Defendant premises its *de minimis* argument on another assumption, namely that the "schedules" allegedly adopted by Defendant were actually followed.  Again, this is disputed. For instance, with regard to pre-shift activities, the testimony of Ms. Marco and others is that production workers were required to don their PPE and line up outside their department prior to the start of their "Shift Punch In Time" - which Defendant admits is the beginning of paid time. Further, despite the opportunity to present declarations from line supervisors' with first hand

knowledge supporting Defendant's contention, Defendant has not submitted any such evidence. Thus, whether the allowances were given is another question of fact for the jury to determine.[1]

The arguments that Defendant makes based on some facts that are undisputed seriously misconstrue the relevant law.  Defendant's arguments regarding Plaintiffs' meal period claims fail to elucidate any reason for denying Plaintiffs compensation for the time they actually spent performing donning and doffing activities.   Instead, Defendant argues that the FLSA regulations permit Defendant to not pay employees for the work performed during the meal period by simply labeling the entire period a *bona fide* meal period.  Defendant's argument misses the mark.  The regulations do not create a loophole through which employers could decline to pay employees for otherwise compensable work at the beginning and end of the meal period.  Rather, the regulations permit employers to exclude from compensable time those minutes employees spend eating a regular meal provided the employer meets certain criteria.  The time spent donning and doffing is clearly compensable.  With regard to the overall meal period, a material dispute of fact exists as to whether employees derive the predominate benefit of the meal period.

Defendant also bases its motion on arguments that have been categorically rejected by the Third Circuit and its district courts.  For example, Defendant's arguments regarding the *de minimis* defense are devoid of Third Circuit authority.  The single Third Circuit district court case cited in Defendant's brief on the *de minimis* issue is a 1962 District of New Jersey case.

---

[1] In the December 9, 2010 Memorandum and Order, this Court stated the "Court's factual observations and findings were only for purposes of ruling on the collective action issue, and do not serve as any factual determinations that would prevent a jury from finding otherwise, or prevent counsel from arguing otherwise to a jury." 12/9/2010 Memorandum at 5.  Furthermore, the Court outlined the issues for trial as, "whether the Defendant had a policy requiring employees to wear certain PPE, for which they were entitled to payment for donning and doffing, and whether the Plaintiffs were paid in accordance with Defendant's policy.  Plaintiffs' claim that they were not paid for donning and doffing during meals would be a separate claim and may extend past the December 2007 time period." 12/9/2010 Memorandum at 8-9.

Defendant fails to cite the substantial guidance provided by the Third Circuit in *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374-75 (3d Cir. 2007). Similarly, Defendant contends that standard items of PPE are not integral and indispensable as a matter of law, yet Defendant does not cite a case from the Third Circuit or its district courts in support of this contention. These material omissions are due to the fact that the most relevant precedent – that of the Third Circuit and the district courts bound by its decisions – wholly support Plaintiffs' claims.

Finally, Defendant's contention that failing to pay Plaintiffs for donning and doffing and related activities was not willful and in good faith is disputed. As early as March 2001, the U.S. Department of Labor notified Defendant that it was in violation of the FLSA with regard to the way it compensated its hourly production employees. Despite this notification, and subsequent notification from the DOL in 2002 and 2006 that it was still in violation, Defendant did not change the way it paid employees for donning and doffing related activities. In fact, Defendant did not institute a punch-to-punch time-keeping system until after Plaintiffs filed litigation against it.

## II.    ARGUMENT

### A.    Standard for Summary Judgment

A court should deny summary judgment unless the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). Specifically, the party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

When hearing a motion for summary judgment, this Court is not asked to weigh evidence

and determine the truth of the matter. *Anderson*, 477 U.S. at 251-52. Rather, this Court must

determine only whether genuine issues of material fact exist -- not how such issues should be

resolved. *Id.* Granting summary judgment is a "drastic device, since its prophylactic function,

when exercised, cuts off a party's right to present his case to the jury." *Nationwide Life Ins. Co.*

*v. Bankers Leasing Assn., Inc.*, 182 F.3d 157, 160 (2d Cir. 1999). Courts should rule on motions

for summary judgment "with caution[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). Here, Defendant is not entitled to judgment as a matter of law. Construing the evidence

and drawing all inferences in Plaintiffs' favor, it is clear that genuine issues of material fact exist.

Therefore, the Court should deny this Motion.

### B. The Amount of Uncompensated Time Spent Performing Donning and Doffing Activities Is a Disputed Material Fact Making Summary Judgment on the *De Minimis* Issue Inappropriate

The *de minimis* doctrine is a judicially created doctrine intended to alleviate the burden

on employers who could have been liable for matters concerning "only a few seconds or minutes

of work beyond the scheduled working hours." *Anderson v. Mt. Clemens Pottery Co*., 328 U.S.

680, 692 (1946). In *Mt. Clemens*, the Court noted that "[s]plit-second absurdities are not

justified by the actualities of working conditions or by the policy of the [FLSA]." *Id.* As noted

in the Department of Labor regulations:

> In recording working time under the Act, insubstantial or insignificant periods of
> time beyond the scheduled working hours, which cannot as a practical
> administrative matter be precisely recorded for payroll purposes, may be
> disregarded. The courts have held that such trifles are *de minimis*. (*Anderson v.*
> *Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)). This rule applies only where
> there are uncertain and indefinite periods of time involved of a few seconds or
> minutes duration, and where the failure to count such time is due to considerations

justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. *See Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a workingman," and was not *de minimis*; *Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." *Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not *de minimis*.

29 C.F.R. § 785.47.

The Ninth Circuit has created a three part analysis used to determine whether the amount of time spent performing activities was *de minimis*. *Lindow v. United States*, 728 F.2d 1057, 1063 (9th Cir. 1984). These factors are: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time[2]; and (3) the regularity of the additional work. While the *Lindow* court noted that "most courts have found daily periods of approximately 10 minutes de minimis," the court noted that employers "must compensate employees for even small amounts of time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *see also Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860, 868 (W.D. Wis. 2007) ("Although a number of courts have concluded that any task or group of tasks is not compensable if it takes less than 10 minutes, no court has explained why 10 minutes of work is worthy of compensation but 9 minutes and 59 seconds is not." (internal citation omitted)). In fact, the District Court for the Western District of Wisconsin has ruled that where "defendant has admitted it would incur no additional administrative burden in compensating

---

[2] *Accord Landaas v. Canister Co.,* 188 F.2d 768, 771 (3d Cir.1951) ($21.67 to $256.88 per week over three years is not *de minimis*) cited by *Brusstar v. Se. Pennsylvania Transp. Auth.*, CIV.A. 85-3773, 1988 WL 85657 (E.D. Pa. Aug. 17, 1988).

plaintiffs for time spent donning and doffing and walking, its *de minimis* defense fails as a matter of law." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 954 (W.D. Wis. 2008) (emphasis added).   The clear rule to be derived from *Lindow* regarding the amount of time sufficient to escape a *de minimis* ruling is that any amount of time that can be recorded for payroll purposes given the administrative ability of the employer, the aggregate amount of time, and the regularity of the activities must be compensated. The Third Circuit adopted the *Lindow* factors in *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007).

On May 31, 2006, the DOL Wage and Hour Division issued the Advisory Memorandum (Ex. 1) setting forth the DOL's position on two issues that were not squarely decided by the Supreme Court in *Alvarez*.   Contrary to the prior position taken by the Ninth Circuit in *Alvarez*, the DOL stated in the May 31, 2006 Advisory Memorandum that there is no distinction between the donning and doffing of unique and non-unique safety equipment and all such time should be treated as compensable as long as it is not *de minimis*.

Specifically, the DOL Advisory Memorandum provides, in pertinent part:

The Ninth Circuit in Alvarez, 339 F.3d 894, 903904 (9th Cir. 2003) indicated that the "specific tasks" of donning and doffing "non-unique" gear, such as hardhats and safety goggles (as opposed to "unique" equipment), while integral and indispensable to the employees' principal activities, were not compensable because they were "de minimis as a matter of law."   ***As the government's Supreme Court amicus brief in Alvarez states, the Ninth Circuit erred in its application of the de minimis rule. The de minimis rule applies to the aggregate amount of time for which an employee seeks compensation, not separately to each discrete activity, and particularly not to certain activities "as a matter of law." The Supreme Court's continuous workday rationale renders the Ninth Circuit's "de minimis as a matter of law" discussion untenable.***

May 31, 2006 DOL Advisory Memorandum at 3 (emphasis added).

The second issue addressed in the May 31, 2006 DOL Advisory Memorandum concerns the *de minimis* doctrine.   DOL concludes:

6

> Alvarez thus clearly stands for the proposition that where the ***aggregate time*** spent donning, walking, waiting and doffing exceeds the *de minimis* standard, it is compensable.  Any other conclusion would be inconsistent with the continuous workday rule.

May 31, 2006 DOL Advisory Memorandum at 4 (emphasis added).  Since the Ninth Circuit's *Alvarez* decision and the subsequent Supreme Court opinion in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), a number of federal courts have considered the issues presented by the continuous workday doctrine and its applicability to items of equipment identical to those at issue here.

The Third Circuit, in particular, ruled that time spent engaged in post-donning/pre-doffing walk time must be ***aggregated*** with donning and doffing equipment when considering whether the uncompensated time is *de minimis*.  *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007).  The items of PPE that most employees wore in *De Asencio* were a smock, hairnet, beardnet (where applicable), earplugs and safety glasses.  *Id.* at 364.  Additional items worn by certain employees included a dust mask, plastic apron, soft plastic sleeves, cotton glove liners, rubber gloves, a mesh metal glove, and rubber boots.  *Id.*  The Third Circuit did not recognize any distinction between unique and non-unique items, and significantly, such a distinction did not comport with the Third Circuit's conclusion that all uncompensated "work" ***time must be aggregated before considering whether the time is noncompensable as de minimis.***  Thus, since donning and doffing all items of PPE at issue were determined to be "work" as a matter of law, no distinction between unique and non-unique was necessary.

In *Perez v. Mountaire Farms, Inc*., the district court applied the *Lindow* factors to the employees of a Delaware poultry processing facility in their FLSA case:

> "[T]he experts in this case show that the time spent on donning and doffing are calculable. . . . [I]t is apparent that the aggregate claim is sufficiently large. . . . These employees were paid at a rate of $10 per hour.  Their claims go back to 2003 and continue to the present.  For one year alone (at a loss of 15 minutes per day), an employee would be entitled to $625 in damages. If doubled by the appropriate FLSA penalty, each employee would be entitled to $1250 annually.

7

The annual loss for 280 workers would be about $350,000.  Third, the unpaid work was regular and repeated itself daily.  Thus, the amount of time at issue here is not *de minimis*."

*Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 525 (D. Md. 2009).

Applying the *Lindow* factors here, the Court should reach the conclusion that the time is not *de minimis*.  Here, the practical administrative difficulty of recording the additional time did not exist.  Defendant has always required all of its hourly production employees to punch in and out on time clocks, which, until late 2007, were located at the entrance of the plant.  *See* Plaintiffs' Separate Statement of Disputed and Undisputed Facts in Opposition ("PR") ¶ 36.[3] However, Defendant chose to use the system for attendance purposes only rather than payroll. Until December 2007 (after this litigation was filed), the time clocks served no other purpose than to monitor attendance because Defendant paid employees in a way that ignored the actual times that employees began and ended their work.  PR ¶ 36.

Defendant does not dispute that it utilized a timekeeping system capable of recording the precise time employees clock in and out each day.  The evidence submitted by Plaintiffs establishes that Plaintiffs began the donning process shortly after clocking in and that the doffing process ended shortly before clocking out.  Since the donning and doffing process begins and ends the compensable, continuous work day, had the timekeeping system been used to mark the beginning of the donning process and the end of the doffing process, all compensable time would be captured.[4]  In fact, this is the exact system Defendant instituted in December 2007.  Since

---

[3] Plaintiffs also direct the Court's attention to Plaintiffs' Statement of Facts attached to Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 513 (Mar. 31, 2011).

[4] In addition, the expert report of Dr. Mericle evidences that the donning and doffing times are calculable.

Defendant had the administrative capability to record compensable time and declined to use it, Defendant should not now be entitled to use a de minimis defense.

Further, the aggregate amount of compensable time over the period from 2004 to December 2007 totals approximately $280,000 for the opt-ins over the class period.[5]  PR ¶ 53. This amount is based on Dr. Mericle's average times.  If the jury determines that the amount of time was in fact greater than Dr. Mericle's average time – the amount of damages also increases. For hourly workers who earn between $8 and $12 per hour, this is a substantial amount. *Landaas v. Canister Co.,* 188 F.2d 768, 771 (3d Cir.1951) ($21.67 to $256.88 per week over three years is not *de minimis*), cited by *Brusstar v. Se. Pennsylvania Transp. Auth.*, CIV.A. 85-3773, 1988 WL 85657 (E.D. Pa. Aug. 17, 1988); *see also Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 525 (D. Md. 2009) ("The annual loss for 280 workers would be about $350,000. . . . Thus, the amount of time at issue here is not *de minimis*.").

Finally, pursuant to Defendant's requirements and with Defendant's knowledge, Plaintiffs regularly engaged in the uncompensated work.  PR ¶¶ 17, 23 and 36. The activities at issue in this litigation occurred each day, were performed by each plaintiff, and were otherwise compensable.  Defendant has an affirmative duty to pay employees for hours worked.  Defendant should not be permitted to rely on the *de minimis* defense for otherwise compensable work activities that occurred each day, during time that was well within Defendant's capability to measure regardless of how long those activities took.  Here, Defendant did, in fact, measure the time.  It just did not pay for the time.  Thus, applying all of the *Lindow* factors, the *de minimis* doctrine simply does not apply here.

---

[5] This figure applies solely to the Deboning Third Shift.  Of course, if the other departments were included, the amount would be greater.

Even assuming, *arguendo*, a 10 minute *de minimis* rule, there are highly disputed issues of fact about the amount of time Plaintiffs spent performing donning and doffing activities on a daily basis.  Defendant begins its analysis of this issue by assuming Dr. Mericle's average times for these activities have been established as fact.  This is not true.  While Dr. Mericle did opine regarding average times for certain activities, which he determined to be more than 12 minutes for each department, he also opined that his average times "substantially underestimate" the amount of time required to perform these activities for a number of reasons, including changes in Defendant's plant operations.  PR ¶¶14-17.  Dr. Mericle found that changes such as moving pre- and post-shift donning and doffing locations and reorganizing the physical layout of the plant meant that some activities could not be measured and would have added time to his findings.  *Id.*

This fact is supported by the evidentiary hearing testimony of Yesenia Marco (found by the Court to be credible) that these activities required approximately 30-40 minutes due to a number of factors, including heavy congestion in the locker rooms.  PR ¶17.  Ms. Marco testified that up to 50 people at a time would waiting in line at the supply room for PPE with only one employee staffing the supply room.  Thus, this fact is disputed and the actual times required for pre-shift, meal period, and post-shift activities must be determined by a jury.

Second, Defendant premises its *de minimis* argument on the assumption that the "schedules" posted by Defendant were actually followed.[6]  Again, this is disputed.  With regard to pre-shift activities, the testimony of Marco, other production workers, and Defendant's supervisors is that production workers were required to don their PPE and line up at their department prior to the start of their "Shift Punch In Time" - which Defendant admits is the start of paid time. PR ¶17.  Thus, even assuming, *arguendo*, Defendant followed the schedule for

---

[6] It is Defendant's burden to prove Plaintiffs were paid for this time.

deboning, production workers already engage in compensable activities before the "Shift Punch

In Time."

The cases relied upon by Defendant in support of a bright line rule are distinguishable.  In

*Hesseltine v. The Goodyear Tire & Rubber Co.*, 391 F.Supp. 2d 509, 520 (E.D. Tex. 2005), the

Court applied a four factor test similar to the *Lindow* factors and found that recording the time

would be an administrative burden and that the time was negligible.  Here, not only did Farmers

Pride record the time, the time is not negligible.  In *Nardone v. General Motors, Inc.*, the district

court noted, after a trial:

> It is the Court's opinion that an outer limitation on the number of minutes is not of
> itself the proper application of the de minimis rule. It is a doctrine which must be
> applied with common sense to the facts before the Court. An artificial time limit
> will not suffice. Here, in light of the uncertainty of how often the tasks were
> performed, or how long a period was required for their performance, and in the
> face of the punch card ceiling time, I would find that if the plaintiffs indulged in
> any compensable activity at all (perhaps getting tools or other equipment from
> foreman) then such time was merely de minimis and not recoverable.

207 F. Supp. 336, 340-41 (D.N.J. 1962).  Thus, *Nardone*, as noted by the court, is a post-trial

decision not applicable beyond the holding in that matter.  Further, in the case at bar, there is no

uncertainty as to how often the tasks were performed.  Plaintiffs engaged in the tasks daily.

Additionally, *McIntyre v. Joseph E. Seagram & Sons Co.*, 72 F. Supp. 366, 372 (W.D. Ky.

1947), is inapposite because the court determined that the time spent by the complainant in

getting clean uniforms (when obtained before the beginning of the scheduled working period)

and the time spent in changing clothes were an activities engaged in ***solely*** for the convenience

and advantage of the complainant.  *Id.* at 372.

Similarly, Defendant's reliance on the DOL letters is misplaced.  In the DOL's April 6,

1971 letter, the DOL applied factors similar to the *Lindow* factors.  The DOL found that while

the activity of female employees washing their uniforms at home was work because the

employer required it, the employer could not record the time worked in any practicable manner.

Again, in the 1946 letter, the DOL appeared to find the time non-compensable based on the

administrative difficulty of recording the time.  In the January 1947 DOL letter, the only issue

addressed is the changing of clothes, not the donning of PPE.  Regardless, the DOL's May 31,

2006 letter states that the Supreme Court's Alvarez opinion "clearly stands for the proposition

that where the aggregate time spent donning, walking, waiting, and doffing exceeds the *de*

*minimis* standard, it is compensable.  Any other conclusion would be inconsistent with the

continuous workday rule."  *See* Ex. 1 at 4.  Defendant's attempt to supplant the DOL's clear

position on this issue by citing 40 and 55-year-old letters is inapposite.

    **C.**    **Pursuant to Third Circuit Precedent, the Donning and Doffing Activities at Issue Are Integral and Indispensable to the Principal Work Activity of Poultry Processing**

Defendant attempts to draw a distinction between standard, non-unique PPE and

specialized items of PPE, as well as draw a distinction between items Plaintiffs were allegedly

permitted to bring home and those Plaintiffs were required to obtain and don at Defendant's

facility.  Defendant cites solely to extra-circuit cases for these propositions and, even then, uses

cases that have marginal relevance to the undisputed facts of this case or that have been

expressly rejected by the Third Circuit.

    **1.**    **The Portal-to-Portal Act does not exclude activities that are integral and indispensable to the principal work activity**

Defendant  is not entitled to summary judgment on any of the donning and doffing

activities at issue in this lawsuit under the Portal-to-Portal Act because the donning and doffing

activities are integral and indispensable to the principal work activity of poultry processing.  An

activity must be "work" to be covered by the FLSA.  *See De Asencio v. Tyson Foods, Inc.*, 500

F.3d 361, 371 (3d Cir. 2007).  As the Third Circuit explained in *De Asencio*, an activity is work

if it is an activity that is (1) controlled or required by the employer, and (2) pursued necessarily and primarily for the benefit of the employer and his business regardless of whether the activity requires exertion.  *See id.* at 367 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25-26 (2005)) (summarizing Supreme Court's past holdings regarding the definition of work); *id.* at 370-71 (upholding a broad definition of "work" found in *Alvarez*).

The Third Circuit concluded that the appropriate standard of compensability was voiced by the Ninth Circuit in *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004).  *See De Asencio*, 500 F.3d at 372.  The Third Circuit quoted approvingly:

> 'Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance' . . . Further, 'where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work,' the activity may be considered integral and indispensable to the principal activities.

*Id.* (quoting *Ballaris*, 370 F.3d at 910) (emphasis omitted).

The Third Circuit's test for "work" is closely related to the Ninth Circuit's adopted test for whether a work activity is "integral and indispensable" to a principal work activity.  For donning and doffing to be "work" it needs to be controlled or required by the employer and pursued for the benefit of the employer.  For that same activity to be "integral and indispensable" the donning and doffing has to be required by law, the employer *or by the nature of the work*.[7] Both in the Third Circuit and elsewhere, when the employer or the nature of the work requires an employee to use equipment in order to perform the job, the equipment has been found to be integral and indispensable.  *See, e.g.*, *In re Cargill Meat Solutions Corp.*, 632 F. Supp. 2d 368, 377-78 (M.D. Pa. 2008) (concluding that the time spent donning, doffing, gathering,

---

[7] Other circuits have conflated the two tests.  *See, e.g.*, *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) (citing *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976)) (holding an activity is "integral and indispensable" when it is "necessary to the business" and performed "primarily for the benefit of the employer").

maintaining, and sanitizing work-related gear was compensable as a matter of law pursuant to

the reasoning in *De Asencio*); *see also Perez*, 610 F. Supp. 2d at 522 ("Because the initial

donning at the beginning of the day is 'integral and indispensable' to chicken processing, that

action is itself a principal activity and marks the beginning of the continuous work day.

Similarly, the doffing at the end of the day is a principal activity marking the end of the

continuous work day." (internal citation omitted)); *Spoerle v. Kraft Foods Global, Inc.*, 527

F.Supp.2d 860, 864 (W.D. Wis.2007) ("Because plaintiffs need to put on the equipment in order

to perform their job safely, their doing so is 'an integral and indispensable part' of a 'principal

activity.'"); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790 (M.D. Tenn. 2008) (same in a Sixth Circuit

district court).

> **2.      Courts in the Third Circuit have found the donning and doffing tasks at issue here to be integral and indispensable to Plaintiffs' principal work activity of poultry processing**

The Third Circuit in *De Asencio* concluded that donning and doffing the items at issue in

that case – smock, hairnet, beard net, earplugs, safety glasses, dust mask, plastic apron, soft

plastic sleeves, cotton glove liners, rubber gloves, metal mesh glove, and rubber boots – was

work as a matter of law.  *See De Asencio*, 500 F.3d at 373.  In doing so, the court necessarily

concluded that the donning and doffing activities were controlled or required by the employer

and pursued necessarily and primarily for the benefit of the employer as a matter of law.

Defendant grossly exaggerates its position on the "precedential value of the *Steiner*

decision" when Defendant states that "[m]ost federal courts" have limited the integral and

indispensable moniker to the facts of the *Steiner* case.  *See* Def. Brief at 8.  Although a circuit

split exists as to the appropriate test for whether activities are "integral and indispensable" to

principal work activities,[8] the Third Circuit has outlined the rule as it applies to in this Circuit. Defendant ignores the sole Third Circuit case on the issue and instead cites to a Tenth Circuit case and a series of Eleventh Circuit district court cases regarding processing plants.

The principal problem with Defendant's approach is that the Third Circuit's *De Asencio* case is directly on point here. Defense counsel made an identical argument in *De Asencio* when they argued that the court should adopt the position of *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir. 1994), in which the Tenth Circuit found that donning and doffing the equipment at issue was not compensable as work. *See De Asencio*, 500 F.3d at 371 (noting defendant's argument's reliance on *Reich*). The Third Circuit Court of Appeals noted and expressly rejected defense counsel's argument, siding instead with the Ninth Circuit's approach in *Ballaris*. *See id.* at 371 & 372.

Defendant's argument also relies on several cases that are factually distinguishable from this case in that they concern jobs wholly unlike poultry processing. Defendant's approach is curious given the number of cases that address meat and poultry processing which Defendant's brief does not address. For example, Defendant argues this Court should follow the example of the Fifth Circuit in *Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 652 (5th Cir. 2002), in which the employees wore only safety glasses and hearing protection. *See* Def. Brief at 10. Similarly, Defendant cites to the Seventh Circuit case of *Pirant v. U.S. Postal Service*, 542 F.3d 202 (7th Cir. 2008), in which the employee wore only a uniform shirt, gloves and work shoes. *See* Def. Brief at 11.

---

[8] *Compare, e.g.*, *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 911 (9th Cir.2004) (applying the "integral and indispensable" test and finding that where a company policy and federal law require employees to don and doff certain equipment, the Portal-to-Portal Act does not permit non-compensation), *with Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir.2007) (holding "indispensable" means "necessary," whereas "integral" means "essential to completeness;" and that donning and doffing activities do not qualify as essential to completeness"). **The Third Circuit has adopted the Ninth Circuit's test, not *Gorman*.** *See De Asencio*, 500 F.3dat 372.

The cases Defendant cites from poultry and meat processing plants are inadequate to support Defendant's arguments for several reasons.  Defendant's reliance on *Reich* is misplaced as the Third Circuit has already expressly rejected that position.  *See De Asencio*, 500 F.3d at 372 (rejecting Defendant's reliance on *Reich*).  The Third Circuit rejected *Reich*, in part because the district courts in the Tenth Circuit indicated that *Reich* was no longer good law in light of the Supreme Court's decision in *Alvarez*.  *See De Asencio*, 500 F.3d at 371-72 (citing *Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240 (D. Kan. 2007)).

Defendant also relies on a series of poultry processing cases in district courts in the Eleventh Circuit.  *See* Def. Brief at 8-11 (citing *Alford v. Perdue Farms, Inc.*, No. 5:07-cv-87, 2008 WL 879413 (M.D. Ga. 2008); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300 (N.D. Ala. 2008); *Jenkins v. Harrison Poultry, Inc.*, No. 2:07-cv-58, 2008 U.S. Dist. LEXIS 110597 (N.D. Ga. 2008)).  The Eleventh Circuit, however, has adopted a much narrower interpretation of the "integral and indispensable" standard than outlined in the Ninth Circuit cases that the Third Circuit has adopted.  Indeed, Defendant is ostensibly asking this Court to ignore a direct holding of the Third Circuit in favor of a standard that has only been applied to poultry processing by a few Eleventh Circuit district courts.

### 3.    Whether the equipment is "standard" is not relevant to the integral and indispensable inquiry

Whether items of PPE can be used to perform tasks unrelated to poultry processing is irrelevant to whether the items are integral and indispensable to poultry processing and the Third Circuit has not recognized any distinction between these types of PPE.  *See De Asencio*, 500 F.3d at 364 (noting employees generally wear a smock, hairnet, beard net, ear plugs, and safety glasses and certain employees wear a dust mask, plastic apron, soft plastic sleeves, cotton glove liners, rubber gloves, metal mesh glove, and rubber boots); *id.* at 373 (finding donning and

16

doffing these items to be "work" as a matter of law using a test that is not clearly distinguishable from the integral and indispensable test); *id.* at 372 (adopting *Ballaris*' position and quoting the *Ballaris* court declining to acknowledge a distinction between unique and non-unique gear for purposes of integral and indispensable inquiry).

Other courts have reached the same conclusion.  *See, e.g.*, *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910-11 (9th Cir. 2004) ("[In *Alvarez*, w]e further held that, in considering whether putting on and taking off safety goggles was excluded, the ease of donning and ubiquity of use did not make the donning of such equipment any less integral and indispensable."); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125 (10th Cir. 1994) ("[T]he fact that such equipment is well-suited to many work environments does not make it any less integral and indispensable to these particular workers than more specialized gear.");[9] *Helmert v. Butterball LLC*, No. 4:08-cv-342, 2009 WL 5066759, at *12 (E.D. Ark. Dec. 15, 2009) ("The Court will not hold as a matter of law that donning and doffing is not integral and indispensable to the principal activity of processing turkeys simply because the items donned and doffed are not unique."); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 806 (M.D. Tenn. 2008) ("Whether those frocks are 'specially designed' is irrelevant . . . .").

Defendant argues that the standard, non-unique items that are excluded from compensation by the Portal-to-Portal Act are hairnets, beard nets, earplugs, smocks, footwear/boots, cotton gloves, rubber/plastic gloves, vinyl/plastic aprons, plastic sleeves,

---

[9] Although the Third Circuit expressly rejected the Tenth Circuit's determination that the donning and doffing activities were not work, the Third Circuit ostensibly adopted the Tenth Circuit's position that there was no distinction between unique and non-unique items of PPE since the Third Circuit did not make a distinction itself.  *See also McDonald v. Kellogg Co.*, 740 F. Supp. 2d 1220, 1238 n.10 (D. Kan. 2010), *vacated in part on other grounds*, 2010 WL 4386899 (recognizing the continued viability of *Reich*'s refusal to distinguish between unique and non-unique PPE while also recognizing that the Tenth Circuit's law no longer considers donning and doffing PPE to not be work as a matter of law).

disposable dust masks, and safety glasses.  Defendant cites absolutely no case law to support this broad list because, in fact, no case law supports such a sweeping exclusion of donning and doffing items from compensability.  In *Alvarez v. IBP, Inc.*, the Ninth Circuit found donning and doffing a helmet and safety glasses to be *de minimis* and non-compensable as a matter of law when compared to the donning and doffing of specialized gear.  However, the Ninth Circuit has repeatedly found that, although the time spent donning these items is *de minimis*, "in considering whether putting on and taking off [such items] was excluded [from compensability], ***the 'ease of donning and ubiquity of use [did] not make the donning of such equipment any less "integral and indispensable."***" *Ballaris*, 370 F.3d at 910-11 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903 (9th Cir. 2003)) (emphasis added).

The focus in both *Ballaris* and *Alvarez*, is on the actual amount of time employees spend donning and doffing one or two items of non-unique equipment.  So, if an employee puts on a hardhat and doing so takes four seconds, the court would not add four seconds to the employee's compensable time.  ***However, all time after such an item is donned is considered compensable under the continuous workday doctrine if the item is found to be integral and indispensable***. *See generally IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).  Therefore, if the employee puts on the hardhat that is integral and indispensable to the principal activity of meat processing in the locker room and then spends fifteen minutes donning other items and walking to the jobsite, the fifteen minutes is compensable as part of the continuous workday.

Defendant's focus is, thus, misplaced.  Donning and doffing any one of these items can be integral and indispensable.  *See, e.g.*, *Jordan*, 542 F. Supp. 2d at 805 (finding that Plaintiffs correctly assert that removing clean frocks from their lockers is the first principal activity that starts the workday and doffing and stowing the frocks in their lockers is the last principal activity

that ends the workday).   However, aggregating the time spent donning and doffing the entire

complement of equipment cannot be deducted from compensable time because it occurs during

the continuous workday that was commenced by donning the first integral and indispensable

item and ended by doffing the last integral and indispensable item.  *See De Asencio*, 500 F.3d at

374 (finding it improper for jury to be instructed to "consider whether the donning/doffing

activities were *de minimis*, and not whether that time, when aggregated with post-donning/pre-

walking time, was *de minimis*"); *see also Jordan*, 542 F. Supp. 2d at 805-06 ("As all plaintiffs

engage in [the activity of donning and doffing an integral and indispensable frock], and as the

compensability of any intervening activities – including the donning and doffing of standard and

specialized gear and the attendant collecting, sanitizing, walking and waiting-is irrelevant under

the continuous workday rule . . . .").

For these reasons, Defendant's argument that time spent donning and doffing items

Defendant labeled "standard" or "non-unique" is non-compensable as a matter of law must fail.

The large number of items necessarily requires more time than the mere seconds discussed in

*Alvarez*.  Moreover, even if donning and doffing one item could be deducted from

compensability as *de minimis*, (which it cannot because the question of *de minimis* must be

decided by looking at all unpaid time in the aggregate) the item could nevertheless be integral

and indispensable making all activities thereafter compensable.  *See De Asencio*, 500 F.3d at

374; Ex. 1 at 4.

The items of PPE to which Defendant refers have expressly been found to be integral and

indispensable in a poultry processing case similar to this one in the Middle District of

Pennsylvania.  *See In re Cargill Meat Solutions Corp.*, 632 F. Supp. 2d 368, 378 (relying on *De*

*Asencio* to find donning and doffing a smock, hardhat, hairnet, earplugs, boots, safety glasses,

19

plastic gloves, plastic sleeves, rubber gloves, aprons, mesh aprons, and cutting gloves among other items, to be integral and indispensable as a matter of law).  The Third Circuit has instructed that all donning and doffing time must be aggregated with post-donning and pre-doffing walking time in *De Asencio*.  The law as set out in Third Circuit courts, therefore, does not recognize a distinction between unique and non-unique PPE because to the extent the activities can be aggregated, they are compensable; and even if they cannot be aggregated, the uniqueness of an item has no bearing on whether it is integral and indispensable.

> **4.     Whether Plaintiffs "can" bring equipment to and from home is not relevant to the integral and indispensable inquiry when the option is "illusory," and moreover, there is an issue of genuine disputed fact**

Defendant's contention that it permitted employees to take their hairnet, beardnet, safety glasses, earplugs, and footwear home is irrelevant because the option was illusory.  In *Perez v. Mountaire Farms*, the district court considered a similar argument during the bench trial when the defendant argued that employees had the option to take their PPE home causing the activities at issue to be non-compensable.  *See Perez v. Mountaire Farms* (*Perez II*), 610 F. Supp. 2d at 519 (bench trial opinion in a donning and doffing case at a Delaware poultry processing plant). The court found the option to take PPE home to be "illusory" because employees were provided with lockers and any employee who requested a locker received one.  *Id.*  The court stated "[i]f changing at home were a bona fide option, there would be no real need for employee lockers or for Defendants to incur the costs of installing them."  *Id.*  The exact same analysis applies here. The bottom line is that Defendant cannot simply declare an option exists if Defendant's exercise of control makes that option so undesirable that no one exercises the option.  In this case, Defendant provides Plaintiffs with the PPE they wear.  *See* PR ¶¶ 5 & 17.  Defendant provides Plaintiffs with a locker in which to store the PPE.  PR ¶ 17.  Although Defendant professes to allow employees to take items home, Defendant offers employees a far more convenient option.

20

Moreover, Defendant  requires at least some items to remain at the plant.  Thus, employees'

typical practice is not to take anything home.  Therefore, although Defendant professes to permit

employees to take items home, the option is illusory for the same reasons the option was illusory

in *Perez*.

      **5.**      **Defendant Ignores Third Circuit law on whether activities are
integral and indispensable making summary judgment inappropriate**

The Third Circuit has already found that donning the equipment at issue in this case is

work.  The necessary implication is that where donning and doffing equipment is controlled or

required by the employer, donning and doffing that equipment necessarily and primarily benefits

the employer as a matter of law in the context of poultry processing.  The Third Circuit has

already declined to adopt a distinction between unique and non-unique equipment.  *See

generally, De Asencio*, 500 F.3d 361 (3d Cir. 2007); *see also Ballaris v. Wacker Siltronic Corp*.,

370 F.3d 901, 910-11 (9th Cir. 2004) ("'[In *Alvarez*, w]e further held that, in considering

whether putting on and taking off safety goggles was excluded, the ease of donning and ubiquity

of use did not make the donning of such equipment any less integral and indispensable.'").

Whether Defendant or the nature of the work requires some items of PPE is a disputed issue of

fact.  However, Defendant admits that it required Plaintiffs to use a smock, hairnet, beardnet (if

applicable), earplugs (during the pre-2007 changes), as well as a mesh cut resistant glove,

Whizzard cut resistant glove, and/or a hard plastic arm guard when working with knives or

scissors.  To the extent any one of these items is integral and indispensable, once donned, all

activities thereafter are compensable as part of the continuous workday pursuant to the Supreme

Court's decision in *IBP, Inc. v. Alvarez*.

Thus, Defendant's motion should be denied because the items at issue in this case are

integral and indispensable.  Where, as here, the employer requires the donning and doffing of

certain items, donning or doffing of any one item is a principal activity that starts and stops the

continuous workday.  Therefore, whether Defendant professes not to require other items is not

relevant under Third Circuit law to the extent the activities occur during the continuous workday.

Defendant has not identified any undisputed facts that place the donning and doffing of any

purportedly "not required" equipment outside the Third Circuit's definition of the continuous

workday.

> **D.** **Whether Plaintiffs' Received the "Predominate Benefit" of the Unpaid Meal Period is a Disputed Material Fact Making Summary Judgment on the *Bona Fide* Meal Period Deduction Inappropriate.**

Under the FLSA, "bona fide meal periods are not worktime" and are thus properly

excludable from compensable worktime.  29 C.F.R. § 785.19.  To qualify as a bona fide meal

period, the Department of Labor's regulations provide that "[t]he employee must be completely

relieved from duty for the purposes of eating regular meals."  *Id.*  By way of comparison, the rest

period provision of the regulations states:  "Rest periods of short duration, running from 5

minutes to about 20 minutes, are common in industry. . . .  They must be counted as hours

worked."  29 C.F.R. § 785.18.

It is the duty of management to exercise its control and see that work is not performed if

it does not want it to be performed.  It cannot sit back and accept the benefits without

compensating for them.   29 C.F.R. § 785.13.  Although the Third Circuit has not addressed the

issue of what constitutes a *bona fide* meal period, this Court has adopted the predominant benefit

test.  *McGrath v. City of Philadelphia*, 864 F.Supp. 466, 479-481 (E.D. Pa. 1994).  Thus, with

regard to the meal period, there are two issues to be resolved:  (1) did the production workers

perform work during the meal period for which they should be compensated; and (2) was the

meal period primarily for the benefit of the employer.

Here, it is undisputed that Plaintiffs perform work by donning and doffing during the meal period.  Dr. Mericle estimates the amount of time to be approximately 5.40 minutes in the deboning department.  Again, this figure underestimates the time Plaintiffs spent performing work during the meal period.  The evidentiary hearing testimony of Ms. Marco indicates that she spent ten minutes performing work during the meal period.  *See* PR ¶ 24. Ms. Marco also indicated that one of the reasons that she did not receive a full meal period was that production workers on the shift had to line up and wash at the beginning of the meal period and there were only 8 faucets and about 70 employees in the department. *Id*. To the extent Defendant argues that the law permits Defendant not to pay for work activities during the meal period, Defendant mischaracterizes the law and is not entitled to summary judgment.  29 C.F.R. § 785.13.  Thus, if the time provided for eating a regular meal does not begin until after the employee has doffed his equipment, no regulation or law permits Defendant not to compensate for that time.  Similarly, if the time provided for eating a regular meal ends when the employee is required to come back to re-don his or her equipment, no regulation or law permits Defendant not to compensate for the work the employee engages at the end of the meal break.

Defendant next argues that the entirety of the meal period is non-compensable as a *bona fide* meal period, but a material dispute of fact exists as to who receives the predominate benefit of the entire meal period, rendering summary judgment inappropriate.  *McGrath v. City of Philadelphia*, 864 F. Supp. 466, 482 (E.D. Pa. 1994) (denying summary judgment where, "…Most importantly, however, is that the plaintiffs have produced evidence which, if believed, supports the inference that they do not customarily receive a meal period at all, or they receive a meal period of substantially shorter duration than thirty minutes.").  "Whether a meal break is predominantly for the benefit of the employer is a factual determination."  *Perez v. Mountaire*

*Farms, Inc.* (*Perez I*), 601 F. Supp. 2d 670, 682 (D. Md. 2009) (citing *Beasley v. Hillcrest Med. Ctr.*, 78 Fed.Appx. 67, 70 (10th Cir.2003); *Bernard v. IBP, Inc.*, 154 F.3d 259, 265 (5th Cir.1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.").

Here, as evidenced above, Plaintiffs performed work during the meal period. Defendant argues that "[p]ursuant to the compensation schedules, Farmers Pride provides additional paid time before and after the 30-minute meal period for donning and doffing activities, which means that, even under [Plaintiffs' expert's] expansive measurements, there are only approximately 1 to 5 minutes of uncompensated donning and doffing time during the meal period." Def. MSJ Brief at 17-18. Whether the schedules were followed by Defendant is a disputed fact. Defendant's contention that it runs the lines according to schedules is contradicted by James Tobias' declaration submitted with Defendant's motion. In his declaration, Tobias states, "During the 30-minute meal period, no additional chickens are placed on the production line, and Plaintiffs who work on the line are free to leave their workstations on the production lines as soon as they finish working on the last piece of product that passes in front of their workstations." Tobias Dec. ¶16. This contradicts Defendant's claim that there is one specific time at which the line stops for lunch. In light of this fact and evidence cited above, there is a triable issue of fact about whether Plaintiffs received a bona fide meal period. *Perez v. Mountaire Farms, Inc.*, 601 F. Supp. 2d 670, 682 (D. Md. 2009) (There is a genuine issue of material fact as to whether the activities performed during the meal break predominantly benefit defendants because there is a dispute regarding the amount of time plaintiffs devote to sanitizing and doffing at the beginning of the meal break and donning at the end of the meal break. The question of which party predominantly benefits is a question of fact and not proper for summary judgment.)

24

The cases relied upon by Defendant primarily discuss work activities that are interspersed with the time the employees spend eating.  For example, Defendant cites to *Hill v. United States*, a case where a postal worker had to carry and safeguard work materials during his lunch period. Def. MSJ Brief at 21.  These activities were inseparable from the time spent actually eating lunch.  Similarly, the two district court cases in the Third Circuit cited by Defendant involved police officers who were, in essence, on call during their meal period.  *See id.* at 15 (citing *McGrath v. City of Philadelphia*, 864 F. Supp. 466 (E.D. Pa. 1994); *Oakes v. Pennsylvania*, 871 F. Supp. 797 (M.D. Pa. 1995).  Neither case involved employees whose time at the beginning and end of the meal period was devoted *exclusively* to work activities.  In contrast to those cases, the activities here are clearly separate and distinct from any time Plaintiffs have to themselves. In fact, it is undisputed that Plaintiffs do not eat until after their PPE is doffed and they do not continue to eat while re-donning their PPE.

Defendant's confusion of the issues stems from a misinterpretation of what period may qualify as a bona fide meal period and what incursions may be deducted from compensability even though they may otherwise qualify as "work."  In the context of donning and doffing, the work activities are not actually taking place during the time provided for eating a regular meal. Rather, the activities take place during the continuous workday before and after the meal period. In the context of postal workers and police officers, the work activities take place during the time allotted for a regular meal and the *bona fide* meal period rule permits employers to not compensate employees for the entire period under those circumstances.

Therefore, because Plaintiffs' work activities take place entirely outside the period of time devoted to eating a meal, no legal justification exists to deny compensation for the work time.  Moreover, a material fact remains as to whether the time provided to Plaintiffs to eat the

meal is sufficient to make the period a *bona fide* meal period or whether it should be classified as a compensable rest period.  Defendant's motion for summary judgment must be denied on both accounts.

### E.   Defendant Acted Willfully By Failing To Pay Employees For Their Donning and Doffing Activities In Accordance With The FLSA

Plaintiffs claim that Farmers Pride's alleged violations of the FLSA were "willful," and that therefore the limitations period applicable to this case is three years instead of two years. 29 U.S.C. § 255(a) states:

> Any action . . . to enforce a cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938, as amended . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).

The United States Supreme Court has held that an employer has engaged in a "willful" violation of the FLSA if the employer knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133. However, whether there was willful violation of the FLSA so as to apply three-year rather than two-year limitations period is question of fact to be determined from evidence making summary judgment on the issue inappropriate. *Cacchione v. Erie Technological Products, Inc.*, 526 F. Supp. 272 (W.D. Pa.1981).

### 1.   DOL informed Defendant in 2001 that it was in violation of the FLSA with regard to the way it compensated employees for donning and doffing

Defendant contends that its failure to pay Plaintiffs for donning and doffing and related activities was not willful.  This is highly disputed and is not appropriate for summary judgment.

26

As early as March 2001, the United States Department of Labor notified Defendant that it was in violation of the FLSA with regards to the way it compensated its employees.  Defendant's Separate Statement, "DS", ¶¶ 27-28.  Despite this notification, and subsequent notification from the DOL in 2002 and 2006 that it was still in violation DS ¶¶ 47-48, Defendant did not change the way it paid employees for donning and doffing related activities until after litigation was filed. DS ¶ 49.

In *Dole v. Solid Waste Services, Inc.*, 733 F. Supp. 895, 928 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990) and *aff'd sub nom. Appeal of Solid Waste Services, Inc.*, 897 F.2d 524 (3d Cir. 1990), the Court found:

> The Secretary's evidence more than adequately proves defendants knew or should have known of the requirements of the FLSA. Defendant companies were investigated on seven occasions before this suit was commenced. The Secretary showed that defendants had been repeatedly informed about the problems which resulted from defendants' wage computation methods. Defendants were told, orally and in writing, of the requirements of the FLSA.
>
> …
>
> the record is replete with evidence that defendants were repeatedly informed of what was necessary to comply with the FLSA. It also clearly shows that defendants made no serious attempt, much less a good faith attempt, to comply with the FLSA.

In the case at bar, a similar situation is presented.  Defendant was investigated by DOL and initially warned in 2001 that it was in violation of the FLSA.  DS ¶ 27.  While it contends that it reacted to this investigation by implementing schedules to address its violations, this is a disputed issue.  As an initial matter, Defendant's claim that it received approval from DOL to implement its schedules is impermissible hearsay.  DS ¶ 41.  Defendant has not produced any admissible testimony indicating that DOL approved of its "schedules."  Further, to the extent the communications with DOL are considered, Defendant admits that DOL only indicated that it would review those changes, not that they were approved.  *Id.*  Defendant has not submitted any

evidence that it took any action afterwards to determine whether the schedules were acceptable

to the DOL.  Further, Defendant's self-serving statements are contradicted by the fact that DOL

subsequently twice notified Defendant it that it was not in compliance with the FLSA.  DS ¶¶ 47-

48.

> **2.   The Vast Majority Of The Uncompensated, Off-The-Clock Work Activities Opt-In Plaintiffs Engaged In Are Compensable Under Well-Settled Law**

Defendant also ignores the fact that the law governing the bulk of Plaintiffs' case is well-

settled and has been throughout the relevant time period.  It is well-settled that donning and

doffing of PPE is "work," and that donning and doffing of PPE is "integral and indispensable" to

the principal work activities of production-line workers.  *See Steiner v. Mitchell*, 350 U.S. 247,

255-256 (1956); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 33-34 (2005).  It is also well-settled that the

donning and doffing of PPE is sufficient to start the compensable workday under the Portal-to-

Portal Act.  *IBP*, 546 U.S. at 33-34.  It is well-settled that walking and waiting time that occurs

after the donning and doffing of PPE is compensable.  *IBP,* 546 U.S. at 34-35.  It is well-settled

that an employer must compensate an employee for duties the employee performs before and

after scheduled hours if the employer "'knows or has reason to believe' the employee is

continuing to work."  *Mumblower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) (quoting 29

C.F.R. § 785.11).  Moreover, in its decision in *IBP*, the Supreme Court found:

> …consistent with our prior decisions interpreting the FLSA, the Department of Labor has adopted the continuous workday rule, which means that the "workday" is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." § 790.6(b). These regulations have remained in effect since 1947, *see* 12 Fed. Reg. 7658 (1947), and no party disputes the validity of the continuous workday rule.

*IBP, Inc. v. Alvarez*, 546 U.S. at 28-29.  Thus, it is also well-settled that workers must be

compensated from the time they start performing their first principal activity until they finish

performing their last principal activity.  Paid time is calculated using this "whistle to whistle"

concept:

First principal activity                                       Last principal activity

⌐——————————————————————————————⌐

Paid time
(excluding *bona fide* meal break)

Defendant was well aware that its hourly production-line employees engaged in extensive

uncompensated off-the-clock work before and after paid time and during the meal period.

When Plaintiffs arrived at the facility before their shift, they were required to "obtain and

don the sanitary protective clothing and equipment required by Farmers Pride and were supposed

to clock in" prior to the start of their shift on the line.  *See* PR ¶ 36.  Plaintiffs stored much of

their PPE in their lockers and would go to their lockers before their shift start time to retrieve that

equipment.  PR ¶¶ 6-7, 9 & 17.   The locker area was often crowded before the shift start time.

PR ¶ 17.  Plaintiffs were also required to obtain clean smocks from a central supply room before

the start of every shift.  PR ¶¶ 5 &17.  Plaintiffs would also exchange items at the supply room

such as plastic aprons, plastic gloves, plastic sleeves, cotton gloves, earplugs and hairnets.  PR ¶

17.

At meal periods, Plaintiffs did not have the entire 30 minute unpaid meal break

completely relieved of work duties.  PR ¶ 23.  Plaintiffs spent time doffing, waiting, washing,

walking and re-donning at the beginning and end of their 30 minute meal break.  PR ¶ 23.

Defendant required employees to doff their PPE at the beginning of the unpaid meal period.  PR

¶ 23.  After washing their PPE, Plaintiffs had to find a hook or other location on which to hang it.

PR ¶ 23.  Plaintiffs also had to clean their boots during the meal period and quality control

inspectors on occasion would require Plaintiffs to re-wash their equipment if its cleaning was

unsatisfactory.  PR ¶ 23. At the end of the unpaid meal period, Plaintiffs were required to return

29

to the production area, sterilize their hands, retrieve their PPE, re-don their PPE, and walk back

to their workstations before production recommenced.  PR ¶ 23.  Adding difficulty to these tasks,

there was congestion in the department as employees donned their PPE at the end of the meal

period necessitating more time for employees to get ready.  PR ¶ 23.

At the end of production, Plaintiffs walked to a washing station and waited in line for

access to a hose or sink where they washed their mesh gloves, arm protectors, plastic aprons,

plastic sleeves, plastic gloves and boots.  PR ¶ 17.  They then dried their PPE with paper towels

so that it was not wet when they put it in their lockers. PR ¶ 17.  Plaintiffs spent more time

washing their PPE at the end of the shift than during their meal period because they washed it

more thoroughly at the end of the day.  PR ¶ 17.  Since Plaintiffs stored their PPE in their lockers

overnight and the PPE had to be sterile, Plaintiffs had to be more thorough in ensuring their PPE

was completely clean and dried.  PR ¶ 17.

The time Plaintiffs spent engaging in these activities is clearly compensable under the

law addressed above, and Defendant's decision to ignore that law establishes a willful disregard

for its obligations.  *See Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078 (8th Cir. 2000) (holding

that where there was evidence that the defendant ignored the issue, there was an "ample basis for

a reasonable jury to find that [the defendant] willfully violated the FLSA's overtime

requirements.").

**F.      Defendant Had Knowledge Of Its Legal Obligations With Respect To
          Compensating Its Employees For The Extensive Unpaid Work They Were
          Performing Off-The-Clock And Yet Defendant's Response Was Woefully
          Inadequate**

Throughout the relevant time period, Defendant has failed to take effective remedial

action despite having knowledge of the extensive unpaid work its employees are performing off-

the-clock and its legal obligations with respect to compensating its employees for that work.

Defendant was put on notice of its legal obligations when the Department of Labor conducted its 10-day investigation in 2001.  DS ¶ 27.  Defendant has since been represented by outside counsel on this issue.  DS ¶ 51.

A finding of willfulness is also appropriate where an employer continued to violate the FLSA despite having notice of the Act's requirements via past investigations.  *See Tiffey v. Speck Enterprises, Ltd.*, 418 F. Supp. 2d 1120, 1124-1125 (S.D. Iowa 2006).  Here, Defendant conducted a time study, in 2001, that was purportedly designed to determine the amount of time it took employees to don and doff PPE.  The "analysis" that Defendant performed did not account for the proper legal analysis or standard.  Under the continuous workday rule, employers may only exclude preliminary and postliminary activities for purposes of compensation when they occur outside of "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  29 C.F.R. § 790.6(b); *see also* 29 U.S.C. § 254(a); *IBP*, 546 U.S. at 28-29.

In conducting the time study, Defendant ignored the Supreme Court's ruling and failed to include all continuous time between the employees' first and last principal activities of the day.  Defendant *never timed the employees' work activities from start to finish as required by the United States Supreme Court*.

Rather than timing all of the activities the employees engaged in during their continuous workdays, Defendant simply measured certain discrete activities that the employees engaged in.  By utilizing this methodology, Defendant intentionally ignored the Supreme Court's requirement under *IBP* that employees be paid for any activity that occurs between the first and last principal activities of the employee's workday.  By excluding these activities, among others, from its

31

calculations, Defendant exhibited an intentional, or at least reckless, disregard for its compliance with the FLSA.  The numerous deficiencies of the time study include:

- Mr. Gruber's "random sample" of employees consisted simply of a Quality Control hourly employee (or "girls" as he referred to them) picking a production employee to time.  There were no criteria used to select employees to time, nor were there any standards imposed to ensure that selection of subjects was truly random.

- Mr. Gruber cannot recall who designed the study or who made the decisions about how it would be implemented.

- The study only took place on the first shift, and never studied the third shift.

- The study may or may not have included time employees spent at the lockers.

- The time employees spent waiting in the supply room line at the beginning of the shift was not included.

- The study may or may not have included time employees spent clocking in.

- Time spent donning a mesh protective glove may or may not have been included in the study.

- The study did not include obtaining or donning and doffing hard plastic arm guards.

- The study did not include obtaining or donning and doffing plastic gloves.

- The study did not include obtaining or donning and doffing cotton gloves.

- Mr. Gruber is not sure what time span the study covered.

- The study consisted of four Quality Control employees who were given blank paper to write down times.  *Id.* at 121-122.  The paper was not formatted in any way and the employees were not given instructions on how to record times.

- Mr. Gruber was not good with computers, so he gave the papers with the times written down by the QC employees to his wife, Karen, to type up at home.

- These papers were not retained and were thrown in the garbage when Mr. Gruber changed offices in 2005, despite the fact that there was an open DOL investigation.

- Mr. Gruber is not sure who actually did the calculations of average times that appears on the memo he submitted to Bruno Schmalhofer and Lumi Ythier.

- Timing of employees at the beginning of the lunch break started when they "hit" the sink to wash, and excluded any walking or waiting time to get to the sink.

- Mr. Gruber does not know exactly what action at the sink started the timing.

- The study did not differentiate whether an employee rinsed their mesh glove at the beginning of the meal break.

- Mr. Gruber was not sure if the study included any employees that rinse their mesh gloves at the end of the lunch break.

- Mr. Gruber was not sure if the study included employees sanitizing their hands when re-entering the department after lunch.

- Mr. Gruber did not know what action started timing at the end of the meal break.

- Mr. Gruber did not know what action started timing at the end of the shift.

- Waiting time to wash at the end of the shift may or may not have been included in the study.

- Timing at the end of shift excluded all activities outside of the department, such as time spent at the locker and clocking out.

- Mr. Gurber had never conducted a time study before attempting this one.

PR ¶ 31.

Defendant conducted a further "review" of donning and doffing times that was as similarly flawed.  Jim Tobias, Farmers Pride First Shift Processing Manager for the past eleven years, testified that he performed *exactly one* "time study" in 2005, at Mr. Gruber's behest.  PR 45. Mr. Tobias's "study" was as flawed and incomplete as Mr. Gruber's:

- Mr. Tobias chose to conduct this study by donning PPE *himself* instead of timing actual employees under real circumstances, thus building a bias directly into his study.  The study consisted of him obtaining a hairnet and smock at the supply room, walking to a department, and donning other PPE in that department while another manager timed him. He did this for each department.

- Mr. Tobias only conducted his study of the first shift, and Defendant cannot point to any study being conducted of the third shift in any department.

33

- Mr. Tobias chose to conduct his study after the other hourly employees were already working on their shift, and not amidst the pre-shift crowding to obtain and don PPE, so his results fail reflect the real circumstances in which employees obtain and don their PPE.

- Mr. Tobias completely omitted time employees spend at their lockers in the beginning of the shift or at the end of the shift.

- Mr. Tobias omitted all waiting times from his study.

- Mr. Tobias simply wrote times down on a piece of paper.  There is no evidence that he used a standardized form and any sort to organize his data, or that he repeated the procedure to ensure the accuracy of his results.

- Mr. Tobias did not time doffing PPE at lunch or the end of the shift, and thus omitted the walking, waiting and washing times associated with doffing PPE.

- There is no evidence that Mr. Tobias used standardized beginning or end points for the timing in his study, nor that there was any process to ensure consistency in timing.

- The study was performed before plant renovations were complete and did not account for the affects future renovations would have on donning and doffing times.

- This was the only time study Mr. Tobias had ever conducted.

Much like Mr. Gruber's study, Mr. Tobias' unscientific, ad hoc study was incomplete and utterly failed to account, measure or calculate the actual time employees' spent donning and doffing throughout the day.

Despite Defendant's clear knowledge that employees engage in these activities, it nonetheless chose to compensate its employees for only a fraction of them.  As discussed above, these activities occur between an employee's first principal activity of the day and before the employee's last principal activity, making them compensable under the *IBP* "continuous workday" rule.  *See IBP*, 546 U.S. at 28 (quoting 29 C.F.R. § 790.6(a)).  The fact that Defendant knew employees engaged in these activities, among others, and chose not to compensate them for that work, establishes that, at the very least, Defendant showed a reckless disregard for

34

whether it was in compliance with applicable law, and most likely acted in an intentional

manner.  Either way, the three-year statute of limitations should apply.

### G.      Whether Farmers Pride Acted in Good Faith Is Disputed

Plaintiffs seek liquidated damages under 29 U.S.C. § 260 for their claimed FLSA

violations. 29 U.S.C. § 260 provides that:

> [I]f the employer shows to the satisfaction of the court that the act or omission
> giving rise to such action was in good faith and that he had reasonable grounds for
> believing that his act or omission was not a violation of the Fair Labor Standards
> Act of 1938, as amended, the court may, in its sound discretion, award no
> liquidated damages. . . .

29 U.S.C. § 260.

Section 260 has both subjective and objective components. *Brooks v. Village of*

*Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).  As a result, Defendant must establish that it

acted with good faith and reasonableness.  *Id*. "The 'good faith' requirement is a subjective

standard that requires that the employer have an honest intention to ascertain and follow the

dictates of the Act." *Id.* (citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir.

1991)).  "To satisfy the objective standard, the employer must act as a reasonably prudent person

would have acted under the same circumstances." *Id.*

Essentially, the defense provides that the district court has discretion to award no

liquidated damages, or to award an amount of liquidated damages less than the amount provided

by Section 216(b) of the FLSA, if, and only if, the employer shows that he acted in good faith

and that he had reasonable grounds for believing that he was not violating the Act.  Thus, before

the district court's discretion may be invoked, the employer has the "plain and substantial burden

of persuading the court by proof that his failure to obey the statute was both in good faith and

predicated upon such reasonable grounds that it would be unfair to impose upon him more than a

35

compensatory verdict." *Rothman v. Publicker Industries*, 201 F.2d 618, 620 (3d Cir. 1953).  In the absence of such a showing, the district court has no discretion to mitigate an employer's statutory liability for liquidated damages.  *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).  The good faith requirement of the Portal-to-Portal defense requires that the employer have an honest intention to ascertain and follow the dictates of the Act.  *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).  The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior. *Id.*  Moreover, an employer may not rely on ignorance alone in meeting the objective test.  *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982); *see also Barcellona v. Tiffany English Pub*, 597 F.2d 464, 468-69 (5th Cir. 1979).

Here, for the reasons articulated in the prior section,  Defendant did not act in good faith. Defendant cannot be said to have had a subjective good faith belief in its actions when it was informed by the DOL that those very actions violated the law.  Further, Defendant cannot be considered to have acted in an objectively reasonable manner.  Here, Defendant was notified that its actions violated the law.  In response, it contends that it sought approval of its proposed schedules.  However, Defendant never obtained confirmation that its schedules were approved. A reasonably prudent person would have confirmed approval.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's

Motion for Summary Judgment in its entirety.

Dated: April 25, 2011

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP


___/s/_____
CLINT J. BRAYTON
TODD M. SCHNEIDER
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Telephone No.: (415) 421-7100
Facsimile No.: (415) 421-7105

BERGER & MONTAGUE, P.C.
SHANON J. CARSON
JAMES A. WELLS
1622 Locust Street
Philadelphia, PA  19103
Telephone No.: (215) 875-3000
Facsimile No.: (215) 875-4604

PHILIP A. DOWNEY
The Downey Law Firm, LLC
P.O. Box 1021
Unionville, PA  19375
Telephone No.: (610) 324-2848
Facsimile No.: (610) 813-4579

*Attorneys for Plaintiffs and Opt-In Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 25, 2011, I served a true and correct copy of Plaintiffs'

Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, and all

supporting papers, on the following:

<u>**By ECF**</u>

George C. Werner, Esq.
Barley Snyder LLC
126 East King Street
Lancaster, PA 17602
Telephone: (717) 399-1511
Email: gwerner@barley.com

Jill S. Welch, Esq.
Barley Snyder LLC
126 East King Street
Lancaster, PA 17602
Telephone: (717) 399-1521
Email: jwelch@barley.com

Ryan A. Glassgow
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8791
Email: rglassgow@hunton.com

<u>**By E-Mail**</u>

Michael J. Mueller
Hunton & Williams LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 419-2116
Email: mmueller@hunton.com

_____/s/_____
Clint J. Brayton

38