## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **LUZ LUGO, YESENIA MARCO, et al.** | : | |
|  | : | **CIVIL ACTION NO. 07-CV-00749** |
| *Plaintiffs* | : | |
|  | : | |
| **v.** | : | |
|  | : | |
| **FARMERS PRIDE, INC.** | : | Honorable Michael M. Baylson |
|  | : | |
| *Defendant* | : | |
|  | : | |

## DEFENDANT'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii - iii

A.   Plaintiffs Cannot Dispute That Farmers Pride Implemented And Generally Followed Its Compensation Schedules Because They Stipulated To These Facts In Seeking Certification Of Their Revised Collective Action. ........................................................... 1

B.   The Aggregate Amount Of Plaintiffs' Uncompensated Donning And Doffing Time Per Day Is *De Minimis*. .................................................................................................... 2

C.   Donning And Doffing Standard, Non-Unique Clothing And Equipment Is Not Integral And Indispensable As A Matter Of Law.......................................................................... 7

D.   Any Donning And Doffing That Occurs At The Beginning Or End Of Plaintiffs' Meal Period Is Not Compensable Because The Meal Period Is "Bona Fide." ........................ 10

E.   Farmers Pride Acted In Good Faith And Any Alleged Violation Of The FLSA Was Not Willful. .......................................................................................................................... 12

F.   Conclusion.................................................................................................................... 15

CERTIFICATE OF SERVICE .............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alvarez v. IBP, Inc.,
    339 F.3d 894 (9th Cir. 2003) ............................................................................4, 6, 14

Alvarez v. IBP, Inc.,
    No. CT-98-5005-RHW, 2001 WL 34897842 (E.D. Wash. Sept. 14, 2001) .................... 14

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ............................................................................................... 14

Anderson v. Mt. Clemens Pottery Co.,
    328 U.S. 680 (1946) ............................................................................................ 4, 5

Ballaris v. Wacker Siltronic Corp.,
    370 F.3d 901 (9th Cir. 2004) ............................................................................... 7, 8

Chao v. Tyson Foods,
    568 F. Supp. 2d 1300 (N.D. Ala. 2008) ...........................................................4, 6, 13, 15

De Asencio v. Tyson Foods, Inc.,
    500 F.3d 361 (3d Cir. 2007) ................................................................................ 7, 8

Garcia v. Tyson Foods, Inc.,
    No. 06-2198, 2011 WL 346078 (D. Kan. Jan. 31, 2011) .......................................... 10-11

General Motors, Inc. v. Nardone,
    207 F. Supp. 336 (D.N.J. 1962) ............................................................................... 4

Gorman v. The Consolidated Edison Corp.,
    488 F.3d 586 (2d Cir. 2007) ................................................................................ 8, 9

IBP, Inc. v. Alvarez,
    546 U.S. 21 (2005) ................................................................................................ 14

In re Cargill Meat Solutions Wage and Hour Litig.,
    632 F. Supp. 2d 368 (M.D. Pa. 2008) ......................................................................... 9

Israel v. Raeford Farms of Louisiana, LLC,
    5:06-cv-1999, slip op. (W.D. La. March 28, 2011) ...................................................... 11

Lindow v. United States,
    738 F.2d 1057 (9th Cir. 1984) ................................................................................... 4

Lopez v. Tyson Foods, Inc.,
    Civ. A. No. 8:06-cv-559, slip op. at 20-23 (D. Neb. April 6, 2011)............................. 11

Lugo v. Farmers Pride, Inc.,
    2008 WL 161184 (E.D. Pa. Jan. 15, 2008) ............................................................ 12-13

Perez v. Mountaire Farms, Inc.,
    610 F. Supp. 2d 499 (D. Md. 2009)........................................................................ 9, 10

Pressley v. Sanderson Farms, Inc.,
    No. Civ.A. H-00-420, 2001 WL 850017 (S.D. Tex. Apr. 23, 2001)............................... 6

Reich v. IBP,
    Civ. A. No. 88-2171, 1996 WL 137817 (D. Kan. Mar. 21, 1996) .................................. 3

Reich v. IBP, Inc.,
    38 F.3d 1123 (10th Cir. 1994) ............................................................................... 4, 6

Reich v. IBP, Inc.,
    820 F. Supp. 1315 (D. Kan. 1993)............................................................................. 8

Saunders v. John Morrell Co.,
    No. C88-4143, 1991 WL 529542 (N.D. Iowa Dec. 24, 1991) ..................................... 6-7

Scott v. Harris,
    550 U.S. 372 (2007)............................................................................................... 14

Sepulveda v. Allen Family Foods, Inc.,
    591 F.3d 209 (4th Cir. 2009)................................................................................... 10

Tum v. Barber Foods, Inc.,
    No. 00-371-P-C, 2002 WL 89399 (D. Me. Jan. 23, 2002)............................................ 13

Velez v. QVC, Inc.,
    227 F. Supp. 2d 384 (E.D. Pa. 2002) ........................................................................ 14

**Rules and Regulations**

29 C.F.R. § 790 ...................................................................................................... 8, 9

**Miscellaneous**

29 U.S.C. § 201 ..............................................................................................11, 12, 13

29 U.S.C. § 216(b)...................................................................................................... 2

**A.    Plaintiffs Cannot Dispute That Farmers Pride Implemented And Generally Followed Its Compensation Schedules Because They Stipulated To These Facts In Seeking Certification Of Their Revised Collective Action.**

To our surprise, Plaintiffs' opposition relies heavily on their alleged dispute that Farmers Pride did not implement and follow its compensation schedules.  However, Plaintiffs cannot dispute these facts because they have already stipulated to them in seeking and obtaining certification of their revised class.  Specifically, the Court's August 25, 2010 opinion granting decertification found that Farmers Pride "has offered credible testimony that compensation generally tracked the schedules, and workers were paid based upon the times listed when appropriate."  8/25/10 Mem. Op. at 25.[1]  In granting Plaintiffs the opportunity to seek a more precisely defined class, the Court required Plaintiffs to credit Farmers Pride's testimony and pay heed to the Court's view that Farmers Pride generally followed the compensation schedules.  In seeking certification of subclasses, Plaintiffs did just that and thus agreed not to proceed with their theory that "defendant's compensation system did not operate and was not implemented in the manner Defendant claims" (i.e., their "first theory of liability"):  "[F]or purposes of trying this case collectively, Plaintiffs agree to proceed at trial _only_ with respect to the second theory set forth above, namely, that Defendant's compensation system, even if implemented as Defendant claims, nonetheless undercompensated for donning, doffing and related activities."  Doc. 495 at 3 (emphasis added); see also id. at 4 ("[R]emoving the first theory of liability (i.e., the sham schedule theory) from a collective action trial eliminates any examination of the potential variations in how the schedule was applied.").  Plaintiffs' subsequent brief on the subclass issue reiterated their stipulation not to offer argument on their first theory of liability:

---

[1] We do not dispute that the factual statements in the August 25, 2010 decision are not controlling of our summary judgment motion.  The point is that, in response to the decertification decision, Plaintiffs stipulated away the very issue that they now "dispute."

> In granting this opportunity for Plaintiffs to move for more precisely defined and smaller classes, the Court requested that for purposes of collective action treatment under 29 U.S.C. § 216(b), Plaintiffs credit Defendant's testimony and pay heed to the Court's view that Defendant generally complied with its posted schedule.  Plaintiffs have listened, <u>and will not proceed at trial with respect to the first theory of liability above</u>.  Thus, the Court's concerns set forth in pages 23 to 37 of its August 25, 2010 Memorandum addressing the first theory are not implicated with respect to this request for revised collective action certification.

Doc. 499 at 7 (emphasis added).

Plaintiffs made a strategic decision to forego their claim that the compensation schedules were not implemented or followed in hopes of reviving their decertified collective action. Having stipulated to this issue for purposes of obtaining revised class certification and having agreed not to proceed to trial on this issue, they cannot now renege on their representations to the Court.  Accordingly, there is no genuine dispute of fact that Farmers Pride implemented and generally followed its compensation schedules.

**B**      **The Aggregate Amount Of Plaintiffs' Uncompensated Donning And Doffing Time Per Day Is _De Minimis._**

As discussed in our first brief, Plaintiffs' expert, Dr. Mericle, calculated that the donning and doffing activities take on average 27.32 minutes per day in Live Receiving, 15.76 minutes per day in Evisceration, 12.13 minutes per day in "Cut and Pack", and either 17.44 or 19.04 minutes per day in Deboning.  Once the additional paid minutes provided under Farmers Pride's compensation schedules are taken into account, which is mandated in evaluating the _de minimis_ defense,[2] there remains no more than 18 minutes in Live Receiving, 6 minutes in Evisceration, 2 minutes in Cut-Up and Packing, and 9 minutes in Deboning of uncompensated time for the pre-2007 time period.  And, in regards to the post-2007 time period, there remains no more than 5

---

[2] Plaintiffs agree that only the <u>uncompensated</u> time is pertinent for purposes of the _de minimis_ defense.  <u>See</u> Pls.' Opp. at 7 (focusing on "uncompensated work time").

minutes in Live Receiving, 1 minute in Evisceration, 1 minute in Cut-Up and Packing, and 4 minutes in Deboning of uncompensated time per day.  Id.

In response, Plaintiffs try to disavow their own expert's calculations, claiming that his calculations have not been established as fact and that they understate the amount of time Plaintiffs actually spent donning and doffing.  This is not the argument Plaintiffs advanced in seeking certification of their revised class action.  Instead, at that time, Plaintiffs claimed they were similarly situated because their "time study expert's conclusions (based on department) apply to each member of each proposed class."  Doc. 495 at 3.  Similarly, Plaintiffs' damages expert used Dr. Mericle's estimated times in calculating Plaintiffs' class-wide damages. Plaintiffs cannot rely on Dr. Mericle's calculations when it suits them to obtain the right to proceed, only to reject those calculations at summary judgment.   Regardless, Dr. Mericle's calculations represent the only class-wide evidence that Plaintiffs have offered.  The anecdotal testimony from specific Plaintiffs of their recollections of the time they actually donned and doffed is not representative evidence for the entire class and is not the relevant measure.  Though it may be that certain Plaintiffs claim they actually spent more time than Dr. Mericle calculated, the appropriate measure in this case is the minimum time necessarily spent (i.e., the reasonable time), not the actual time.  See Def.'s Opp. to Pls.' Daubert Mot. (Doc. 515) at 13-16.   The combination of these factors has led at least one court to reject employees' testimony regarding "aggregate time" in favor of an expert's estimates:  "[E]ven assuming the employee's estimates are accurate to a degree, they are still estimates of the actual time involved, rather than the reasonable time necessarily required."   Reich v. IBP, Inc., Civ. A. No. 88-2171, 1996 WL 137817, at *3 (D. Kan. Mar. 21, 1996).  In short, Plaintiffs cannot create a dispute of fact by

pitting their own testimony against the expert testimony that they have relied upon to reinstate their class case.

Plaintiffs also argue the *de minimis* defense is unavailable because their claims are too large in the aggregate, relying on their claim that they are seeking $280,000 in class-wide damages.  Though courts consider the aggregate claim in evaluating the *de minimis* issue, the more important focus is on the aggregate amount of uncompensated time per day per employee. Thus, <u>Lindow</u> noted that "[a]n important factor in determining whether a claim is *de minimis* is the amount of <u>daily</u> time spent on the additional work" and that "[m]ost courts have found <u>daily</u> periods of approximately 10 minutes *de minimis* even though otherwise compensable." <u>Lindow v. U.S.</u>, 738 F.2d 1057, 1062 (9th Cir. 1984) (emphasis added).  Moreover, numerous courts have found that donning and doffing claims are *de minimis*, even though such claims were substantial when combined across all class members.  <u>See</u> <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 904 (9th Cir. 2003); <u>Reich v. IBP, Inc.</u>, 38 F.3d 1123, 1126 & n.1 (10th Cir. 1994); <u>General Motors, Inc. v. Nardone</u>, 207 F. Supp. 336, 340 (D.N.J. 1962) (aggregating claims over the two-year limitations period "misconstrues the purport of the <u>Mt. Clemens</u> doctrine since the basic tasks still are in terms of minutes per day").  It makes no sense that a plaintiff can escape the *de minimis* defense in situations where it is administratively impractical to record the work at issue simply by bringing claims collectively or by pursuing claims that span a long period.  <u>Chao v. Tyson Foods, Inc.</u>, 568 F. Supp. 2d 1300, 1320 (N.D. Ala. 2008) ("To allow the size of the claim in the aggregate to be the <u>determining</u> factor would arguably render <u>any</u> claim for <u>any</u> amount of time, no matter how insubstantial as to any particular employee on a <u>daily</u> basis, compensable just because many employees are involved or their claims cover an extended length of time.  If the court were to apply Plaintiff's rule, even the trifles of a few seconds or minutes described by

the Supreme Court in <u>Anderson v. Mt. Clements Pottery Co.</u> could avoid the *de minimis* rule.")
(emphases in original). If it is impractical to record the time spent on one day, it does not
become practical over multiple days or by including other workers.[3]

In regards to the administrative feasibility prong, Plaintiffs note that Farmers Pride's time
clock system can record an employee's clock-in and clock-out times and then proclaim that it is
administratively feasible to record all of the time employees don and doff. This is a complete
logical fallacy. It does not follow that Farmers Pride can accurately record the time spent on
these activities simply because it can record the time between when an employee clocks in and
out. The donning and doffing activities took place throughout the Farmers Pride facility. Each
employee decided when to perform these activities, the order in which to perform them, and the
pace. Even for employees in the same department and shift, different employees wore different
combinations of clothing and equipment and performed these activities at different times of the
day. Individual activities, which took mere seconds, were often intermixed with non-
compensable activities such as socializing and eating. As a result of all these factors, virtually
every employee spent a different amount of time on donning and doffing, a fact confirmed by
Plaintiffs' expert. Because of these differences, the fact that Farmers Pride could have recorded
employees' punch-in and punch-out times does not mean that it could have effectively recorded
the specific amount of time each employee donned and doffed. Therefore, as a matter of law, it
is administratively impractical to record the time each employee spends on these activities.[4]

_____

[3] Plaintiffs cite a recent DOL opinion letter on the aggregation issue. <u>See</u> Pls.' Opp. at 6. Though the DOL
does not analyze the issue in any detail, the clear implication of the DOL's discussion is that the relevant
"aggregate time" is the time that each employee spends during a continuous workday.

[4] Plaintiffs note that "the expert report of Dr. Mericle evidences that the donning and doffing times are
calculable," Pls.' Opp. at 8 n.4, but they overlook that, in order to prepare his report, Dr. Mericle spent over
250 hours analyzing 24 videos. Even then, Dr. Mericle calculated average times for the class rather than the
specific amount of time that each employee donned and doffed throughout the day.

The fact that, in December 2007, Farmers Pride changed its compensation system to pay from punch-in to punch-out does not change the analysis.  As noted above, merely paying from punch-in to punch-out does not make it anymore administratively feasible to record the amount of time each employee donned and doffed.  This is true because, as Plaintiffs are forced to admit, there are still certain limited donning and doffing activities that occur before and after punch-in and punch-out respectively that Plaintiffs claim are compensable (though they are not asserting class claims in regards to those activities) and because not all time after an employee's punch-in time is necessarily donning and doffing time.  Moreover, Farmers Pride was only able to accomplish the change in compensation after approximately four years of renovations to the plant that involved, among other things, moving the locations of certain departments and installing new time clocks at the department entrances.  This belies any claim by Plaintiffs that Farmers Pride could have easily implemented the changes.

Nor does the "regularity" prong preclude a *de minimis* defense.  Though Plaintiffs claim that the *de minimis* defense is inapplicable because the "activities at issue in this litigation occurred each day," Pls.' Opp. at 9, courts routinely find that donning and doffing activities such as those here are *de minimis*, despite occurring on a daily basis.  Alvarez, 339 F.3d at 904; Reich, 38 F.3d at 1126 & n.1; Pressley v. Sanderson Farms, Inc., No. Civ.A. H-00-420, 2001 WL 850017, at *3 (S.D. Tex. Apr. 23, 2001) ("the aggregate claim and the regularity of [these daily] activities weigh in favor of finding these activities to be *de minimis*"), aff'd, 33 Fed. Appx. 75 (5th Cir. 2002); accord Chao v. Tyson, 568 F. Supp. 2d at 1328 ¶ 3 (denying DOL summary judgment on *de minimis* because of issue of fact as to "whether the activities are performed with the sufficient regularity"); Saunders v. John Morrell & Co., No. C88-4143, 1991 WL 529542, at *5 (N.D. Iowa Dec. 24, 1991) ("Many of the *de minimis* cases involve work performed every day

just as this case does.  The regularity of the work is a factor to be considered but just because the work in question is 'regularly recurring' does not mean that the *de minimis* defense is unavailable to Morrell.").  Though Plaintiffs don and doff daily, the activities are not performed at a fixed time and the amount of time varies by individual and can even vary for the same individual from day to day.  Thus, Plaintiffs' donning and doffing did not occur with "regularity."

**C.**    **Donning And Doffing Standard, Non-Unique Clothing And Equipment Is Not Integral And Indispensable As A Matter Of Law.**

The ten-plus pages of Plaintiffs' opposition devoted to the integral and indispensable issue are overly repetitive and are in large part based on an over-reading of DeAsencio v. Tyson Foods, Inc., 500 F.3d 361 (3d Cir. 2007).  Contrary to Plaintiffs' arguments, the Third Circuit did not hold that donning and doffing clothing worn by poultry workers is integral and indispensable under the Portal Act.  Instead, the employer had explicitly chosen not to raise this issue at trial. Id. at 365.  As a result, the Third Circuit's discussion of the Portal-to-Portal Act was dicta, and it specifically remanded the case to the district court to determine if that defense was procedurally viable on retrial.  Id. at 373.  Even if the dicta regarding the Portal Act were controlling here, it does not support the view advocated by Plaintiffs.  Specifically, the Third Circuit's Portal Act discussion relied on the Ninth Circuit's decision in Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004).  As the Third Circuit notes, Ballaris held that "where the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work, the activity may be considered integral and indispensable."  Id. at 370 (emphasis added). The Ninth Circuit went on to find that the donning and doffing activity at issue in that case "was performed at both broad and basic levels for the benefit of the company" and thus was integral and indispensable.  Id. at 910-11.  But the holding was due to the fact that the "bunny suits" worn

by the employees at a silicon-wafer fabrication facility were worn <u>solely</u> to avoid contaminating the wafers, which were fabricated in a "clean room."   The bunny suits did not help keep employees safe, clean, or warm, but were required <u>solely</u> to protect the fabricating process.   In contrast, the undisputed evidence here shows that Plaintiffs primarily benefit from wearing the standard clothing and equipment at issue.

Moreover, Plaintiffs' claim that there is no viable distinction between standard clothing and equipment and items unique to the meat-processing industry is plainly wrong.   That issue was not before the Third Circuit in <u>DeAsencio</u>, which means there is no controlling precedent on this issue.   Similarly, the Ninth Circuit's decision in <u>Ballaris</u>, on which <u>DeAsencio</u> relied for its discussion of the Portal Act issue, did <u>not</u> involve non-unique equipment, as the "bunny suits" worn by plaintiffs in that case were unique to the computer chip manufacturing industry.   On the other hand, the Second Circuit in <u>Gorman v. The Consolidated Edison Corp.</u>, 488 F.3d 586 (2d Cir. 2007), did address the issue of non-unique clothing and equipment and properly held such items were not integral and indispensable.   Plaintiffs' claim that <u>DeAsencio</u> rejected <u>Gorman</u> is a fabrication.   <u>See</u> Pls.' Opp. at 15 n.8.   The <u>Gorman</u> opinion, which was written by the Chief Judge of the Second Circuit only a few months before the Third Circuit issued its decision in <u>DeAsencio</u>, is not even mentioned in the Third Circuit's opinion and was not cited by either party in the appeal because, to state again, the integral and indispensable issue was not before the Third Circuit in that case and the briefing was completed before <u>Gorman</u> was decided.   Given the well-reasoned opinion in <u>Gorman</u>, and the fact that the Third Circuit has yet to address the issue,

it is very likely that the Third Circuit would adopt Chief Judge Jacobs' reasoning if it is ever presented with the issue of whether donning and doffing is excluded from the Portal Act.[5]

Gorman is not the only court to have drawn a distinction between standard and unique items. As cited in our opening brief, numerous courts have found that donning and doffing standard, non-unique items is not integral and indispensable. See Def.'s MSJ Mem. at 8-13.[6] Despite what Plaintiffs claim, the distinction drawn in these cases is not necessarily predicated on the ease of donning and doffing the items, but instead derives from the fact that the items are not unique to a particular industry and primarily benefit the employees, not the employer.[7]

Plaintiffs also take issue with Farmers Pride's motion as it relates to the items that employees are allowed to wear to and from home (i.e., hairnets, beardnets, safety glasses, earplugs, and footwear, including rubber boots). In our opening brief and opposition to Plaintiffs' motion, Farmers Pride cited to numerous decisions holding that an employee's ability to wear items to and from home renders the clothes-changing non-compensable. Def.'s MSJ Mem. at 13-14; Def.'s Opp. to Pls.' MSJ at 21-22. In response, Plaintiffs offer a single case, Perez v. Mountaire Farms, Inc., 610 F. Supp. 2d 499 (D. Md. 2009) ("Perez II"), and argue that their ability to take these items home is "illusory" because Farmers Pride provided them with lockers in which they can store their clothing and equipment if they chose to do so. Pls.' Opp. at 12-13. Perez II is against the overwhelming weight of the authority on this issue. More

---

[5] In re Cargill Meat Solutions Wage and Hour Litig., 632 F. Supp. 2d 368 (M.D. Pa. 2008), is similarly inapposite because it involved unique clothing and equipment, as the employees were required to wear a "mesh belly guard" and a "mesh sleeve."

[6] Contrary to Plaintiffs' claim, these cases are not limited to the Tenth Circuit and district courts within the Fifth Circuit, but instead include courts from a majority of the judicial circuits in the country.

[7] Plaintiffs attempt to rely on the continuous workday to argue that donning and doffing non-unique equipment is compensable as long it takes place during the continuous workday. Pls.' Opp. at 18. That argument is irrelevant for purpose of this Motion. The question here is whether donning and doffing non-unique gear starts the workday, not whether it is compensable if it occurs after the workday has already begun.

importantly, the court in <u>Perez II</u> found after a bench trial that the "employees are required by law, policy, and the nature of the work to don and doff their PPE <u>at work</u>" and that it would "be onerous and indeed impractical for employees to take home a host of PPE." <u>Id.</u> at 519 (emphasis added). Neither of these facts are present here. Farmers Pride employees are not required to don their hairnets, beardnets, earplugs, safety glasses, and footwear at work, and given that the hairnet, beardnet, safety glasses, and earplugs can easily be stowed in a pocket or handbag and the footwear can be worn into and out of the facility, it is not onerous for employees to take these items home, as is evidenced by the fact that many employees do so on a regular basis. Thus, these items are not compensable as a matter of law.

**D.      Any Donning And Doffing That Occurs At The Beginning Or End Of Plaintiffs' Meal Period Is Not Compensable Because The Meal Period Is "Bona Fide."**

Plaintiffs concede that the predominant benefit test is appropriate for evaluating whether the 30-minute meal period is "bona fide." Pls.' Opp. 22. Instead, in opposing Farmers Pride's motion on Plaintiffs' meal period claims, Plaintiffs improperly attempt to separate the "work" issue from the issue of whether the meal period is "bona fide." They argue that the clothes-changing at the beginning and end of their meal periods is compensable regardless of whether the balance of the time after and before those activities is sufficient for a "bona fide" meal period. Tellingly, they provide no support for their attempt to segregate out their meal period donning and doffing activities before applying the predominant benefit test to their meal periods.

The reality is that every court that has squarely considered this argument has flatly rejected it and held that the appropriate focus is on the entire meal period as defined by the employer. <u>See Sepulveda v. Allen Family Foods, Inc.</u>, 591 F.3d 209, 216 n.4 (4th Cir. 2009) ("the time [the plaintiffs] spend during their lunch breaks donning and doffing a few items" was not compensable "because it is part of a bona fide meal period"); <u>Garcia v. Tyson Foods, Inc.</u>,

No. 06-2198, 2011 WL 346078, at *11 (D. Kan. Jan. 31, 2011) ("[T]he court rejects plaintiffs' suggestion that any time spent during the meal period performing otherwise compensable work must be compensated even though the remainder of the meal period is unpaid. . . . [T]he <u>entire meal period may be noncompensable</u> even when an employee is required to do <u>some amount of work</u> during that meal period."); <u>Lopez v. Tyson Foods, Inc.</u>, Civ. A. No. 8:06-cv-559, slip op. at 20-23 (D. Neb. April 6, 2011) (analyzing entirety of 30-minute unpaid meal period, instead of parsing out donning and doffing activities); <u>Israel v. Raeford Farms of Louisiana, LLC</u>, 5:06-cv-1999, slip op. (W.D. La. March 28, 2011) (noting that the plaintiffs' "only complaint is that the brief times required at the beginning and end of their meal period to don, doff, or sanitize cut into the 30-minute period," finding that "the time was used predominantly for [plaintiffs'] benefit," and that "there was only minimal benefit to the employer by virtue of the employees donning their gear at the end of the [meal] period"). Plaintiffs offer no rebuttal to any of these cases.

As Plaintiffs are forced to admit, Farmers Pride provided a 30-minute, unpaid meal period. Farmers Pride also provided additional paid time before and after the 30-minute meal period to allow Plaintiffs a reasonable time to don and doff. To the extent Plaintiffs claim that the additional paid time was insufficient and that their donning activities intruded on the 30-minute meal period, such an intrusion must be analyzed under the predominant benefit test as applied to the entire 30-minute meal period. The fact that those intruding activities may constitute "work" under the FLSA does not render them compensable or part of the continuous workday so long as they occur during a "bona fide" meal period.

The undisputed facts show that Plaintiffs do not perform production work during the meal period, and according to Dr. Mericle, Plaintiffs spend an average of 4 to 8 minutes on clothes-changing at the beginning and end of the meal period. Pursuant to the compensation

schedules, Farmers Pride provides additional paid time before and after the 30-minute meal period for clothes changing, which means that, even under Plaintiffs' expert's expansive measurements, there are only approximately 1 to 5 minutes of allegedly uncompensated clothes changing during the meal period.  The rest of the meal period is used by Plaintiffs in whatever manner they choose.  Plaintiffs admit that they are free to engage in a wide variety of personal activities for their own benefit, such as eating, socializing, reading, smoking, talking on the telephone, and even traveling for food and other errands.  Moreover, several Plaintiffs concede that they spend only minimal time during the meal period on doffing and donning and agree that they need only remove some, but not all, of the items they wear.  And though Plaintiff Marco may have testified at the evidentiary hearing that she spent 10 minutes engaged in meal period donning and doffing, once the 4 additional minutes provided under the compensation schedules are considered, only 6 minutes of uncompensated donning and doffing remain, even if her exaggerated testimony is credited.  Clearly, Plaintiffs, including Ms. Marco, received the predominant benefit of their meal period.  Indeed, Plaintiffs offer no evidence that their meal period donning and doffing in any way benefits Farmers Pride.  For these reasons, Farmers Pride is entitled to summary judgment on Plaintiffs' meal period claims.

**E.** **Farmers Pride Acted In Good Faith And Any Alleged Violation Of The FLSA Was Not Willful.**

Plaintiffs' argument that Farmers Pride is not entitled to summary judgment on the issues of good faith and willfulness because the law "is well-settled and has been throughout the relevant time period" is laughable.  Pls.' Opp. at 28.  Contrary to Plaintiffs' argument, as this Court and others have recently recognized, the law with respect to the compensability of donning and doffing activities is unsettled at best.  Lugo v. Farmers Pride, Inc., 2008 WL 161184, at 3 (E.D. Pa. Jan. 15, 2008) ("There is minimal relevant case law in this jurisdiction and significant

disagreement among the jurisdictions that have considered [donning and doffing] issues.") (emphasis added) (Baylson, J.); Chao v. Tyson Foods, 568 F. Supp. 2d at 1322 ("[G]iven the vast amount of litigation similar to this action which has either recently been or is currently pending in district and circuit courts nationwide, and which offers varying conclusions under different legal theories, it is reasonable to conclude that the compensability of the [donning and doffing] activities presently at issue remains unsettled."); Tum v. Barber Foods, Inc., No. 00-371-P-C, 2002 WL 89399, at *6-7 (D. Me. Jan. 23, 2002) (noting that "it is far from clear that the conduct at issue violated the FLSA," and that "given the closeness of the substantive questions raised by the plaintiffs under the FLSA and the lack of dispositive authority," the employer did not act willfully). The point is not that Farmers Pride necessarily relied only on the cases decided in favor of employers to the exclusion of others, but instead that, in light of the mixed results in these cases (some of which resulted in a total defense judgment), it was reasonable for Farmers Pride to believe that its compensation schedules were more than adequate to compensate employees for any potentially compensable donning and doffing activities.

Equally wrong is Plaintiffs' unsupported assertion that Farmers Pride failed to obtain DOL approval of its compensation schedules. Instead, the undisputed evidence shows that the DOL representative with whom Farmers Pride had the most contact told Farmers Pride that the schedules were okay and encouraged Farmers Pride to implement them "asap." There could be no stronger evidence of the DOL's approval than its telling the Company to promptly implement the schedules. And contrary to Plaintiffs' argument, these conversations with the DOL are not hearsay; they are offered as evidence of Farmers Pride's state of mind – namely, Farmers Pride's belief that its compensation schedules brought it into compliance with the DOL's view of the FLSA. It is hornbook law that "[s]o long as a statement is being introduced to show the state of

13

mind of the recipient of the information, and not for the truth of its content, it does not fall within the definition of hearsay." Velez v. QVC, Inc., 227 F. Supp. 2d 384, 411 n. 23 (E.D. Pa. 2002).

Moreover, nothing in the DOL's subsequent industry-wide form letters were sufficient to undermine Farmers Pride's belief that it had received the DOL's approval.  Upon receipt of the first form letter, Farmers Pride met with the DOL, and after receipt of the second form letter four years later, Farmers Pride had telephone conversations with the DOL and responded in writing. At no point during these conversations did the DOL suggest that Farmers Pride's schedules were unlawful.  Had the DOL thought otherwise, surely it would have instituted legal action against Farmers Pride as it has done against other meat processors.  At best, Plaintiffs have raised "some metaphysical doubt" as to the DOL's approval, but they have not presented "significant probative evidence" to create a genuine dispute on this issue.  Scott v. Harris, 550 U.S 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Finally, Plaintiffs' argument that Farmers Pride's internal time studies were flawed is a non-sequitur as it relates to the good faith and willfulness issues.  They claim that "in conducting the time study, Defendant ignored the Supreme Court's ruling and failed to include all continuous time between the employees' first and last principal activities of the day."  Pls.' Opp. at 31.  However, as of the Spring of 2001, there was no Supreme Court decision requiring such a methodology.  Indeed, Farmers Pride's internal time study is very similar to the elemental time study performed in 2001 by Dr. Mericle in Alvarez, which as noted in prior briefing was approved by the district court and was subsequently affirmed by both the Ninth Circuit and U.S. Supreme Court.  See Alvarez v. IBP, Inc., No. CT-98-5005-RHW, 2001 WL 34897842, at *11-12 (E.D. Wash. Sept. 14, 2001); Alvarez v. IBP, Inc., 339 F.3d 894, 914 (9th Cir. 2003); IBP, Inc. v. Alvarez, 546 U.S. 21, 27 (2005).  If anything, the case law available at the time suggested

that Farmers Pride's methodology was the accepted methodology.  Moreover, as noted in prior

briefing, the proper measure of pre- and post-shift donning and doffing activities is the minimum

(i.e., the reasonable) time required for such activities.  See Def.'s Opp. to Pls.' Daubert Mot.

(Doc. 515) at 13-16.  Thus, the fact that the internal time studies may not have measured every

conceivable pre- and post-shift activity (many of which are not compensable as a matter of law)

does not mean that Farmers Pride could not reasonably rely on those studies.

In any event, the fact that Farmers Pride's internal time studies may not match Plaintiffs'

view of the law, or the law in general, does not mean that Farmers Pride was not entitled to rely

on its studies.  The good faith and willfulness tests do not require that the employer be correct.

To the contrary, the law is clear that an employer could be in violation of the law but still act in

good faith and not willfully.  Chao v. Tyson Foods, 568 F. Supp. 2d 1322-23 ("Defendant may

present a § 260 defense even if it based its pay practices on a mistaken interpretation of

Department of Labor regulations.").   At best, Plaintiffs' critiques of the time study show a

witness who cannot recall all of the details of a study performed ten years earlier, which is only

natural given that the DOL contemporaneously approved Farmers Pride's approach.  Plaintiffs

have offered no evidence suggesting that Farmers Pride knew or showed reckless disregard for

whether its time studies and the compensation schedules derived from those studies failed to

measure the reasonable time employees spent engaged in the potentially compensable activities.

Therefore, Farmers Pride is entitled to summary judgment on the issues of good faith and

willfulness.

## F.   <u>Conclusion.</u>

For the foregoing reasons, and for the reasons set forth in Farmers Pride's opening brief,

Farmers Pride respectfully requests that the Court grant its Motion for Summary Judgment.

Respectfully submitted this 5th day of May, 2011.

**FARMERS PRIDE, INC.**

*/s/ Ryan A. Glasgow*_____

George C. Werner (Pa. I.D. No. 28757)
Jill S. Welch (Pa. I.D. No 86232)
BARLEY  SNYDER LLC
126 East King Street
Lancaster, PA 17602-2893
Phone:  (717) 299-5201
Facsimile:  (717) 291-4660
*gwerner@barley.com*
*jwelch@barley.com*

Michael J. Mueller* (D.C. Bar # 412025)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
Phone: (202) 955-1500
Facsimile: (202) 778-2201
*mmueller@hunton.com*

Ryan A. Glasgow* (Va. Bar # 71023)
HUNTON & WILLIAMS LLP
951 East Byrd Street
Richmond, VA 23219
Phone:  (804) 788-8200
Facsimile:  (804) 788-8218
*rglasgow@hunton.com*

* *Admitted pro hac vice*

Attorneys for Defendant Farmers Pride, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 5th day of May, 2011, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send notification

of such filing (NEF) to the following:


BERGER & MONTAGUE, P.C.  
Shanon J. Carson, Esq.  
(scarson@bm.net)  
1622 Locust Street  
Philadelphia, PA 19103  

Philip A. Downey  
(downeyjustice@gmail.com)  
1555 Embreeville Road  
Unionville, PA 19375  


SCHNEIDER WALLACE COTRELL  
BRAYTON KONECKY LLP  
Clint J. Brayton, Esq.  
(cbrayton@schneiderwallace.com)  
Andrew P. Lee, Esq.  
(alee@schneiderwallace.com)  
180 Montgomery Street, Suite 2000  
San Francisco, CA 94104  


*/s/ Ryan A. Glasgow* _____  
**Attorney for Defendant**

17