**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LUZ LUGO, et al.                    :        CIVIL ACTION

                v.                    :

FARMER'S PRIDE INC.                    :        NO. 07-0749

<u>**MEMORANDUM RE: MOTIONS FOR SUMMARY JUDGMENT**</u>

**Baylson, J.**                                        **July 20, 2011**

**I.      Introduction**

      This case is about whether employees at a chicken processing plant are entitled to compensation for time spent putting on and taking off ("donning and doffing") items of personal protective equipment and clothing ("PPE"). Plaintiffs Luz Lugo and members of the certified subclass ("Plaintiffs") allege that Defendant Farmer's Pride, Inc. ("Defendant" or "Farmer's Pride") violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, <u>et seq.</u>, as amended by the Portal-to-Portal Act of 1947, 29 U.S.C. § 254(a), by not compensating them for donning and doffing PPE at the beginning and end of their shifts and during their meal periods. Currently before the Court are Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment.

      The motions raise five basic issues:

1.      What PPE do Plaintiffs use when they work at Farmer's Pride, and why?

2.      Should Farmer's Pride compensate Plaintiffs for time spent putting on PPE before their shifts and taking off PPE after their shifts?

3.      Should Farmer's Pride compensate Plaintiffs for time spent putting on and taking

1

off their PPE before and after their meal breaks?

4.      Are Plaintiffs entitled to liquidated damages?

5.      Is the statute of limitations two years or three years?

The Court has reviewed the parties' briefs and held oral argument on the motions.  As to the first three issues, the Court finds there are disputes of material fact that prevent a decision as a matter of law.  For the following reasons, Defendant's Motion for Summary Judgment will be granted in part and denied in part, and Plaintiffs' Motion for Summary Judgment will be denied.

## II.    Procedural History

Plaintiffs Luz Lugo and Yesenia Marco filed the initial Complaint on February 23, 2007 (ECF No. 1), claiming Defendant's compensation practices violated the FLSA and seeking to proceed as a collective action under 29 U.S.C. § 216(b).  The Court denied Defendant's Motion to Dismiss the Complaint.[1]  (ECF No. 54)  Plaintiffs filed an amended Complaint on January 24, 2008.  (ECF No. 55)  On March 7, 2008, the Court granted Plaintiffs' Motion for Conditional Certification.[2]  (ECF No. 62)  More than 300 Plaintiffs opted in to the suit.  (ECF Nos. 72–264; 271–397)  Following an evidentiary hearing on May 17-18, 2010, the Court granted Defendant's Motion to Decertify on August 25, 2010.[3]  (ECF No. 492)  The Court later certified for trial a revised and limited collective action consisting of the subclass of Plaintiffs who worked in the Deboning Department on the Third Shift from the period of February 23, 2004 to December 31,

---

[1] Lugo v. Farmer's Pride Inc., No. 07-749, 2008 WL 161184 (E.D. Pa. Jan. 15, 2008).

[2] Lugo v. Farmer's Pride Inc., No. 07-749, 2008 WL 638237 (E.D. Pa. Mar. 7, 2008).

[3] Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291 (E.D. Pa. 2010).

2007, and for Plaintiffs' claims for off-the-clock work during meal periods.[4] (ECF Nos. 504/505)

Extensive discovery took place and expert reports have been submitted with the motions for

summary judgment.

Defendant filed its Motion for Summary Judgment (ECF No. 510/511) on March 31,

2011.  Plaintiffs responded on April 25, 2011 (ECF No. 518), and Defendant replied on May 5,

2011 (ECF No. 519).  Plaintiffs also filed their Motion for Partial Summary Judgment (ECF No.

512) on March 31, 2011.  Defendant responded on April 25, 2011 (ECF No. 517), and Plaintiffs

replied on May 5, 2011 (ECF No. 520).  Plaintiffs filed a notice of supplemental authority on

June 9, 2011 (ECF No. 526), to which Defendant responded on June 10, 2011 (ECF No. 527).

The Court heard oral argument on the summary judgment motions on June 17, 2011.

## III.    Legal Standard

Summary judgment is appropriate if the movant can show "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).[5]  A dispute is "genuine" "if the evidence is such that a reasonable jury could return

---

[4] Lugo v. Farmer's Pride Inc., No. 07-749, 2010 WL 5060994 (E.D. Pa. Dec. 10, 2010).

[5] Amendments to the Federal Rules Of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in Rule 56(a), with one alteration: the substitution of the word "dispute" for "issue," which the Rules Advisory Committee explained better describes the summary judgment inquiry, but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 56 Advisory Committee's Note.

Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order, the amendment will govern all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable."  United States Courts, Rules and Procedures, Rules and Forms Amendments Effective 12/1/10 (Jan. 11, 2011, 1:36 PM), http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/Overview/RulesForms120110.aspx. Thus, when necessary, the Court quotes to the amended rule.

a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A factual dispute is "material" if it might affect the outcome of the case under governing law. <u>Id.</u>

Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving

party's initial burden can be met simply by showing the district court "that there is an absence of

evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325

(1986).  Summary judgment is appropriate if the nonmoving party fails to rebut by making a

factual showing "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322.  Under Rule 56, the

Court must view the evidence presented in the light most favorable to the nonmoving party.

<u>Anderson</u>, 477 U.S. at 255.

## IV.   Applicable FLSA Law

The Court begins its evaluation of the parties' cross motions for summary judgment by

reviewing several key cases applying the FLSA and the Portal-to-Portal Act.  The FLSA did not

define the term "work." <u>See</u> 29 U.S.C. § 203 ("Definitions").  The question of how to define

"work" arose in <u>Tennessee Coal, Iron & R. Co. v. Muscoda Local</u>, 321 U.S. 590 (1944),

<u>superseded by statute</u>, 29 U.S.C. § 251 <u>et seq.</u>, when iron ore miners sought overtime

compensation for time spent traveling underground from the entrance of the mine to workstations

in the mine. <u>Id.</u> at 592-93.  The Supreme Court defined "work" as "physical or mental exertion

(whether burdensome or not) controlled or required by the employer and pursued necessarily and

primarily for the benefit of the employer and his business." <u>Id.</u> at 598.  <u>Tennessee Coal</u> held that

traveling from the portal of the mine to the workstation was compensable "work" under the

FLSA. <u>Id.</u> at 603.  Although this holding was overruled by the Portal-to-Portal Act, the

<u>Tennessee Coal</u> definition of "work" remains operative.

### A.   <u>Anderson v. Mt. Clemens Pottery Co.</u>

In <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680 (1946), <u>superseded by statute</u>, 29 U.S.C. § 251 <u>et seq.</u>, employees sought to recover unpaid minimum wages and overtime compensation under the FLSA, for time spent walking to their workstations after punching their time cards in excess of time credited to the employees. <u>Id.</u> at 682-84. The district court entered a judgment against the employer, finding that walking was compensable. <u>Id.</u> at 686. The Sixth Circuit overturned the ruling and dismissed the case, holding that the district court erred in failing to accept a finding that the employees were not doing productive work until their scheduled shift time. <u>Id.</u> The Supreme Court later reversed and remanded for the district court to determine "the amount of walking time involved and the amount of preliminary activities performed, giving due consideration to the de minimis doctrine and calculating the resulting damages under the [FLSA]." <u>Id.</u> at 694. The Court affirmed the <u>Tennessee Coal</u> definition of work. <u>Id.</u> at 691-92.

<u>Anderson</u> is significant for the Supreme Court's introduction of the "de minimis" doctrine, that "insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek." <u>Id.</u> at 693. The "statutory workweek" included "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." <u>Id.</u> at 690-91. Under the de minimis doctrine, a "few seconds or minutes of work beyond the scheduled working hours" may be excluded from compensation. <u>Id.</u> at 692. The de minimis rule avoided "[s]plit-second absurdities," as the objective of the FLSA was to compensate employees when they are "required to give up a substantial measure of [their]

5

time and effort."  Id.

Shortly after the Anderson decision, Congress passed the Portal-to-Portal Act, which overruled Anderson to the extent the decision expanded employers' liability under the FLSA for time employees spent walking.  See Univs. Research Ass'n, Inc. v. Coutu, 450 U.S. 754 (1981) (The Portal-to-Portal Act "was intended to curtail the numerous suits for unpaid compensation and liquidated damages under the FLSA that were filed after this Court's decision in Anderson v. Mount Clemens Pottery Co. . . .").  The Portal-to-Portal Act amended the FLSA to exempt the following activities from being compensable work:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).  The Portal-to-Portal Act also imposed a two-year statute of limitations for nonwillful violations of the FLSA, and a three-year statute of limitations for willful violations. 29 U.S.C. § 255(a).

## B.     Steiner v. Mitchell

The Supreme Court restricted the application of the Portal-to-Portal Act in Steiner v. Mitchell, 350 U.S. 247 (1956).  In Steiner, battery plant employees who handled "dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide," sought compensation for donning and doffing protective gear and post-

6

shift showering.  Id. at 248.  The Court considered whether those activities were compensable

work or "preliminary" and "postliminary" activities under the Portal-to-Portal Act.  Id.  The

Court concluded "that activities performed either before or after the regular work shift, on or off

the production line, are compensable under the portal-to-portal provisions of the Fair Labor

Standards Act if those activities are an integral and indispensable part of the principal activities"

the employees performed.  Id. at 256.  The Court affirmed judgment for the battery plant

employees because "it would be difficult to conjure up an instance where changing clothes and

showering are more clearly an integral and indispensable part of the principal activity of the

employment than in the case of these employees."  Id.

Steiner has been narrowly construed as a limited exception to the Portal-to-Portal Act.

See, e.g., Gorman v. Consol. Edison Corp., 488 F.3d 586, 593 (2d Cir. 2007) (limiting

applicability of Steiner to employees performing work in lethal atmosphere); Ballou v. Gen. Elec.

Co., 393 F.2d 398, 400 (1st Cir. 1968) (explaining that although "shower and change time would

not ordinarily be indispensable to a principal activity, it was indispensable in the peculiar

circumstances of" Steiner).

Courts have applied Steiner to the poultry processing plant environment.  In In re Tyson

Foods, Inc., 694 F. Supp. 2d 1358 (M.D. Ga. 2010) (Land, J.), the district court rejected the

employer's narrow interpretation of Steiner, holding that "donning and doffing of sanitary gear

here is not 'changing clothes' 'under normal conditions'. . .[but rather] is required to enable the

employer to produce an uncontaminated product."  Id. at 1365.  In concluding that the donning

and doffing of sanitary gear was "markedly different from 'normal' clothes changing," Judge

Land considered that the employer required donning and doffing to occur "at the plant and only

7

at the plant," and that employees "are not permitted to wear the sanitary gear home or into the restroom or break room." Id. There was a genuine issue of material fact as to whether donning, doffing, and sanitizing activities at the poultry plant were "integral and indispensable," which prevented the district court from granting summary judgment to the employer based on the Portal-to-Portal Act. Id. at 1365-66 (citing Helmert v. Butterball, LLC, No. 4:08CV00342 JLH, 2009 WL 5066759, at *11-12 (E.D. Ark. Dec. 15, 2009) (Holmes, J.) (same); Gatewood v. Koch Foods of Miss., LLC, 569 F. Supp. 2d 687, 696-97 (S.D. Miss. 2008) (Starrett, J.) (same); Chao v. Tyson Foods, Inc., 568 F. Supp. 2d 1300, 1316-17 (N.D. Ala. 2008) (Hopkins, J.) (same); Jordan v. IBP, Inc., 542 F. Supp. 2d 790, 809 (M.D. Tenn. 2008) (Trauger, J.) (holding that donning and doffing frocks in beef and pork processing plants was "integral and indispensable" to employees' principal activities and marked the beginning and end of the continuous workday); Garcia v. Tyson Foods, Inc., 474 F. Supp. 2d 1240, 1245-47 (D. Kan. 2007) (Lungstrum, J.), mot. amend denied, No. 06-2198-JWL, 2007 WL 1299199 (D. Kan. May 2, 2007), appeal dismissed, 534 F.3d 1320 (10th Cir. 2008) (summary judgment for the employer was not appropriate on donning and doffing claims)).

Other courts have ruled to the contrary that poultry plant employees' donning and doffing of protective clothing and gear is not compensable. See, e.g., Anderson v. Cagle's, Inc., 488 F.3d 945, 958 (11th Cir. 2007) (affirming the district court's grant of summary judgment for employer that donning and doffing was not compensable work); Isreal v. Raeford Farms of Louisiana, LLC, --- F.Supp.2d ----, No. 06–cv–1999, 2011 WL 1188698, at *9, 11 (W.D. La. Mar. 28, 2011) (Hornsby, M.J.) (granting defendant's motion for partial summary judgment because donning and doffing was not a principal activity); Alford v. Perdue Farms, Inc., No. 5:07-cv-87 (CAR),

8

2008 WL 879413, at *6 (M.D. Ga. Mar. 28, 2008) (Royal, J.) (finding no dispute of fact and

holding as a matter of law that donning and doffing were non-compensable preliminary and

postliminary activities, and alternatively were de minimis).

### C.     IBP, Inc. v. Alvarez

In IBP, Inc. v. Alvarez, 546 U.S. 21 (2005), employees at a meat processing plant filed a

class action "to recover compensation for preproduction and postproduction work, including the

time spent donning and doffing protective gear and walking between the locker rooms and the

production floor before and after their assigned shifts."  Id. at 31.  Following a bench trial, the

district court "held that donning and doffing of protective gear that was unique to the jobs at

issue were compensable under the FLSA because they were integral and indispensable to the

work of the employees who wore such equipment."  Id. (emphasis added).  Additionally, the

district court found that "for those employees required to don and doff unique protective gear, the

walking time between the locker room and the production floor was also compensable because it

occurs during the [continuous] workday."  Id.  The court denied employees' claims for

compensation for "ordinary clothes changing and washing, or for the 'donning and doffing of

hard hat[s], ear plugs, safety glasses, boots [or] hairnet[s],'" which were standard, non-unique

items.  Id.  The Ninth Circuit affirmed the distinction between unique and non-unique gear on the

alternative ground that donning and doffing non-unique items was de minimis as a matter of law.

Id. at 32.  The employer did not challenge the holding that, "in light of Steiner, the donning and

doffing of unique protective gear are 'principal activities'" and thus compensable.  Id. [6]

-------------------------

[6] As Plaintiffs note in their brief, the Department of Labor ("DOL") Wage and Hour
Division issued an Advisory Memorandum on May 31, 2006 rejecting the Ninth Circuit's
distinction between donning and doffing unique versus non-unique protective gear, stating that

At the Supreme Court, the only question for review in <u>Alvarez</u> was "whether the time employees spend walking between the changing area and the production area is compensable under the FLSA." <u>Id.</u> at 24. The Supreme Court reversed the Ninth Circuit's decision with regard to waiting time, explaining: "Because doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff is not affected by the Portal-to-Portal Act and is instead covered by the FLSA."[7] <u>Id.</u> at 40. Analyzing the claim under the FLSA, the Court held that waiting to don was a preliminary activity that was not "integral and indispensable" and thus not part of the "continuous workday." <u>Id.</u> at 40-41.

### D.    <u>De Asencio v. Tyson Foods, Inc.</u>

The leading Third Circuit case addressing the FLSA is <u>De Asencio v. Tyson Foods, Inc.</u>, 500 F.3d 361 (3d Cir. 2007). The plaintiffs, employees at a chicken-processing plant, sued their employer for compensation for time spent donning, doffing, and washing their PPE. <u>Id.</u> at 363.

---

all donning and doffing of safety equipment was compensable unless it was de minimis. Pls.' Mem. Law Opp'n 6. However, that portion of the Ninth Circuit's holding in <u>Alvarez</u> is still good law. Other cases have similarly distinguished between standard and specialized PPE. <u>See, e.g.</u>, <u>Reich v. IBP, Inc.</u>, 38 F.3d 1123, 1126 (10th Cir. 1994) (holding that "placement of a pair of safety glasses, a pair of earplugs and a hard hat into or onto the appropriate location on the head," and wearing of "safety shoes" that "require little or no additional effort to put on as compared to most other shoes" were not compensable work, whereas "donning, doffing, and cleaning of the special protective gear used by the knife-workers at the IBP plants was properly found to be compensable.").

[7] Under the "continuous workday" rule, the Portal-to-Portal Act does not apply to activities that "occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday"; the FLSA governs these activities. 29 C.F.R. § 790.6(a). "Workday" means "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b).

The employer moved for summary judgment because donning and doffing was not "work" as a matter of law, was not compensable under the Portal-to-Portal Act, and alternatively, was not compensable under the de minimis doctrine.  Id. at 364.  A jury found in favor of the employer on the issues of whether donning and doffing activities constituted "work" and whether time spent on those activities was de minimis.  Id. at 373.  The Third Circuit reversed and remanded because the jury was erroneously instructed on the definition of "work."  Id. at 373 (following the Supreme Court's definition of "work" in Tennessee Coal and Alvarez).

The Third Circuit also adopted the Ninth Circuit's holding in Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004), that when an "employer required, and strictly enforced, its policy that employees don the [PPE]," and did so "'for the benefit of the company,'" "the activity was not precluded by the Portal-to-Portal Act as merely preliminary."  De Asencio, 500 F.3d at 372 (quoting Ballaris, 370 F.3d at 910-11).   In Ballaris, silicon wafer manufacturing workers who were "required" to wear protective suits and "to change into and out of their uniforms at the plant, and only at the plant," sought compensation for donning and doffing.  Ballaris, 370 F.3d at 910.  The court found that waiting to retrieve, obtaining, and donning and doffing safety gear benefited the employer, because the gear "limit[ed] potential cleanroom contamination," "assist[ed] the employer in ensuring the quality of the silicon chips manufactured at the plant," "ke[pt] the company competitive," "promote[d] a clean internal philosophy," and "attract[ed] favorable industry attention."  Id. at 911.

The Third Circuit held in De Asencio that "the undisputed facts established that the donning and doffing activity in this case constitutes 'work' as a matter of law."  De Asencio, 500 F.3d at 373.  Because the facts were undisputed, De Asencio did not address the distinction,

11

discussed by the Ninth Circuit in <u>Alvarez</u>, between non-unique and unique protective gear.  The Third Circuit also did not assess whether the activities were "integral and indispensable" to a principal activity under <u>Steiner</u>.  The Third Circuit adopted the Ninth Circuit's test to determine whether otherwise compensable time is "de minimis," which requires considering: "'(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.'"  <u>De Asencio v. Tyson Foods, Inc.</u>, 500 F.3d 361, 374 (3d Cir. 2007)) (quoting <u>Lindow v. United States</u>, 738 F.2d 1057, 1063 (9th Cir. 1984)).  The Third Circuit directed the district court on remand to consider the applicability of the de minimis doctrine and the Portal-to-Portal Act.  <u>Id.</u> at 373-74.

### E.      Perez v. Mountaire Farms, Inc.

In the recently decided FLSA case, <u>Perez v. Mountaire Farms, Inc.</u>,  --- F.3d --- , Nos. 09-1917, 09-1966, 2011 WL 2207110 (4th Cir. June 7, 2011), poultry processing plant employees brought claims against their employer for compensation for donning and doffing protective gear during the workday.  <u>Id.</u> at *1.  The employees were required to wear ear plugs, bump caps, smocks/lab coats, hair and beard nets, steel toed rubber boots, and a combination of other items such as rubber gloves, aprons, safety glasses, mesh gloves, and sleeves.  <u>Id.</u>  The district court refused to decide on summary judgment whether donning and doffing PPE was integral and indispensable to the principal activity of poultry processing.  <u>Perez v. Mountaire Farms, Inc</u>, 601 F. Supp. 2d 670, 679 (D. Md. 2009) (Davis, J.).  At a bench trial, Judge Davis made factual findings that "almost all employees sanitize their aprons, boots, and gloves before leaving the production area for their lunch break so that they may eat without blood and other chicken products on their persons."  <u>Perez v. Mountaire Farms, Inc.</u>, 610 F. Supp. 2d 499, 521

12

(D. Md. 2009) (Davis, J.), aff'd in part, vacated in part, 2011 WL 2207110 (4th Cir. June 7,

2011).  Judge Davis further found that "Mountaire is the primary beneficiary of the donning and

doffing," because the activities promoted cleanliness of the poultry products.  Id. at 518.  The

court held that donning and doffing PPE was integral and indispensable to chicken processing

and started the continuous workday.  Id. at 522.  Moreover, the time spent on these activities was

not de minimis.  Id. at 525.

The Fourth Circuit affirmed the district court's decision as to the pre-shift and post-shift

donning and doffing, holding the time spent was both calculable and in the aggregate too large to

be de minimis.  Perez, 2011 WL 2207110 at *14-15 (explaining that the de minimis analysis

"necessarily requires a factual inquiry that will change on a case-by-case basis").  The Fourth

Circuit did not distinguish unique, specialized PPE from non-unique or standard PPE because the

Supreme Court in Steiner did not draw this distinction.  Id. at *7.

However, the Fourth Circuit reversed the district court's decision as to the employees'

claims for meal period donning and doffing, holding that "the mid-shift donning and doffing of

protective gear at the employees' meal break is not compensable" because it occurred during the

"bona fide" meal period.  Id. at *1.  The "bona fide" meal time was a break excluded from the

compensable continuous workday.  Id. at *4 (citing Sepulveda v. Allen Family Foods, Inc., 591

F.3d 209, 216 (4th Cir. 2009), cert. denied, 131 S. Ct. 187 (2010)).  The Court explained: "If we

were writing on a clean slate, we would hold that based on the district court's factual findings,

these activities are not part of the 'bona fide meal period' but are compensable as 'work' under

the continuous workday rule."  Id. at *10 (citations omitted).  However, a Fourth Circuit

precedent, Sepulveda v. Allen Family Foods, Inc., held that donning and doffing during a "bona

fide" meal time at a poultry processing plant was non-compensable as a matter of law, and alternatively was de minimis. Sepulveda, 591 F.3d at 216. Because the Perez court could not distinguish the donning and doffing activities in the case before it from the activities that Sepulveda found non-compensable, it "conclude[d] that the employees are not entitled to compensation for the time spent donning and doffing protective gear incident to the meal period." Perez, 2011 WL 2207110 at *11 (citing Sepulveda, 591 F.3d at 216).

The Fourth Circuit affirmed the district court's finding that the poultry processor acted in good faith and had reasonable grounds to believe it was not violating the FLSA. Perez, 2011 WL 2207110 at *16-17. The plant produced evidence that it relied on the advice of an attorney retained by the National Chicken Council, including fourteen letters and memoranda interpreting donning and doffing cases around the country, providing information about DOL surveys, and advising on how to comply with the FLSA. Id. at *16. The court also considered evidence that the plant changed its policies based on this information and advice, in affirming the denial of the employees' claim for liquidated damages. Id.

Finally, the Fourth Circuit affirmed the district court's conclusion that the poultry processor "did not willfully violate the FLSA by failing to compensate its employees for these activities." Id. The Court considered the absence of binding precedent on the issues of whether pre- and post-shift donning and doffing was "integral and indispensable" to poultry processing, and the inconsistent approaches of other circuit courts. Id. (citations omitted). Cf. Alvarez v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 546 U.S. 21 (2005) (affirming district court's application of the three-year statute of limitations where the record showed the employer "was on notice of its FLSA requirements," the employer's conduct consisted of "attempts to evade

compliance, or to minimize the actions necessary to achieve compliance," and the employer failed to investigate "the meaning of the relevant FLSA terms and the type of steps necessary to comply therewith"). In the absence of willful violation, pursuant to 29 U.S.C. § 255(a), a two-year statute of limitations applied. Perez, 2011 WL 2207110 at *16.

### F.     Tyson Foods Cases

Several district courts have addressed the applicability of the FLSA to donning and doffing in a poultry or meat processing plant. For example, in Chao v. Tyson Foods, Inc., 568 F. Supp. 2d 1300 (N.D. Ala. 2008) (Hopkins, J.), the employees sought summary judgment on their claims that the donning, doffing, and washing activities were "work" under the FLSA because they primarily benefited their employer. Id. at 1315-17. The court disagreed, finding that "[a]ny benefit that [the employer] derived from the cleanliness of its plant—including its employees' protective outer gear—is counterbalanced by the benefit to its employees by ensuring their outerwear is cleansed of raw chicken product, thus reducing the risk of illness to employees and cross-contamination. . ." Id. at 1315. The court distinguished De Asencio, in which "there seemed to be no dispute that Tyson required its employees to perform the activities" held to constitute "work." Id. at 1316 n.16 (citing De Asencio, 500 F.3d at 363). By contrast, "a material factual dispute remain[ed] as to whether Defendant primarily benefits from these activities" in Chao. Id. at 1317 (denying summary judgment on the plaintiffs' claim that donning, doffing, and washing PPE was compensable "work" under the FLSA).

Judge Hopkins also denied the plaintiffs' motion for partial summary judgment on liquidated damages. Id. at 1323. The court considered "the vast amount of litigation similar to this action which has either recently been or is currently pending in district and circuit courts

nationwide, and which offers varying conclusions under different legal theories." Id. at 1322.

The court concluded that summary judgment was inappropriate because "the compensability of

the activities presently at issue remains unsettled." Id.

      In Garcia v. Tyson Foods, Inc., 766 F. Supp. 2d 1167 (D. Kan. 2011) (Lungstrum, J.),

employees brought claims for uncompensated donning and doffing at a beef processing plant. Id.

at 1170. There were no factual disputes as to what clothing and equipment the employer required

its hourly production employees to wear, but the parties disputed who was the primary

beneficiary of the donning and doffing. Id. at 1177-78. Although the required PPE "benefit[ed]

Tyson in significant ways—including enabling Tyson to comply with government regulations

and permitting Tyson to sell uncontaminated product," this "does not necessarily mean that

Tyson is the primary beneficiary of those activities." Id. at 1178. Therefore, the district court

could not conclude that donning and doffing was integral and indispensable as a matter of law,

and denied plaintiffs' motion for summary judgment on this issue. Id.

      With respect to liquidated damages, Judge Lungstrum considered the poultry processor's

reliance on existing case law in determining whether its compensation practices were in good

faith and reasonable. Id. at 1185. The record showed that Tyson relied on Reich v. IBP, Inc., 38

F.3d 1123 (10th Cir. 1994), which affirmed a decision that donning and doffing standard PPE

was not compensable, and that there were "widely divergent results from numerous courts"

across the country. Id. The district court concluded that "there is nothing in the record that

suggests that Tyson—short of throwing in the towel and simply paying employees for donning

and doffing standard protective clothing and gear upon the filing of plaintiffs' lawsuit—should

have handled its pay practices differently with respect to time spent donning and doffing standard

protective clothing and gear." Id. at 1185-86.  However, as to the plaintiffs' claims "for all time spent during the continuous workday for which Tyson does not already compensate its employees," the court found that "material factual issues exist with respect to whether Tyson acted in good faith and without willfulness in implementing its pay practices." Id. at 1186.  The court concluded that a jury should resolve the questions of good faith and willfulness, along with the other claims and defenses, at trial.  Id.

### G.    Guiding Legal Principles

This Court is bound by the Supreme Court and Third Circuit holdings discussed above, and finds persuasive the Fourth Circuit's opinion in Perez.  The Court will apply the following legal principles in the context of donning and doffing in a chicken processing plant:

1.    PPE consists of clothing and personal equipment that the plant requires its employees to wear.  The Court does not distinguish "unique" and "non-unique" PPE.

2.    Donning, doffing, retrieving, and washing PPE are compensable if the activity is required or controlled by the plant, primarily benefits the plant rather than the employees' comfort and convenience, is integral and indispensable to the principal activity of chicken processing, occurs during the continuous workday, and requires more than a de minimis amount of time.

3.    Donning, doffing, hanging, washing, and retrieving PPE before and after meals is not compensable if the activity occurs during a bona fide meal period.

4.    Whether employees are entitled to liquidated damages depends on whether the plant acted reasonably and in good faith.

5.    Whether the statute of limitations is three years instead of two years depends on

whether the employer acted in willful violation of the FLSA.

## V.   Analysis of Defendant's Motion for Summary Judgment

Defendant requests that the Court enter judgment in its favor on all of Plaintiffs' claims for uncompensated donning and doffing.  In the alternative, Defendant requests partial summary judgment on the following: 1) Plaintiffs' claims for pre-shift and post-shift donning and doffing of standard, non-unique clothing and equipment; 2) Plaintiffs' claims for compensation for unpaid portions of meal periods; 3) Plaintiffs' claims for liquidated damages; and 4) the applicable limitations period for Plaintiffs' claims, which Defendant contends is two years.

### A.   Factual Background on Required PPE

Defendant operates a chicken-processing plant in Fredericksburg, Pennsylvania.  Def.'s St. Undisp. Facts ¶ 1.  The production operations occur in two shifts, called First Shift and Third Shift.  Id. at ¶ 2.  The Deboning Department is one of several departments at the facility.  Id. Defendant assigns employees a locker for their voluntary use.  Pls.' St. Undisp. Facts ¶ 5.

Plaintiffs are required to wear a smock, hairnet, and beard net (if applicable) on the production floor.  Def.'s St. Undisp. Facts ¶ 4.[8]  The smock benefits Plaintiffs by keeping their street clothes clean and dry, id. at ¶ 5, and/or benefits Defendant by maintaining a sanitary

---

[8] The Court derives these facts from the following statements of fact and responses thereto: Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Def.'s St. Undisp. Facts") (ECF No. 511-1); Plaintiffs' Statement of Disputed and Undisputed Facts in Opposition to Defendant's Motion for Summary Judgment ("Pls.' St. Facts in Opp'n") (ECF No. 518-1); Plaintiffs' Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment ("Pls.' St. Undisp. Facts") (ECF No. 512-2); and Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts and Defendant's Statement of Additional Material Facts ("Def.'s Resp. Pls.' St. Facts") (ECF No. 517-1).  Each statement provides citations to the record in accordance with Fed. R. Civ. P. 56(c).

environment, avoiding contamination in areas of the plant where meat is exposed, and complying with federal regulations.  Pls.' St. Facts in Opp'n ¶ 5.  The hair net and beard net benefit Plaintiffs by keeping meat out of their hair, Def.'s St. Undisp. Facts ¶ 6, and/or benefits Defendant by maintaining a sanitary environment.  Pls.' St. Facts in Opp'n ¶ 6.  Employees in the Deboning Department are not required to wear earplugs since approximately 2007, although they may do so to protect their hearing. Def.'s St. Undisp. Facts ¶ 7.  Employees are required to wear closed-toe shoes, such as tennis shoes or boots.  Def.'s St. Undisp. Facts ¶ 8.  Plaintiffs can wear their hair nets, beard nets, earplugs, and boots to and from home, Def.'s St. Undisp. Facts ¶¶ 6, 7, 9, though the majority of employees kept these items in their lockers at the plant.  Pls.' St. Facts in Opp'n ¶¶ 6, 7, 9.  Some Plaintiffs wear a plastic or vinyl apron, plastic sleeves, rubber gloves, and/or cotton gloves, although the parties disagree whether this PPE is required.  Def.'s St. Undisp. Facts ¶¶ 10-11; Pls.' St. Facts in Opp'n ¶¶ 10-11. Plaintiffs who use knives or scissors wear additional clothing and equipment such as a mesh cut-resistant glove, whizzard cut-resistant glove, and/or plastic arm guard.  Def.'s St. Undisp. Facts ¶ 12.  Plaintiffs may choose to don certain items of PPE at home or store items in their lockers.  Def.'s St. Undisp. Facts ¶¶ 6, 7, 9; Pls.' St. Facts in Opp'n ¶¶ 6, 7, 9.

Plaintiffs spend time walking to the lockers to retrieve and stow items.  Pls.' St. Undisp. Facts ¶ 24.  Prior to December 2007, Plaintiffs had to walk to a supply room to obtain a clean smock on a daily basis and often had to wait in line.  Pls.' St. Undisp. Facts ¶¶ 25-26.  The parties dispute whether Defendant required Plaintiffs to wait in line to clean themselves and PPE such as arm guards, cut-resistant gloves, and earplugs, and where Plaintiffs stored the PPE.  Pls.' St. Undisp. Facts ¶ 48; Def.'s Resp. Pls.' St. Facts ¶ 48.

19

Plaintiffs' time study expert, Dr. Ken Mericle, concluded that all Deboning Department Plaintiffs engage in pre- and post-shift and pre- and post-meal period donning, doffing, walking, and washing activities, for an average of 17.44 minutes per day.  Def.'s St. Undisp. Facts ¶ 17. Dr. Mericle concluded that Third Shift Deboning Department Plaintiffs engage in these activities for an average of 19.04 minutes per day.  Id.

Defendant implemented a compensation schedule on May 13, 2001 that listed for each production department and each shift eight specific times: "Shift Punch In Time"; "Line Start"; "Line Stop For Lunch"; "Lunch Start"; "Lunch Stop"; "Line Start After Lunch"; "Line Stops End of Shift"; "Shift End Punch Out Time." Def.'s St. Undisp. Facts ¶¶ 34-42.  The schedule provides for compensation of donning and doffing between punching in and entering the production departments; between stopping work for lunch and beginning the 30-minute meal period; between ending the 30-minute meal period and re-entering the production department; and between the end of the shift and punching out.  Id.

### 1.    *Plaintiffs' claims for uncompensated donning and doffing*

Defendant seeks summary judgment on Plaintiffs' claims for uncompensated donning and doffing and related activities because the claims are "de minimis" as a matter of law and Defendant already compensates Plaintiffs for donning and doffing in accordance with its compensation schedules.  However, the Court cannot rule as a matter of law on Plaintiffs' donning and doffing claims, because there are genuine disputes of fact as to what items Defendant requires its employees to use, and whether the required PPE primarily benefits Defendant.  As the above facts illustrate, the parties do not agree whether Defendant required Plaintiffs to wear items such as mesh gloves, plastic gloves, cotton gloves, hair nets, arm guards,

20

plastic sleeves, safety glasses, plastic aprons, and smocks to promote sanitation and safety, or whether Plaintiffs wore some of these items merely for their personal comfort and convenience. Pls.' St. Undisp. Facts ¶ 11; Def.'s Resp. Pls.' St. Facts ¶ 11.  The parties also dispute whether federal regulations require Plaintiffs to use certain PPE, such as ear plugs, arm guards, and mesh gloves.  Pls.' St. Undisp. Facts ¶ 17; Def.'s Resp. Pls.' St. Facts ¶ 17.   Plaintiffs claim that Defendant's changes to its PPE policies and procedures illustrates Defendant's exercise of control over donning and doffing, Pls.' St. Undisp. Facts ¶ 30, whereas Defendant asserts that Plaintiffs had "nearly unlimited flexibility" as to their donning and doffing routines.  Def.'s Resp. Pls.' St. Facts ¶ 30.

In light of the many disputed facts, this Court cannot determine as a matter of law whether the activities at issue constitute compensable work under the FLSA.  See, e.g., In re Tyson Foods, Inc., 694 F. Supp. 2d 1372 (M.D. Ga. 2010) (collecting cases) (holding that the court cannot grant summary judgment to the employer where there is a genuine issue of material fact as to whether donning, doffing, and sanitizing activities at the poultry plant were "integral and indispensable").  This case is distinguishable from De Asencio, in which there were no disputed material facts as to whether the donning and doffing activities constituted work.  De Asencio, 500 F.3d at 373.  Indeed, in De Asencio, "Tyson explicitly withdrew any defense that, if work, donning or doffing was not integral or indispensable."  Id.  Here, Defendant has not withdrawn this argument.  Therefore, the Court does not reach the question whether the activities are "de minimis."  See De Asencio, 500 F.3d at 374-75 (citing Lindow, 738 F.2d at 1063) (remanding for consideration of whether the donning and doffing activities at issue were de minimis, after holding the activities constituted work as a matter of law).

Moreover, the Court notes that there is an additional dispute of fact as to one of the Lindow factors, i.e., the aggregate amount of compensable time that Plaintiffs spend on the donning and doffing activities.  Whereas Defendant contends that Plaintiffs' expert measured the total time spent on these activities for members of the subclass, and the measured time in excess of the allotments in the compensation schedule was "de minimis," Plaintiffs contend that their expert's calculations substantially underestimate the actual time spent donning and doffing because of changes in Defendant's policies and procedures.  Def.'s St. Undisp. Facts ¶ 17; Pls.' St. Facts in Opp'n ¶ 17.  It is a question of fact for the jury to determine the total amount of time spent on the donning and doffing activities.

2.   ***Plaintiffs' claims for pre-shift and post-shift donning and doffing of standard PPE***

Nor can the Court grant summary judgment for Defendant as to the claims for pre-shift and post-shift donning and doffing of non-unique clothing and equipment.  The Supreme Court and the Third Circuit in De Asencio did not distinguish unique PPE from non-unique PPE.  The Fourth Circuit's recent decision also did not distinguish unique and standard categories of PPE. Perez, 2011 WL 2207110 at *7.  Cf. Alvarez, 339 F.3d at 904.  Therefore, there is no governing precedent as to whether this Court should distinguish as a matter of law claims for donning and doffing unique PPE versus standard PPE.  Additionally, there are disputes of fact, discussed above, regarding what PPE Defendant required employees to use.  Summary judgment cannot be granted on these claims.

B.   **Factual Background on Meal Periods**

Plaintiffs receive a 30-minute unpaid meal period every day.  Def.'s St. Undisp. Facts ¶

22

20.  Plaintiffs don and doff some PPE before and after the meal period.  Def.'s St. Undisp. Facts ¶ 22.  Defendant did not permit Plaintiffs to wear mesh or protective gloves, arm guards, plastic aprons, plastic gloves, or plastic sleeves in the restroom or cafeteria.  Pls.' St. Undisp. Facts ¶ 40.  Plaintiffs could walk to the supply room during lunch if they needed new PPE.  Id. ¶ 41.  During the meal period, employees eat, socialize, make phone calls, read, smoke, play games, go to their cars, and may leave the facility.  Def.'s St. Undisp. Facts ¶ 23.  The parties dispute whether Defendant required Plaintiffs to doff during the meal period, to wash PPE during the meal period, and to hang up certain items of PPE during the meal period, or whether Plaintiffs chose to do so.  Pls.' St. Undisp. Facts ¶¶ 36-38; Def.'s Resp. Pls.' St. Facts ¶¶ 36-38.  Dr. Mericle estimated that these pre- and post-meal period activities take an average of 7.47 minutes for the Deboning Department, Def.'s St. Undisp. Facts ¶ 26.

### 1.   *Plaintiffs' claims for compensation for unpaid portions of meal periods*

Defendant seeks summary judgment on Plaintiffs' claims for donning and doffing during meal periods because Plaintiffs receive a 30-minute "bona fide" meal period, which is non-compensable.  Plaintiffs assert that whether the meal periods were "bona fide" is a disputed issue of fact, based on the evidence that Plaintiffs performed work during the meal period.

The DOL regulation with regard to "bona fide meal periods" provides, in relevant part:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

23

29 C.F.R. § 785.19(a).  The Third Circuit has not ruled on the question of what standard to apply

when determining whether a meal period is "bona fide."  Despite the plain language of 29 C.F.R.

§ 785.19(a) that an employee must be "completely relieved from duty" for a meal period to be

"bona fide," the Courts of Appeals that have interpreted this provision held that a meal period or

portion of a meal period is compensable if an employee is "perform[ing] activities predominantly

for the benefit of the employer."  Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 64 (2d

Cir. 1997); see also Roy v. Cnty. of Lexington, S.C., 141 F.3d 533 (4th Cir. 1998) ("we

determine whether, on balance, employees use mealtime for their own, or for their employer's

benefit"); Bernard v. IBP, Inc. of Neb., 154 F.3d 259, 264-65 (5th Cir. 1998) ("The critical

question is whether the meal period is used predominantly or primarily for the benefit of the

employer or for the benefit of the employee."); Hill v. United States, 751 F.2d 810, 814 (6th Cir.

1984) ("As long as the employee can pursue his or her mealtime adequately and comfortably, is

not engaged in the performance of any substantial duties, and does not spend time predominantly

for the employer's benefit, the employee is relieved of duty and is not entitled to compensation

under the FLSA."); Alexander v. City of Chicago, 994 F.2d 333, 337 (7th Cir. 1993) (adopting

Lamon v. City of Shawnee, Kan., 972 F.2d 1145 (10th Cir. 1992)); Henson v. Pulaski Cnty.

Sheriff Dep't, 6 F.3d 531, 534 (8th Cir. 1993) ("We conclude that the

predominantly-for-the-benefit-of-the-employer standard provides the appropriate test for

determining the compensability of meal periods under the FLSA."); Lamon v. City of Shawnee,

Kansas, 972 F.2d 1145, 1155 (10th Cir. 1992) (an "employee is considered to be completely

relieved from duty during a meal period when the employee's time is not spent predominantly for

the benefit of the employer"); Kohlheim v. Glynn County, Ga., 915 F.2d 1473, 1477 n.19 (11th

24

Cir. 1990) (test for compensable meal periods is "whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer").  The "predominantly for the benefit of the employer" test is "consistent" "with traditional principles underlying FLSA," including the Supreme Court's definition of "work" in Tennessee Coal. Lamon, 972 F.2d at 1157, 1157 n.16 (citing Tennessee Coal, 321 U.S. at 598)).

Judge Hutton adopted the "predominant benefit" test in the FLSA case McGrath v. City of Philadelphia, 864 F. Supp. 466, 479-81 (E.D. Pa. 1994).  In McGrath, the record showed that the plaintiff police officers had "wide discretion in determining how to spend their meal periods," including reading, running personal errands, making personal phone calls, and socializing with other officers.  Id. at 481-82.  However, the record also showed "evidence of certain restrictions imposed on the plaintiffs' activities during their meal periods," including that "they must remain in uniform and they may not drink alcohol or sleep," and "they must respond to civilian, 'on-the-spot' requests for assistance and must respond to emergency calls."  Id. at 482.  Moreover, there was evidence that supported an "inference that they do not customarily receive a meal period at all, or they receive a meal period of substantially shorter duration than thirty minutes."  Id.  These genuine disputes of fact prevented the court from entering summary judgment on the claims that the 30-minute meal periods were compensable.  Id.

The Court finds that, as in McGrath, genuine disputes of fact prevent the Court from entering summary judgment on the meal period claims.  See McGrath, 864 F. Supp. at 482. Here, the parties agree that Plaintiffs received a 30-minute unpaid meal period and that Defendant required them to don and doff certain items of PPE before leaving the production floor and when re-entering the production floor, Def.'s St. Undisp. Facts ¶¶ 20, 22-24.  However, the

parties disagree as to whether the meal period was "bona fide."  Plaintiffs contend the 30-minute meal period was not "bona fide" because Defendant required them to don and doff PPE during the meal period, and they spent time walking, waiting in line to wash, and washing PPE.  Pls.' St. Facts in Opp'n ¶¶ 20, 23, 36.  Defendant contends that Plaintiffs had the benefit of the entire 30-minute meal period to engage in activities for their own benefit, such as eating and socializing. Def.'s St. Undisp. Facts ¶ 23.

There is a dispute of fact as to whether Plaintiffs perform certain activities, such as washing and hanging up items of PPE, for their own comfort and convenience or because Defendant requires them to do so.  Pls.' St. Facts in Opp'n ¶¶ 23-24.  There is also a dispute whether the donning, doffing, and related activities occur entirely between the time when the production line stops and the meal period begins, and between the end of the meal period and the beginning of the line, or whether these activities also occur during the 30-minute meal period. Def.'s St. Undisp. Facts ¶ 23; Pls.' St. Facts in Opp'n ¶¶ 23-25.  Defendant and Plaintiffs also present conflicting facts as to how much time Plaintiffs spend on donning and doffing activities before and after meals.  Def.'s St. Undisp. Facts ¶ 26; Pls.' St. Facts in Opp'n ¶ 26.  Plaintiffs contend that their expert's calculations of pre- and post-meal donning and doffing substantially underestimates the actual time spent, due to changes Defendant made in the plant layout, procedures, and equipment.  Pls.' St. Facts in Opp'n ¶ 23.

The questions of whether Defendant required Plaintiffs to don, doff, and wash certain items of PPE before and after meals, and whether the full 30-minute period was predominantly for Plaintiffs' benefit, should be resolved by a jury.  Moreover, unlike the Fourth Circuit in Perez, which was bound by Sepulveda, there is no Third Circuit precedent that donning and doffing

during meal time at a poultry processing plant is non-compensable as a matter of law.

Even if the Court were inclined to follow Perez, there is no reason to decide the meal-period donning and doffing claims on a motion for summary judgment when the pre-shift and post-shift donning and doffing claims will go to a jury trial.  The Court will instruct the jury to make factual findings and then rule.  Additionally, given the recent proliferation of FLSA cases, particularly in the poultry processing industry, the Third Circuit may issue a ruling on the issue of meal-period donning and doffing claims before this case goes to trial.  For these reasons, the Court will deny Defendant's motion for summary judgment as to Plaintiffs' meal-period claims.

**C.    Factual Background on Department of Labor Investigation and Defendant's Response**

In March 2001, the United States Department of Labor ("DOL") conducted a 10-day investigation at Defendant's production facility, including its donning and doffing compensation practices, and found Defendant was in violation of the FLSA.  Def.'s St. Undisp. Facts ¶¶ 27-28.  Following the investigation, Defendant held internal meetings on how to address the issues raised by DOL, sought advice of outside counsel on these issues, and conducted an internal study of how much time employees spent donning and doffing pre- and post-shift and pre- and post-meal periods.  Id. at ¶¶ 29-31.  Plaintiffs question the accuracy of the study, pointing out flaws in the selection of the random sample of employees; the limited scope of the study; and the exclusion of certain activities such as waiting in the supply room line and obtaining, donning, and doffing plastic arm guards, plastic gloves, and cotton gloves.  Pls.' St. Facts in Opp'n ¶¶ 30-31.  Defendant developed a schedule to compensate employees for a fixed number of minutes while they don and doff before and after their shifts, and before and after their meal periods.  Def.'s St.

Undisp. Facts ¶¶ 34-40.  Defendant sought approval from DOL of its compensation schedule and received the same from DOL's Pennsylvania regional office.  Def.'s St. Undisp. Facts ¶ 41. Defendant posted the compensation schedule and changed the employee handbook to include the new policy.  Def.'s St. Undisp. Facts ¶¶ 42, 43.  Plaintiffs dispute that it was a "compensation schedule" and that Defendant followed the schedule.  Pls.' St. Facts in Opp'n ¶¶ 34-40.

Defendant periodically reviewed the compensation schedules, revised the times allotted for donning and doffing-related activities to account for changes in the production process and plant layout, and republished the schedules five times.  Def.'s St. Undisp. Facts ¶ 45.  The parties dispute whether Defendant "periodically" observed the production departments and sent written reminders to supervisors to follow the schedules.  Id. at ¶ 46; Pls.' St. Facts in Opp'n ¶¶ 45-46.

Defendant received letters from DOL on May 21, 2002 and April 12, 2006, claiming that Defendant had not made changes to its compensation practices with respect to donning and doffing.  Def.'s St. Undisp. Facts ¶¶ 47-48.  In response, Defendant's representatives, inside counsel, and/or outside counsel communicated with DOL by letters and in meetings regarding the compensation schedules put in place in 2001 and anticipated changes due to the plant layout.  Id. Plaintiffs dispute that the schedule was actually implemented and that Defendant actually paid Plaintiffs for donning and doffing activities since 2001.  Pls.' St. Facts in Opp'n  ¶¶ 47-48.[9]

---

[9] However, Plaintiffs agreed not to proceed on their theory of liability that Defendant did not implement its compensation schedule.  Def.'s Reply 1. The Court's August 25, 2010 opinion discussed Plaintiffs' two proposed theories of liability during the evidentiary hearing, the "sham" schedule theory and the inadequate compensation theory, and found the evidence did not support the former theory.  Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291, 304 (E.D. Pa. 2010) ("Testimony offered by defendant tends to show that there was general compliance, and certainly an attempt to comply, with defendant's compensation system for donning and doffing.  Plaintiffs' briefing significantly overstates the evidence relevant to their contention that defendant did not monitor or care whether workers were being compensated for such activities.")

Since 2001, Defendant has been represented continually by, and received advice from, outside

counsel on the issue of compensation practices.  Def.'s St. Undisp. Facts ¶ 51.  Defendant's

employees and counsel also "tracked" FLSA judicial decisions to ensure compliance with

governing FLSA law, including the Third Circuit's decision in DeAsencio, 500 F.3d at 373-74.

Def.'s St. Undisp. Facts ¶ 52.

       *1.*    *Plaintiffs' claims for liquidated damages*

       Defendant contends that the Court can determine as a matter of law that Defendant acted

with good faith and reasonableness by implementing changes to its compensation policies for

donning and doffing following an investigation by the Department of Labor ("DOL").  Plaintiffs

seek liquidated damages pursuant to 29 U.S.C. § 260 for Defendant's alleged FLSA violations on

the grounds that Defendant did not show good faith and reasonableness in its compliance with

the FLSA.[10]  The Portal-to-Portal Act amended the FLSA to provide employers with a defense to

the FLSA's mandatory liquidated damages provision "if, and only if, the employer shows that he

acted in good faith and that he had reasonable grounds for believing that he was not violating the

---

       Following this decision, Plaintiffs limited their theory of liability in order to proceed with certification of a revised and limited class, stating: "While the Plaintiffs themselves do not agree with the conclusion that Defendant observed its posted schedule, for purposes of trying this case collectively, Plaintiffs agree to proceed at trial only with respect to the second theory set forth above, namely, that Defendant's compensation system, even if implemented as Defendant claims, nonetheless undercompensated for donning, doffing and related activities. . .." Pls.' Letter, Sept. 10, 2010 (ECF No. 495 at 3).  Therefore, any dispute whether Defendant actually followed its compensation schedule is not material at this stage of the proceedings.

       [10] In an FLSA action, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."  29 U.S.C. § 260.

[FLSA]."  Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982).  Whether an employer's conduct under the FLSA was in good faith and reasonable is a mixed question of law and fact. Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007) (citation omitted).  The district court in its discretion may disallow liquidated damages if the employer meets its "'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'"  Marshall, 668 F.2d at 753 (quoting Rothman v. Publicker Indus., 201 F.2d 618, 620 (3d Cir. 1953)).  An employer who cannot meet this burden is subject to mandatory liquidated damages.  Id.

Section 260 has both a subjective requirement of good faith and an objective requirement of reasonableness.  Brooks v. Village of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999) (citing Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907-08 (3d Cir. 1991)).  The employer must show both that it had "an honest intention to ascertain and follow the dictates of the FLSA," and that it "act[ed] as a reasonably prudent man would have acted under the same circumstances."  Id. at 137 (citations and internal quotation marks omitted).  In other words, the employer "must show that [it] took affirmative steps to ascertain the [FLSA]'s requirements, but nonetheless, violated its provisions."  Martin, 940 F.2d at 908.  For example, in Martin v. Cooper Electric Supply Co., plaintiffs brought claims for FLSA violations beginning in 1985, prior to a DOL investigation of the employer that began in 1987.  Id. at 899.  The Third Circuit held that the defendant's failure to take affirmative steps to ascertain the FLSA requirements before DOL initiated an investigation precluded a finding that the employer acted in reasonable good faith. Id. at 908.

In this case, as in Perez, 2011 WL 2207110 at *16-17, Defendant produced evidence of its subjective good faith attempt to ascertain the requirements of the FLSA and to comply with those requirements.  Following notification by DOL that Defendant was in violation of the FLSA, Defendant held internal meetings on the matter and conduct a study on how much time its employees spent donning and doffing.  Defendant also retained, consulted with, and relied on the advice of its attorneys on how to comply with the FLSA, and adopted new compensation procedures, including a compensation schedule with fixed periods during the workday for compensable donning and doffing activities.  Moreover, as in Chao, 568 F. Supp. 2d at 1323 and Garcia, 766 F. Supp. 2d at 1185-86, the company relied on recent FLSA case law in determining whether its compensation practices were in good faith and reasonable.[11]

Defendant also had objectively reasonable grounds for believing it was in compliance. Defendant received DOL approval of its post-2001 compensation schedule, communicated with DOL on several occasions regarding its practices, and no new investigation ensued.  Plaintiffs have not shown a genuine dispute of material fact as to whether Defendant made a subjective good faith effort to comply with the FLSA and had objectively reasonable grounds to believe it was in compliance.  The Court finds as a matter of law that Defendant is not subject to mandatory liquidated damages.

### 2.    *Applicable limitations period*

---

[11] The 2001 DOL investigation of Defendant does not preclude a finding that Defendant acted in reasonable good faith.   This case is distinguishable from Martin, where the employees' claims arose prior to the DOL investigation.  Martin, 940 F.2d at 908.  Here, Defendant has presented evidence of its attempts to ascertain the requirements of the FLSA and its implementation of revised compensation practices immediately following the DOL investigation, well before Plaintiffs' claims in this collective action accrued.

Defendant contends that the applicable limitations period for Plaintiffs' FLSA claims is two years, pursuant to 29 U.S.C. § 255(a), because there is no genuine dispute that Defendant's alleged violations of the FLSA were not willful.  Under 29 U.S.C. § 255(a), litigation to enforce a cause of action pursuant to the FLSA must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  The Supreme Court has explained that this "two-tiered statute of limitations" for FLSA claims "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988).  A violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  Id. at 133.  If the employer acted "reasonably," or even if the employer acted "unreasonably, but not recklessly, in determining its legal obligation," then those actions are not considered "willful."  Id. at 135 n.13.  See also Oakes v. Com. of Pa., 871 F. Supp. 797, 801 (M.D. Pa. 1995) (entering summary judgment for the employer that its "conduct, if violative of the FLSA, does not amount to a willful violation" where "Plaintiffs have not set forth any evidence that the Defendants intentionally violated the FLSA or that they were reckless in their consideration of its effect," and the record showed that "Defendants reasonably believed, based on the existing law, that the employees were not entitled to compensation for their meal breaks").  Whether an FLSA violation is willful is a mixed question of law and fact.  Alvarez v. IBP, Inc., 339 F.3d 894, 908 (9th Cir. 2003) (citing Reich v. Monfort, 144 F.3d 1329, 1334 (10th Cir. 1998)).

Here, the same facts that support the Court's finding as a matter of law that Defendant

32

acted reasonably and in good faith also support a finding that Defendant did not knowingly or

recklessly disregard the FLSA's requirements.  Following the 2001 DOL investigation,

Defendant did not attempt to evade compliance with the law or minimize its response, but rather

conducted an internal study, implemented a new compensation schedule, received DOL approval,

made revisions to the schedule over time, and communicated with DOL through its

representatives and attorneys.  Cf. Alvarez, 339 F.3d at 909 (employer demonstrated willfulness

by seeking to avoid or minimize compliance with FLSA).  Additionally, the absence of binding

Third Circuit precedent on whether donning and doffing PPE is integral and indispensable to the

principal activity of poultry processing is relevant to a finding that Defendant did not willfully

violate the FLSA.  See Perez, 2011 WL 2207110 at *16.  For these reasons, the Court holds as a

matter of law that the applicable statute of limitations is two years.

**VI.     Analysis of Plaintiffs' Motion for Summary Judgment**

Plaintiffs request that the Court rule in their favor on three issues: 1) the donning and

doffing activities at issue constitute "work" as a matter of law under the FLSA; 2) the donning

and doffing activities at issue are "integral and indispensable" to Plaintiffs' principal work

activity and therefore, are principal activities that commence the "continuous workday"; and 3)

Plaintiffs' donning and doffing activities during the meal period are compensable because they

constitute "work" that occurs during the "continuous workday."  The Court has reviewed above

the disputes of fact that prevent resolution of these issues on summary judgment, and briefly

addresses Plaintiffs' arguments.

**A.      "Work" as a Matter of Law**

Plaintiffs contend that the Court can find Plaintiffs' donning and doffing activities

constitute "work" as a matter of law in accordance with De Asencio.  Defendant responds that

disputed issues of fact prevent the court from so ruling.  Defendant also asserts that public policy

counsels against requiring compensation for donning and doffing optional protective gear,

because employers would have a "perverse incentive" not to provide optional items to their

employees to avoid liability.

In De Asencio, "the undisputed facts established that the donning and doffing activity in

this case constitutes 'work' as a matter of law." De Asencio, 500 F.3d at 373.  By contrast, in

this case, as discussed in Section V.A, supra, there are significant disputes of material fact as to

what PPE Defendant required Plaintiffs to use, and whether the PPE primarily benefited the

employer or the employees.  Therefore, summary judgment cannot be granted on Plaintiffs'

claims that the donning and doffing activities are compensable "work."

### B.       "Integral and Indispensable"

Similarly, Plaintiffs ask the court to find that the donning and doffing activities at issue

are "integral and indispensable" to Plaintiffs' principal work activity and therefore are

themselves principal activities that commence the continuous workday as a matter of law.

Defendant asserts that Plaintiffs' interpretation of "integral and indispensable" as meaning

"required by the employer" is too broad and not supported by Steiner, 350 U.S. at 256.

Unlike Perez, in which the Fourth Circuit affirmed that donning and doffing activities

were "integral and indispensable" based on factual findings at a bench trial, here there are

disputes of fact as to what PPE is required and who is the primary beneficiary of the donning and

doffing.  Perez, 2011 WL 2207110 at *7-9.  This case is more similar to Garcia v. Tyson Foods,

Inc., where the parties did not agree whether donning and doffing PPE primarily benefited the

poultry processor, because it promoted sanitation, or the employees' comfort and convenience. Garcia, 766 F. Supp. 2d at 1177-78.   Therefore, the Court cannot conclude as a matter of law that the donning and doffing activities were integral and indispensable and commenced the continuous workday.

> ### C.       "Continuous Workday"

Finally, Plaintiffs ask the Court to rule that donning and doffing activities during the meal period are compensable because the activities constitute work as a matter of law, and occur during the continuous workday.  Plaintiffs assert that the court can resolve this issue as a matter of law, although it is a question of fact for the jury whether the meal periods are "bona fide." Defendant contends that the evidence shows the meal periods are predominantly for the employees' benefit.

Again, the Court cannot rule that donning and doffing activities during the meal period constitute "work" because of the disputed facts as to what donning and doffing activities occurred and were required before and after meals, and who was the primary beneficiary of the meal period.  For example, as discussed in Section V.B.c, supra, the parties dispute whether Defendant required Plaintiffs to engage in certain activities such as doffing certain items, washing PPE, and hanging up PPE on hooks during the meal period, or whether Plaintiffs engaged in these activities for their own comfort and convenience.  Given these disputes of fact, the Court cannot determine as a matter of law that donning and doffing during the meal period was compensable work.

### VII.    Conclusion

For the following reasons, Defendant's Motion for Summary Judgment will be granted as

to Plaintiffs' claim for liquidated damages and on the applicable two-year statute of limitations.

Defendant's Motion will be denied as to all other claims.  Plaintiffs' Motion for Partial Summary

Judgment will be denied in its entirety.  An appropriate Order follows.

O:\CIVIL 07-08\07-0749 Lugo v. Farmer's Pride\Lugo v. Farmer's Pride - Mem re MSJs.wpd